**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DARTH NEWMAN, | ) | |
| | ) | Civil Action No. __2:20-1973__ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| POLLOCK COHEN, LLP, | ) | *ELECTRONICALLY FILED* |
| STEVE COHEN, | ) | |
| CHRISTOPHER K. LEUNG, and | ) | |
| ADAM POLLOCK, | ) | |
| | | |
| Defendants. | | |

## NOTICE OF REMOVAL

To:   The Honorable Judges of the United States District Court
      for the Western District of Pennsylvania

Defendants Pollock Cohen, LLP, Steve Cohen, Christopher K. Leung, and Adam Pollock,

by and through their undersigned counsel, and in accordance with the applicable Federal Rules of

Civil Procedure and Title 28 of the United States Code §§ 1332, 1441, and 1446, file this Notice

of Removal and remove the action entitled "Darth Newman v. Pollock Cohen, LLP, Steve Cohen,

Christopher K. Leung, and Adam Pollock," Case No. GD-20-012030, which was originally filed

in the Court of Common Pleas of Allegheny County, Commonwealth of Pennsylvania, to the

United States District Court for the Western District of Pennsylvania. Removal of this action is

based upon the following:

## BACKGROUND

1.      Plaintiff Darth Newman filed the instant action in the Court of Common Pleas of

Allegheny County, Commonwealth of Pennsylvania on or about November 24, 2020. A copy of

the Complaint filed by Newman in the state court action is attached hereto as **Exhibit A**.

2.      On December 15, 2020, Defendants accepted service of the Complaint.

3. This Notice of Removal is being filed within 30 days from service of the Complaint in the above matter. The Notice of Removal is, therefore, timely filed under 28 U.S.C. § 1446(b).

## VENUE

4. The Court of Common Pleas of Allegheny County, in which Newman's Complaint was filed, is within this Court's District. This action is therefore properly removable to this Court under 28 U.S.C. § 1446(a).

## REMOVAL IS PROPER
## BASED ON DIVERSITY JURISDICTION

5. This action is within the original jurisdiction of this Court pursuant to 28 U.S.C. § 1332, as the matter in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a)(1).

**A.    There is complete diversity amongst the parties.**

6. Newman is a citizen of the Commonwealth of Pennsylvania (*See* Compl. at ¶ 2).

7. Defendant Pollock Cohen, LLP is a New York LLP with a principal place of business in New York, New York. (*Id.* at ¶ 3).

8. Defendants Cohen, Leung, and Pollock are all citizens of the State of New York. (*Id.* at ¶¶ 4-6).

9. As such, for the purposes of diversity jurisdiction, Defendants are all deemed to be citizens of New York. *See Ruben v. United States*, 918 F. Supp. 2d 358, 361 (E.D. Pa. 2013) (noting that an LLP's citizenship for diversity purposes is determined by the citizenship of its partners).

10. Because Defendants and Newman are citizens of different States, complete diversity exists in this action. *See* 28 U.S.C. §1332(a)(1).

2

**B.    The $75,000 amount in controversy threshold is met**.

11.    "When the amount in controversy is not specified in the complaint, the court must assess the claims and attempt to translate those claims into monetary sums." *Lupole v. Collins Pine Co.*, No. 07-73, 2007 U.S. Dist. LEXIS 76015, at *5 (W.D. Pa. Oct. 12, 2007).

12.    "[T]he amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." *Id.* at *18 (*citing Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993)).

13.    Newman's Complaint seeks damages exceeding $75,000, including, among other things, five to ten percent of all contingency recoveries from Pollock Cohen cases on which he was working at the time of his termination, including a "multi-million-dollar case" and multiple other contingency recoveries. (*See, e.g.,* Compl. at ¶¶ 92, 94).

14.    For those reasons, the amount in controversy requirement has been met. *See* 28 U.S.C. §1332(a)(1).

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

15.    This Notice of Removal has been filed within 30 days after service of Plaintiff's Complaint.  Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. §1446(b).

16.    Attached hereto are the pleadings and the docket entries currently on file in the Court of Common Pleas of Allegheny County, Commonwealth of Pennsylvania **Exhibit B.**

17.    Upon filing this Notice of Removal, Defendants will provide a written notification to Plaintiff and will file a Notice of Filing of Notice of Removal with the Clerk of the Court of Common Pleas of Allegheny County, Pennsylvania. A true and correct copy of the Notice of Filing of Notice of Removal is attached as **Exhibit C**.

18. Defendants file this Notice without waiving any defenses to the claims asserted by Plaintiff, without conceding that Plaintiff has stated claims upon which relief can be granted, and without conceding that Plaintiff is entitled to any damages against Defendants in any amount whatsoever.

WHEREFORE, Defendants respectfully request that the United States District Court for the Western District of Pennsylvania accept the removal of this action from the Court of Common Pleas of Allegheny County, Pennsylvania and direct that that Court have no further jurisdiction over this matter unless this case is remanded.

Dated: December 18, 2020                    Respectfully submitted,

JACKSON LEWIS P.C.

*/s/ Joanna Rodriguez*
Marla N. Presley
PA ID No. 91020
Marla.Presley@jacksonlewis.com
Joanna M. Rodriguez
PA ID No. 318853
Joanna.Rodriguez@jacksonlewis.com
1001 Liberty Avenue, Suite 1000
Pittsburgh, PA 15222
(412) 232-0404
(412) 232-3441 *facsimile*

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DARTH NEWMAN, | ) | |
| | ) | Civil Action No. 2:20-1973 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| POLLOCK COHEN, LLP, | ) | *ELECTRONICALLY FILED* |
| STEVE COHEN, | ) | |
| CHRISTOPHER K. LEUNG, and | ) | |
| ADAM POLLOCK, | ) | |
| Defendants. | | |

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2020, I electronically filed the foregoing Notice of Removal with the Clerk of the Court using the CM/ECF system, and have provided a courtesy copy to Plaintiff's counsel of record at the following address, via electronic mail:

Rachel L. McElroy, Esq.
McElroy Law Firm LLC
461 Cochran Rd. #107,
Pittsburgh, PA 15228
Email: rachel@mcelroylawfirm.com
Phone: 412-620-8735

/s/ Joanna Rodriguez
Joanna Rodriguez

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

DARTH NEWMAN

**DEFENDANTS**

POLLOCK COHEN, LLP, STEVE COHEN, CHRISTOPHER K. LEUNG, AND ADAM POLLOCK

**(b)** County of Residence of First Listed Plaintiff    Allegheny
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    New York (NY)
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Rachel L. McElroy, Esq.
McElroy Law Firm LLC
461 Cochran Rd. #107
Pittsburgh, PA 15228

Attorneys *(If Known)*
Marla N. Presley, Esq
Jackson Lewis, PC
1001 Liberty Ave Suite 1000
Pittsburgh, PA 15222

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
     Plaintiff

☐ 3   Federal Question
     *(U.S. Government Not a Party)*

☐ 2   U.S. Government
     Defendant

☒ 4   Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*      *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original
Proceeding

☒ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title 28 of the United States Code §§ 1332, 1441, and 1446

Brief description of cause:
Alleged failure to pay compensation under Pennsylvania statutory, common law

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE                    DOCKET NUMBER

DATE
12/18/2020

SIGNATURE OF ATTORNEY OF RECORD
/s/ Joanna Rodriguez

**FOR OFFICE USE ONLY**

RECEIPT #       AMOUNT       APPLYING IFP       JUDGE       MAG. JUDGE

JS 44A REVISED June, **2009**
IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA
THIS CASE DESIGNATION SHEET MUST BE COMPLETED

**PART A**

This case belongs on the ( ◯ Erie   ◯ Johnstown   ◉ Pittsburgh) calendar.

**1. ERIE CALENDAR -** If cause of action arose in the counties of Crawford, Elk, Erie, Forest, McKean. Venang or Warren, OR any plaintiff or defendant resides in one of said counties.

**2. JOHNSTOWN CALENDAR -** If cause of action arose in the counties of Bedford, Blair, Cambria, Clearfield or Somerset OR any plaintiff or defendant resides in one of said counties.

**3.** Complete if on **ERIE CALENDAR:** I certify that the cause of action arose in_____ County and that the _____resides in_____County.

**4.** Complete if on **JOHNSTOWN CALENDAR:** I certify that the cause of action arose in _____County and that the_____resides in _____County.

**PART B** (You are to check ONE of the following)

**1.** ◯ This case is related to Number_____ . Short Caption_____.

**2.** ◉ This case is not related to a pending or terminated case.

DEFIN1TIONS OF RELATED CASES:
CIVIL: Civil cases are deemed related when a case filed relates to property included in another suit or involves the same issues of fact or it grows out of the same transactions as another suit or involves the validity or infringement of a patent involved in another suit EMINENT DOMAIN: Cases in contiguous closely located groups and in common ownership groups which will lend themselves to consolidation for trial shall be deemed related. HABEAS CORPUS & CIVIL RIGHTS: All habeas corpus petitions filed by the same individual shall be deemed related. All pro se Civil Rights actions by the same individual shall be deemed related.

**PARTC**

I. CIVIL CATEGORY (Select the applicable category).

1. ◯ Antitrust and Securities Act Cases
2. ◯ Labor-Management Relations
3. ◯ Habeas corpus
4. ◉ Civil Rights
5. ◯ Patent, Copyright, and Trademark
6. ◯ Eminent  Domain
7. ◯ All  other federal question cases
8. ◯ All  personal  and property damage tort cases,  including  maritime,  FELA, Jones Act, Motor vehicle, products liability, assault, defamation,  malicious prosecution, and false arrest
9. ◯ Insurance indemnity, contract and other diversity cases.
10. ◯ Government Collection Cases (shall include HEW Student Loans (Education), V A  0verpayment, Overpayment of Social Security, Enlistment Overpayment (Army, Navy, etc.),  HUD Loans, GAO Loans (Misc. Types), Mortgage Foreclosures, SBA Loans, Civil Penalties and Coal Mine Penalty and Reclamation Fees.)

I certify that to the best of my knowledge the entries on this Case Designation Sheet are true and correct

Date:_12/18/2020_____        /s/ Joanna Rodriguez

ATTORNEY AT LAW

NOTE: ALL SECTIONS OF BOTH FORMS MUST BE COMPLETED BEFORE CASE CAN BE PROCESSED.

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

DARTH NEWMAN,                                      CIVIL DIVISION

       Plaintiff,

  vs.                                          GD No.

POLLOCK COHEN, LLP,
STEVE COHEN,
CHRISTOPHER K. LEUNG, and
ADAM POLLOCK,

      Defendants.                      **CIVIL COMPLAINT AND
                                                   DECLARATORY JUDGEMENT**



Filed on Behalf of Plaintiff

Counsel of Record for this Party:

Rachel L. McElroy
PA ID No. 321624

McElroy Law Firm LLC
461 Cochran Rd. #107
Pittsburgh, PA 15228
412-620-8735
email: rachel@mcelroylawfirm.com


**JURY TRIAL DEMANDED**

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

DARTH NEWMAN,                                        CIVIL DIVISION

        Plaintiff,

    vs.                                              GD No.

POLLOCK COHEN, LLP,
STEVE COHEN,
CHRISTOPHER K. LEUNG, and
ADAM POLLOCK,

        Defendants.

## NOTICE TO DEFEND

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any property or other rights important to you.


**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**LAWYER REFERRAL SERVICE
ALLEGHENY COUNTY BAR ASSOCIATION
400 KOPPERS BUILDING
436 SEVENTH AVE.
PITTSBURGH, PENNSYLVANIA 15219**

**Telephone: (412) 261-5555**

2

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| DARTH NEWMAN, | CIVIL DIVISION |
| Plaintiff, | |
| vs. | GD No. |
| POLLOCK COHEN, LLP,<br>STEVE COHEN,<br>CHRISTOPHER K. LEUNG, and<br>ADAM POLLOCK, | |
| Defendants. | |

## CIVIL COMPLAINT

AND NOW, comes Plaintiff Darth Newman ("Newman"), by and through his attorney, Rachel L. McElroy, Esquire and files the within Civil Complaint, averring as follows:

### I. Introduction

1.      Plaintiff Darth Newman brings this lawsuit to recover damages for lost wages, breach of contract, restitution for unjust enrichment, statutory fines for violations related to his various counts, pre- and post-judgment interest and attorney's fees and cost.  Newman worked for Defendant Pollock Cohen, LLP (hereinafter "The Firm") as Special Counsel until Defendants terminated his employment due to COVID-19 related financial difficulties on March 25, 2020. As a part of Newman's compensation, The Firm agreed to pay him five to ten percent of *all* contingency recoveries and attorneys' fee awards. Just prior to his termination, Newman spent significant time working on a multi-million dollar contingency case. After terminating Newman's employment, the multi-million dollar case settled and The Firm obtained significant fees. The Firm took steps to conceal the multi-million dollar case settlement from Newman.

3

Newman seeks payment on the contingency recovery for the multi-million dollar case and all contingency matters active at the time of his termination in accordance with his compensation agreement.

## II. Parties

2.      Plaintiff, Darth Newman, is an adult individual who resides in Moon Township, Allegheny County, Pennsylvania.

3.      Defendant, Pollock Cohen, LLP (hereinafter "The Firm"), is a New York limited liability partnership with a principal place of business located at 60 Broad Street, Suite 2417 24th Floor, New York, New York, 10004.

4.      Defendant, Steve Cohen, is an individual who resides in Manhattan, New York County, New York.

5.      Defendant, Christopher K. Leung, is an individual who resides in Brooklyn, Kings County, New York.

6.      Defendant, Adam Pollock, is an individual who resides in Brooklyn, Kings County, New York.

7.      On information and belief, Defendants Cohen, Pollock, and Leung are equal equitable partners in The Firm and as such are jointly liable for the actions of The Firm.

## III. Jurisdiction and Venue

8.      This Court has general jurisdiction over all claims against Defendants pursuant to 42 Pa. C.S. § 5301(2).

9.      Defendants regularly conduct business in Allegheny County, Pennsylvania, including filing lawsuits on behalf of Pennsylvania clients in the United States District Court for

4

the Western District of Pennsylvania, counseling clients in the Fifth Judicial District of Pennsylvania and sending demand letters on behalf of Allegheny County clients.

10.     Defendants represented to clients that they conduct business in Pennsylvania by printing business cards listing Pittsburgh as a location and by advertising online as serving clients in Allegheny County.

11.     One or more transactions or occurrences out of which this cause of action arose took place in Allegheny County, Pennsylvania, as set forth in Paragraphs 14 through 70 below.

12.     In addition, at all times relevant here, Newman continued to live and work in Allegheny County, Pennsylvania and was the only Firm lawyer licensed to practice in the Commonwealth of Pennsylvania.

13.     As such, venue is proper in this Court pursuant to Pa.R.Civ.P. 2179(a).

### III. Facts

#### A.  Defendants Hire Newman

14.     In or around December 2017, prior to The Firm's incorporation, Defendant Pollock contacted Newman about a position at Pollock's prior employer.

15.     In or around January 2018, when it became apparent Pollock intended to start his own firm with Cohen, Pollock reached out to Newman about working at The Firm.

16.     Defendants Pollock and Cohen incorporated The Firm on March 19, 2018.

17.     At all times relevant to this action, Defendants Pollock and Cohen have policy making and decision making authority over Newman's wages and payments.  After Defendant Leung joined The Firm as the third co-equal partner in or around the spring of 2019, he also had policy making and decision making authority over Newman's wages and payments. Discovery

5

will show Leung knew about and was involved in The Firm's decision to deny Newman wages.

18.     In or around April 2018, Newman began working at The Firm as an independent contractor in exchange for twelve thousand dollars ($12,000) per month.

19.     Defendants knew that Newman resided in Pittsburgh, Pennsylvania when they contacted him about working at The Firm.

20.     Newman is licensed to practice law in the Commonwealth of Pennsylvania, State of New Jersey and New York State.

21.     At all relevant times in this action, Newman continued to live and work in Pennsylvania.

22.     In or around April 2018, Newman had a phone call with Defendant Pollock to discuss joining The Firm full time. (hereinafter "April 2018 Phone Call") During the April 2018 Phone Call Defendant Pollock explained to Newman:

   a. That he and Defendant Cohen intended for The Firm to primarily file whistleblower/*qui tam* claims and generally eschew hourly billable work.

   b. That The Firm intended to take all whistleblower/*qui tam* claims on a contingency basis, and that although they can take years to resolve, whistleblower/*qui tam* claims can result in significant fees.

   c. Despite The Firm's goal of primarily filing whistleblower/*qui tam* actions, Defendants Pollock and Cohen also stated that they wanted to bring on an attorney with significant knowledge and experience managing complex business litigation full time.

   d. They were interested in bringing Newman to The Firm because of his experience managing complex business litigation and they enjoyed working with him.

   e. The Firm would need to take on cases that paid on a billable hour or hybrid fee schedule until The Firm either secured litigation funding through an outside agency, or won a substantial *qui tam* contingency fee award. The Frim planned to bridge profitability with commercial litigation until the *qui tam* cases were resolved. Defendant Cohen publicly acknowledged similar comments in an

6

article for Super Lawyers Magazine, New York Metro (Exhibit A).

23.     Neither Defendant Pollock nor Defendant Cohen had experience practicing complex business litigation. Defendant Cohen had only been an attorney for less than four and a half years prior to starting The Firm, and during those years he primarily worked on a large *qui tam* case, medical malpractice, and personal injury cases. Defendant Pollock spent the majority of his legal career defending white collar criminal cases and representing the State of New York as an Assistant Attorney General.

**B. The Compensation Scheme**

24.     After the April 2018 Phone Call, on or about April 24, 2018, Defendants Pollock and Cohen offered Newman employment at The Firm in the position of Special Counsel due in part to his complex business litigation experience.

25.     However, Defendants were not able to pay Newman a base salary equivalent to the market rate for his services because The Firm did not have steady cash flow.  As a result, on or around April 24, 2018, Defendants Pollock and Cohen offered to pay Newman ten thousand dollars ($10,000) per month, and a "bonus" of 10% of all contingency recoveries, up to a maximum of $200k per year bonus (hereinafter the "Initial Offer"). The Initial Offer based pay was less than Newman made per month working as a contract attorney with The Firm.

26.     In follow-up emails, Defendants clarified that there would be no cap, and Newman would get 10% of recoveries up to the first $2 million, 5% thereafter, and that contingency recoveries "includes both fee awards and our part of contingency wins/settlements/awards and bonus is calculated before deductions for overheads/comp and non-case specific expenses." (Exhibit B)

7

27.    By accepting a reduced base salary and payroll deferral, Defendants acknowledged Newman was taking significant risk which would be offset with a portion of The Firm's contingency recoveries. As Defendant Pollock stated: "I recognize that you would be incurring some risk here."  (Exhibit B)

28.    Furthermore, as Pollock repeated in several emails, Defendants were pursuing litigation funding  and would seek to renegotiate Newman's compensation structure if they secured funding. It was anticipated that securing litigation funding would permit The Firm to more regularly pay each lawyer the same $10,000 per month but likely eat up the proceeds from contingency wins such that neither Newman nor the partners would receive payments in excess of their common base compensation. As Defendant Pollock put it: "In other words, less risk less reward." (Exhibit B)

29.    On or about April 29 2019, Defendants further outlined the employment agreement in an email to Newman with the compensation terms as follows:

> "1. We would set compensation at $10,000/month as W2 income. To the extent that we don't have the cash flow to make the full $10k, we will pay simple interest at 33.33% / year on outstanding comp owed. While Steve and I wouldn't make a personal guarantee on the back comp/interest owed, Pollock Cohen LLP would continue to be obligated for what's owed as long as our firm or its successors exist. In other words, your backpay and interest immediately "vest" and are owed even if you leave. I recognize that you would be incurring some risk here..."

> "3. In addition to the above: We will pay you an annual bonus of 10% of all "contingency recoveries" (as defined below) up to the first $2 million per year… Contingency recoveries includes both fee awards and our part of contingency wins/settlements/awards.  Bonus is calculated before deductions for overheads/comp and non-case specific expenses."

> (Exhibit B) (hereinafter "Employment Contract").

30.    Newman accepted The Firm's employment offer, and The Firm became Newman's employer.

31.    In the Employment Contract the Parties agreed in writing to the terms of Newman's payment compensation or in the alternative the Firm agreed to incur an obligation to Newman which can be inferred from the relationship between the parties.

32.    The "annual bonus" as outlined in section 3 of the Employment Contract (Exhibit B) was a part of Newman's core employee compensation and was not a discretionary bonus. Instead the "bonus" is additional compensation in the form of revenue share on accounts that existed during Newman's employment. The Firm offered Newman the revenue share on contingency accounts to entice Newman to join the Firm. Newman accepted the core compensation "bonus" because while he shared the downside risk in a new and unproven firm that had no regular source of income, he would also share in the Firm's upside. As such, the "bonus" immediately vested when Newman agreed to work for the Firm. (hereinafter "Revenue Share")[1] The Revenue Share was not discretionary and in practice was paid on all contingency fee recoveries.

   a.    The Revenue Share was not tied to client originations.

   b.    The Revenue Share was not tied to work performance.

   c.    The Revenue Share was not tied to work effort or any number of hours worked or billed.

   d.    The Revenue Share was not tied to work effort or any number of hours worked or

---

[1] The "bonus" is referred to as a Revenue Share because the term "bonus" is a misnomer and is not used in it's legal sense. Equity share is also not fully descriptive because Newman did not adopt the liabilities of the Firm nor did he have decision making authority. Therefore, Revenue Share is the most descriptive term for this part of Newman's core compensation with the Firm..

billed on any particular case or overall.

33.     Defendant Pollock explained to Newman that he and The Firm specifically rejected any compensation scheme that paid lawyers based on the work performed on any particular case. Defendant Pollock had a poor experience working at an unrelated law firm that incentivized attorneys to only work on the cases they brought into the business. Defendants Pollock and Cohen wanted to create a firm based on team work and equal shares that permitted lawyers to work the cases they enjoyed and not work the ones they did not while maintaining a compensation structure based on shared value.

34.     Defendants Pollock and Cohen already had some active cases when they approached Newman to work for them and they stated that they would include all contingency recoveries from those cases as part of the Revenue Share even if Newman never performed any work on those cases.

35.     Two of those cases together represented the $1 billion *qui tam* case still referenced in Defendant Cohen's law firm bio but for which another law firm was expected to be primarily responsible. (Exhibit C) As a holdover from his government service, Defendant Pollock was ethically barred from having any contact with those cases.

36.     Defendants did not limit the Revenue Share to matters that were settled while Newman was employed at The Firm, as whistleblower cases can take years to resolve and require substantial early effort.

37.     Defendants explained that they could not offer Mr. Newman a "market value" salary because The Firm generated insufficient revenue to fund lawyer compensation and

expenses. Instead, The Firm offered Mr. Newman the Revenue Share and the same salary draw as the two partners, Mr. Cohen and Mr. Pollock.

38.     Newman accepted Defendants employment offer because Defendants led him to reasonably believe that the Revenue Share applied to all contingency fee matters held by The Firm during Newman's employment, regardless of when those cases resolved, if ever.

39.     After Newman accepted employment with The Firm, he was not paid the Monthly Salary for approximately five months in 2018, but was later compensated with interest when The Firm generated revenue.

40.     Newman's base compensation was similarly deferred during various other periods of time during his employment. At the time of his termination, The Firm owed Newman approximately $25,000 plus interest in unpaid base compensation.

41.     While Newman worked for The Firm, Defendants always paid Newman the Revenue Share when the revenue was obtained by The Firm. Newman has a list of all Revenue Share and when it was paid (Exhibit D).[2]

**C. The Amicable Separation**

42.     On or about March 25, 2020, Defendant Cohen informed Newman that The Firm had to terminate Newman's employment due to financial hardships. Newman's salary was the largest line-item expense for The Firm, and The Firm was incurring back pay and interest obligations on unpaid compensation owed to Newman from 2019 and 2020. Defendant Cohen also stated he did not know how The Firm would pay rent for the month.

---

[2] The lone exception was a $1,812.50 Revenue Share payment that was mistakenly unpaid and then made up when The Firm next had sufficient revenue.

43.     During that call, Newman and Defendant Cohen discussed various separation issues including, obtaining timesheets, access to non-client emails, payment of outstanding expenses, sharing captions of cases to facilitate withdrawals, ensuring back pay payments were accurate, and payment of the Revenue Share. During this conversation, Defendant Cohen also agreed to give Newman a positive public-facing reference and keep his profile active on The Firm's website until Newman found another job. The separation was amicable.

44.     On March 26, 2020, Newman sent Defendant Cohen an email confirming the details of his March 25, 2020 conversation with Defendant Cohen including the continued payment of the Revenue Share on all contingency fee matters held by The Firm at the time of Newman's separation. The relevant section of the email stated: "Comp - as we discussed yesterday our deal stands such that I am owed expenses, comp, and interest through March 25, 2020 and 10/5% of contingency/attorney fee awards on existing cases to be paid as the firm collects money." (Exhibit E)(hereinafter "Recapping Our Call Email")

45.     The Recapping Our Call Email closed with a specific request that Defendant Cohen "Please let me know if my recapping does not match your memory of our chats." (Exhibit E)

46.     Despite numerous conversations between the parties throughout March, April, June, and July 2020, no one at The Firm disputed the Recapping Our Call Email until after Mr. Newman asked that his Revenue Share be paid out in connection with the resolution of the Multi-Million Dollar Case.  In fact, later on the very same day Newman sent the Recapping Our Call Email, Defendant Cohen attempted to hire Newman as local counsel for an active litigation

12

case Newman had filed in the Western District of Pennsylvania while employed by The Firm. Defendant Cohen did not once dispute the Recapping Our Call Email.

47.     On or about April 17, 2020, Defendant Cohen wrote Newman a positive review for the legal site Priori. In addition, Defendant Cohen stated in an April 20, 2020 email to Priori that he let Newman go because of The Firm's financial difficulties. (Exhibit E)

48.     Defendant Cohen's responses to the legal site Prior's review questionnaire were specific and detailed:

- How would you describe your experience overall, and as compared to other lawyers you've worked with?

  - Darth is incredibly bright, and a superb lawyer. He is among the smartest lawyers I have ever dealt with.

- Please describe Darth's responsiveness and communication style.

  - Darth is direct, clear, and. very responsive. On numerous occasions I have seen him handle difficult, prickly clients -- and their complex legal issues -- with tact and effectiveness.

- Have you had an occasion to refer another client to Darth and what was the feedback, if any?

  - Feedback from clients was always incredibly positive.

- Would you work with/hire Darth again?

  - Yes, absolutely.

- Reviews help our lawyers to receive more work: Please provide a few statements about your experience with Darth that we may share with others as they learn more about Darth's work

  - Darth has a first-rate legal mind. He is one of the best (and fastest) legal researchers I have ever known. He understands complex legal issues, and cuts to the key legal issues very quickly. His legal writing is very good, and his negotiating skills even better. He would be a real asset to any firm and any client. I am truly sorry we can't currently employ him. (We are a start-up firm, and the COVID-19 pandemic has cut off most of our cash flow.) (Exhibit F)

13

**D. Defendants Become Adversarial**

49.     In or around April 2020, several of The Firm's clients decided to leave The Firm and pursue representation with Newman (hereinafter "Clients").

50.     On or about April 20, 2020, Defendant Cohen spoke with Newman about the Clients. During that discussion, Defendant Cohen specifically stated that Defendants' relationship with Newman would change and become much less amicable if the Clients continued to pursue representation with Newman instead of The Firm.

51.     Some of the Clients were contingency fee whistleblower clients. The Clients will owe a percentage of the contingency fee to The Firm and some to Newman under their new fee agreement and a separate agreement between each Client and The Firm. However, Newman is still owed his Revenue Share of The Firm's contingency fee and attorneys' fee awards, if any, on these matters.

### a.  *The Multi-Million Dollar Case*

52.     Just before his separation, in or around March 2020, Newman was in the middle of managing the final negotiations on a large multi-million dollar *qui tam* contingency fee case (hereinafter "Multi-Million Dollar Case.").

53.     The Firm and Newman expected the Multi-Million Dollar Case to settle in the coming months generating a $560,000 to $640,000 fee for The Firm which would have been the single largest recovery by The Firm in its short history and represents almost a year of expenses for the Firm. Under the Employment Agreement and Revenue Share, Newman would have received 10% of the fee or between $56,000 and $64,000.

54.     After learning that clients had chosen to keep Newman as their lawyer and

14

terminate the services of The Firm, Defendants took steps to conceal the resolution of the Multi-Million Dollar Case and avoid paying The Revenue Share.

55.      Unbeknownst to Newman at the time, the Multi-Million Dollar Case was voluntarily dismissed on or about May 28, 2020 before a Motion to Dismiss was filed. Upon information and belief, this case was settled and resulted in the payment of a contingency recovery to The Firm.

56.       Mr. Pollock agreed to keep Mr. Newman informed of case developments, decisions, and resolutions and did send Mr. Newman updates for different cases on June 2, 2020 and June 19, 2020. Including an update on a positive judicial ruling for the Firm based on Newman's work. (Exhibit G)

57.      Additionally, Defendant Pollock had promised to keep Newman updated as The Firm's matters resolved or obtained judicial decisions: "I'll definitely keep you posted on decisions. Sorry I didn't get this one to you sooner." (Exhibit G)

58.      Importantly, to the best of Newman's knowledge, none of these decisions in Paragraph 57 resulted in the resolution of a case or the payment of contingency funds to The Firm.

59.      Defendants did not, however, provide any notice to Newman that the Multi-Million Dollar Case had resolved.

60.      Instead, Defendants tried to obfuscate their sudden influx of cash and refused to acknowledge that the Multi-Million Dollar Case resolved at all.

### b. *Defendants Breach the Employment Agreement*

61.      At the time the Multi-Million Dollar Case was resolved, The Firm still owed

15

Newman many thousands of dollars of backpay.

62. Several weeks had gone by with small or zero dollar payments, however, around the time the Multi-Million Dollar case is believed to have resolved, The Firm suddenly began making larger and very regular payments towards the outstanding backpay. Notably, however, the firm still drew these payments out over nearly two months. (Exhibit F)

63. Newman first discovered the Multi-Million Dollar Case had been resolved on or around June 25, 2020.

64. Once Newman learned that the Multi-Million Dollar Case had likely settled, he emailed The Firm to inquire about the status of the case, offer his congratulations, and arrange for compensation under the terms of the Employment Contract. The correspondence took place as follows:

  a. On or about June 25, 2020, Newman emailed Defendants Pollock and Cohen about the Multi-Million Dollar Case to ask if it had in fact settled. (Exhibit H)

  b. On or about July 1, 2020, Newman emailed Defendants Pollock and Cohen again seeking a response and was again ignored. (Exhibits G and H) Despite sending Newman other emails during this period of time, Defendants ignored these inquiries about the Multi-Million Dollar Case.

  c. On or about July 8, 2020, Newman emailed Defendants Pollock and Cohen a third time using the same email chain seeking an updated record of back payments. (Exhibit H)

  d. Finally, two weeks after the original email, on or about July 9, 2020, The Firm responded to Newman's repeat requests stating "We cannot comment on the [Multi-Million Dollar Case] dismissal." (Exhibit H)

  e. On or about July 10, 2020, Newman responded to the July 9, 2020 Email asking The Firm to make arrangements to pay him the Revenue Share owed to him under the Employment Contract. (Exhibit H)

  f. On or about July 12, 2020, Defendant Pollock emailed Newman stating "We disagree that your performance merits an end-of-the-year bonus, but we can

16

discuss in December." (Exhibit H)

g.  On or about July 15, 2020, Newman asked The Firm to provide to him the amount of all contingency recoveries The Firm had obtained since March 25, 2020. Newman also asked that The Firm provide prompt notification to him of future case terminations together with the amounts of any resulting contingency recoveries for all matters that existed on March 25, 2020. (Exhibit H)

h.  On or about July 22, 2020, Defendant Cohen responded "We disagree: we don't believe you are entitled to a bonus for any case settled after your departure from the firm." (Exhibit H). Defendant Cohen also refused to provide any information about current or future case resolutions.

i.  Later, on or about July 29, 2020, Defendant Cohen stated in an email to Newman about the Bonus "I have zero interest in - or intention to - discuss a bonus with you at this time." (Exhibit H).

65.  At the same time Defendants were ignoring and avoiding Newman's inquiries about the Million-Dollar Case, they were exchanging other emails about other topics with Newman.

66.  Defendants stated clearly in Exhibit H that they do not intend to pay Newman his Revenue Share on the Multi-Million Dollar Case or on any other contingency matters with the firm as of March 25, 2020.

67.  Defendants' various excuses for not honoring the Employment Agreement and instead refusing to make good on their obligation to pay Newman the Revenue Share contradict each other, the plain language of the Employment Agreement, and the parties' course of dealing and performance.

68.  At no time was the Revenue Share discretionary or tied in any way to performance.

69.  Nor is the Revenue Share dependent on Newman's continued employment with The Firm.

17

70.     Indeed, it would be manifestly unfair and inequitable for Defendants to terminate Newman's employment on the eve of a large contingency win and thereby capture the full measure of his efforts without paying him his fair share of the proceeds.

**Count I**
**Declaratory Judgment**
**42 P.S. § 7531**
**(Newman v. Pollock Cohen, LLP, Pollock, Cohen, and Leung)**

71.     Newman incorporates by reference paragraphs 1 through 70 above as if fully set forth in this paragraph.

72.     An actual controversy has arisen between the Plaintiff and Defendants, relating to whether The Employment Contract requires Defendants to pay Newman The Revenue Share for all matters held by The Firm as of March 25, 2020 regardless of when that revenue is realized by The Firm.

73.     Contrary to the language of The Employment Agreement and Newman's understanding of it, Defendants have asserted they owe no further payments under The Employment Contract.

74.     As The Firm resolves matters it held as of March 25, 2020, disputes will continue to arise regarding whether or not Newman is owed The Revenue Share in accordance with The Employment Contract.

WHEREFORE, it is prayed that this Honorable Court enter and Order:

    i. Declaring the Plaintiff's Employment Contract with Defendants valid and enforceable.

    ii. Requiring Defendants to provide a list of all matters for which they were engaged as of March 25, 2020 within 5 days of this order.

    iii. Requiring Defendants to provide notification to Plaintiff of the resolution of any

18

such matters or portions of matters and the amount of The Firm's share of any contingency recoveries defined as including both fee awards and The Firm's portion of any contingency wins, settlements or other awards and calculated before deductions for overheads, compensation, non-case specific expenses, or reimbursed expenses within 5 days of any such resolution or partial resolution.

iv. Requiring Defendants to pay to Plaintiff 10% of all contingency recoveries received by Defendants for any such matters for the first $2 million of recoveries each year and then 5% thereafter  within 5 days of the funds "clearing" The Firm's IOLTA account.

v. Such other relief as the Court deems just and appropriate.

**Count II**
**Pennsylvania Wage Payment and Collection Law**
**43 P.S. § 260.1, et seq.**
**(Newman v. Pollock Cohen, LLP, Pollock, Cohen, and Leung)**

75.     Newman incorporates by reference paragraphs 1 through 74 above as if fully set forth in this paragraph.

76.     Defendants are Plaintiff's employer and as such are required to pay Plaintiff wages as agreed to upon the start of employment.

77.     Under Newman's compensation scheme and by agreement, Defendants are required to pay ten percent of *all* contingency recoveries up to $2 million and five percent on all contingency recoveries after $2 million each year to Newman which vested immediately according to the Employment Contract.

78.     Newman requested payment under his compensation scheme and agreement.

79.     Defendants engaged in conduct and emails stating that they will no longer honor The Employment Contract and have refused to pay Newman *any* compensation on The Multi-Million Dollar Case or any other contingency recoveries on matters active at the time of Newman's termination.

19

80.     This complaint was filed more than 60 days after Newman requested wages under his Employment Contract and Defendants refused to pay him.

81.     Defendants actions violated Pennsylvania's Wage Payment Collection Law, 43 Pa. Cons. Stat. § 260, *et seq.* Defendants Cohen, Pollock, and Leung are personally liable pursuant to 43 Pa. Cons. Stat. § 260.2a.

82.     Defendants' violations are not in good faith.

WHEREFORE, it is prayed that this Honorable Court award wages, pre- and post-judgement interest, costs and attorneys fees pursuant to 43 P.S. § 260.9(a), as well as liquidated and/or statutory damages pursuant to  43 P.S. § 260.10 and such other relief as the Court deems just and appropriate.

### Count III
### Breach of Contract
### (Newman v. Pollock Cohen, LLP)

83.     Newman incorporates by reference paragraphs 1 through 82 above as if fully set forth in this paragraph.

84.     Newman entered into The Employment Contract with Defendants in which Defendants agreed to pay Newman a Revenue Share as compensation for his services.

85.     Newman performed all the conditions precedent to his agreement with Defendants.

86.     Defendants refused to pay Newman his Revenue Share compensation.

87.     Defendants refusal to pay Newman the amounts he is currently due on the Multi-Million Dollar Case and refusal to pay on any other contingency recoveries from matters active on March 25, 2020 constitute a breach of that agreement.

20

88.     Newman has suffered economic losses because of Defendants' breach of the Employment Contract.

WHEREFORE, it is prayed that this Honorable Court hold Defendants joint and severally liable and award contract damages, an award of pre- and post-judgment interest, an award of costs, and such other relief as the Court deems just and appropriate.

### Count IV
### Unjust Enrichment
### (Newman v. Pollock Cohen, LLP, Pollock, Cohen, and Leung)

89.     Newman incorporates by reference paragraphs 1 through 88 above as if fully set forth in this paragraph.

90.     At all times relevant hereto, Defendants were authorized to and did act on their own behalf and on behalf of each other.

91.     Newman, through his efforts as an employee of The Firm,  conferred a benefit upon the Defendants.

92.     In particular, Newman's efforts contributed directly or indirectly to the resolution of the Multi-Million Dollar Case and the other contingent matters held by The Firm as of March 25, 2020.

93.     It would be unjust for Defendants to retain the benefits and value of Newman's contributions while simultaneously refusing to pay Newman as they had agreed.

94.     Newman is entitled to receive ten percent of *all* contingency recoveries up to $2 million each year and five percent on all contingency recoveries after $2 million each year for all contingency fee matters.

95.     The Defendants were enriched - without cost or setoff - by the value of Newman's

21

percentage of the contingency recoveries.

96.     Because of their unlawful conduct, Defendants were unjustly enriched.

97.     Newman has suffered economic loss and is entitled to restitution in *quantum meruit.*

WHEREFORE, it is prayed that this Honorable Court hold Defendants joint and severally liable and award restitution equal to the value of the benefit retained by the Defendants, an award of pre- and post-judgment interest, an award of costs, and such other relief as the Court deems just and appropriate.

### Count V
### Breach of Fiduciary Duty
### (Newman v. Pollock Cohen, LLP, Pollock, Cohen, and Leung)

98.     Newman incorporates by reference paragraphs 1 through 97 above as if fully set forth in this paragraph.

99.     The Defendants had a fiduciary duty to Newman to account for the contingency recoveries they receive and pay to him the Revenue Share.

100.    Defendants denial of Newman's request for payment on the Multi-Million Dollar Case on July 29, 2020 and refusal to account for or pay any other Revenue Share that may become due in the future, or even provide notice that The Firm's maters have resolved, constitute a breach of their fiduciary duties.

101.    As a result of Defendants' actions Newman suffered economic losses.

WHEREFORE, it is prayed that this Honorable Court hold Defendants joint and severally liable and award damages for breach of fiduciary duty, an award of pre- and post-judgment interest, an award of costs, and such other relief as the Court deems appropriate.

**Count VI**
<u>**Promissory Estoppel**</u>
**(Newman v. Pollock Cohen, LLP, Pollock, Cohen, and Leung)**

102.    Newman incorporates by reference paragraphs 1 through 101 above as if fully set forth in this paragraph.

103.    Defendants promised Newman the Revenue Share in lieu of a fair market salary, to entice him to accept the possibility of not making any salary,  join The Firm, and remain at The Firm during periods of financial distress.

104.    The Firm needed Newman's experience in complex commercial litigation in order to pay the bills until The Firm obtained enough whistleblower contingency recoveries or other monies to be self sufficient.

105.    Newman joined and remained at The Firm specifically because of the promised Revenue Share compensation and did in fact represent clients in complex commercial and other litigation including *qui tam* matters.

106.     Defendants terminated Newman's employment right before settling the Multi-Million Dollar Case and collecting significant fees.

107.    Newman spent significant time working on the Multi-Million Dollar Case.

108.    When Newman asked Defendants to pay him the Revenue Share on the Multi-Million Dollar Case, and generally to honor the Employment Contract as to other pending matters, Defendants refused.

109.    As a result of Defendants' actions, Newman suffered economic losses.

23

WHEREFORE, it is prayed that this Honorable Court hold Defendants joint and severally liable and award contract damages, an award of pre- and post-judgment interest, an award of costs, and such other relief as the Court deems just and appropriate.


Respectfully submitted;

Date: 11/24/2020

Rachel L. McElroy, Esq.
PA ID No. 321624
McElroy Law Firm LLC
461 Cochran Rd. #107,
Pittsburgh, PA 15228
Email: rachel@mcelroylawfirm.com
Phone: 412-620-8735
Attorney for Plaintiff

24

Exhibit A



# The Entrepreneurial Spirit

**Steve Cohen began law school at 58;
now, at 68, he's on the Rising Stars list** AS TOLD TO NANCY ROMMELMANN

**IN HIS OWN WORDS**

*Steve Cohen has worked in advertising and publishing, served in the Navy, written seven books, co-chaired Hillary Clinton's White House task force on early childhood literacy, and launched a number of startups. At age 58, he started law school. Last year, he cofounded the firm Pollock Cohen. This is his first year on the Rising Stars list. He's 68.*

The first really rich guy I knew said to me that he returns every phone call within 24 hours. And the first phone call that's returned is from the name or number he doesn't recognize—because he never knows what opportunity's going to be at the other end of the line. That influenced me. I return every call. If it's the right opportunity, take a chance.

Working for J. Walter Thompson advertising, I kept pitching to get *Time* as an account. They turned down JWT but they asked me to come over as head of marketing. I was there almost seven years. Then there was a power coup two levels above me and all of us were out. It was devastating. Nobody likes getting fired. Once, as an entrepreneur, I had to let everybody in the startup go. I had to hire everybody and I had to fire everybody. That was incredibly difficult.

A couple years [after *Time*], I wound up going to Scholastic. I started a bunch of new businesses and projects at both of those places. I have the entrepreneurial spirit.

What led me to law school at age 58? Drinking. I was at a cocktail party, it was January of 2009, and I was telling this person next to me about an article I had just written—about serving on the jury of a big terrorism case in the Southern District. The person says, "That's really interesting, are you a lawyer?" I said, "No, I just dress like one." He said, "Don't be a wise guy." I said, "Forgive me, we've just met. My wife, who's at the other end of the room, will confirm that I am a wise guy. But I'll tell you the truth: If I didn't have to take the LSAT, I'd go to law school now." The person said, "You're accepted!" I said, "Who are you?" The person said, "I'm a dean at New York Law School."

The brain is a muscle that, in my case, hadn't atrophied, but, boy, was it out of shape. I had to relearn how to read. Law school was a shock to the system. It was harder because there is something called middle-age memory loss, but it was easier because I knew how the world worked. I loved law school. It made me 20 years younger. And it made me 20 pounds heavier, because I would go out drinking with the other students.

On average, I was twice the age [of the other students]. I had a specific role, I think. I would raise my hand and say to the professor, "I don't get it." And I'd hear this collective sigh of relief, probably from a third of the class, who felt the same way: "Whew, thank God the old guy didn't get it, either." I had no shame. I was struggling just like everybody else. The *Wall Street Journal* did a piece about me, and they illustrated it with a photo of Rodney Dangerfield from the movie *Back to School*. It was totally appropriate!

I'm incredibly lucky now. I went to work for two of the top trial lawyers in the United States—Tom Moore and Judy Livingston—and Adam Pollock and I started this firm 15 months ago. Although it is very much a startup, entrepreneurial business, the things we wanted to do—principally focus on False Claims Act, whistleblower plaintiff's work—have a long lead time. It takes years for those cases to resolve and make money. So we take hourly billing. We do commercial litigations. We've done torts. We have a personal injury case we're taking right now.

People say, "Oh, I've always thought about going to law school." Do it. If it's half as satisfying for you as it has been for me, it's absolutely worth the investment. **SL**



**Steve Cohen**

POLLOCK | COHEN

CLASS ACTION/MASS
TORTS: PLAINTIFF

NEW YORK

## Wait ... Rising Star?

**From the Super Lawyers guidelines: "To be eligible for inclusion in Rising Stars, a candidate must be either 40 years old or younger, or in practice for 10 years or less."**

Super Lawyers®

RISING STARS 2019

# Exhibit B

From:            Adam Pollock <adam@pollockcohen.com>
Sent:            Sunday, April 29, 2018 9:48 AM
To:              Darth Newman
Subject:         Re: proposed terms for Special Counsel role

Hi Darth,

Steve asked me to clarify point 3, which had too many commas for his taste.... But there's no substantive change here:

1) We would set compensation at $10,000 / month as W2 income. To the extent that we don't have the cash flow to make the full $10k, we will pay simple interest at 33.33% / year on outstanding comp owed. While Steve and I wouldn't make a personal guarantee on the back comp / interest owed, Pollock Cohen LLP would continue to be obligated for what's owed as long as our firm or its successors exist. In other words, your backpay and interest immediately "vest" and are owed even if you leave.

I recognize that you would be incurring some risk here. But we should all know within a few months whether this is going to work out.   And, as discussed, we already have a lot of work and I'm cautiously optimistic that we'll have enough flow to pay you $10k/month without falling behind (and to draw me and Steve also at $10k/mo each).

2) We will pay for you to waive into NY. We will pay for your NY bar fees. And, as discussed, we would like to pay as many other bar fees and fringe benefits as possible. I have a call scheduled with Zenefits (outsourced HR) this afternoon, so I should have a better idea of what's possible after that.

3) In addition to the above:  We will pay you an annual bonus of 10% of all "contingency recoveries" (as defined below) up to the first $2 million per year. So, for example, if the firm has $2 million in contingency recoveries in one year, your bonus would be $200,000. After the first $2 million, your bonus would be 5% of the firm's contingency recoveries.    So, for example, if we have $10m in contingency recoveries in a year, you would get $200,000 + $400,000 = $600,000.

Contingency recoveries includes both fee awards and our part of contingency wins/settlements/awards.

Bonus is calculated before deductions for overheads/comp and non-case specific expenses.

On expenses, if for example a recovery is $105,000 and there were $5,000 in case specific expenses (*e.g.* depositions, accountants, case specific travel, etc), then our standard deal with our clients is $5000 off the top first, and then split-- *e.g.* $60,000 to client and $40,000 to us.   So your bonus would be calculated on the $40,000 remaining.

I think we have at least one case where we will eat expenses if not otherwise recovered.   So, for example of $100,000, $40,000 to us, $5,000 to recover case-specific expenses, and now your bonus is calculated on $35,000.  (And also, FWIW, Steve and I are now obviously sharing only from the remaining $35k in that scenario.)

*If* we line up serious litigation financing, we will likely have to change these terms because the funders will want to eat up 100% of contingency recoveries until they're paid their very generous terms.   So, it is very likely that there would be no monies left to bonus you (or me or Steve).  In return for giving up our upside, we would enjoy a more steady cash stream.  So, at that point (should it arrive), we would propose changing the terms so that you (and Steve and me) enjoy a more regular monthly flow.  In other words, less risk less reward.

AP

Adam Pollock
POLLOCK COHEN LLP
60 Broad St., 24th Fl.
New York, NY 10004
m: +1.718.407.4257
Adam@PollockCohen.com
www.PollockCohen.com

On Fri, Apr 27, 2018 at 10:23 AM, Adam Pollock <adam@pollockcohen.com> wrote:
  Great.  Very happy that you're joining our team.


  Adam Pollock
  POLLOCK COHEN LLP
  60 Broad St., 24th Fl.
  New York, NY 10004
  m: +1.718.407.4257
  Adam@PollockCohen.com
  www.PollockCohen.com

On Thu, Apr 26, 2018 at 7:31 PM, Darth Newman <dnewman@pollockcohen.com> wrote:
  Yep. Agree that is what we discussed.

  On Thu, Apr 26, 2018 at 7:26 PM, Adam Pollock <adam@pollockcohen.com> wrote:
  Confirmed.

  On expenses, if recovery is $105,000 and there were $5,000 case specific expenses (e.g. depositions accountants case specific travel etc), then our standard deal with our clients is $5000 off the top first, and then split-- e.g. 60,000 to client and 40,000 to us.   So your bonus would be calculated on the 40,000 remaining.

  I think we have at least one case where we will eat expenses if not otherwise recovered.   So, for example of $100,000, 40,000 to us, 5,000 to recover expenses, and now your bonus is calculated on 35,000.  (And also, fwiw, steve and I are now obvious sharing only from the remaining 35k in that scenario.)

  Adam Pollock
  POLLOCK COHEN LLP
  60 Broad St., 24th Fl.
  New York, NY 10004
  m: +1.718.407.4257
  Adam@PollockCohen.com
  www.pollockcohen.com

  On Apr 26, 2018, at 7:18 PM, Darth Newman <dnewman@pollockcohen.com> wrote:

2

Sounds good. We also discussed that contingent recoveries includes both fee awards and our part of contingency wins/settlements/awards and bonus is calculated before deductions for overheads/comp and non-case specific expenses.

~~~Darth

On Thu, Apr 26, 2018 at 6:47 PM, Adam Pollock <adam@pollockcohen.com> wrote:
> Per our discussion, on #3, Steve says:  no cap, 10% of recoveries up to the first $2 million, 5% thereafter annual.    So, for example, if we have $10m in contingency recoveries, you would get $200,000 + $400,000.


Adam Pollock
POLLOCK COHEN LLP
60 Broad St., 24th Fl.
New York, NY 10004
m: +1.718.407.4257
Adam@PollockCohen.com
www.PollockCohen.com

On Tue, Apr 24, 2018 at 11:52 AM, Adam Pollock <adam@pollockcohen.com> wrote:
> Hi Darth,

This email is intended to put numbers onto our discussions.

1)  We would set compensation at $10,000 / month as W2 income.  To the extent that we don't have the cash flow to make the full $10k, we will pay simple interest at 33.33% / year on outstanding comp owed.  While Steve and I wouldn't make a personal guarantee on the back comp / interest owed, Pollock Cohen LLP would continue to be obligated for what's owed as long as our firm or its successors exist.  In other words, your backpay and interest immediately "vest" and are owed even if you leave.

I recognize that you would be incurring some risk here.  But we should all know within a few months whether this is going to work out.   And, as discussed, we already have a lot of work and I'm cautiously optimistic that we'll have enough flow to pay you $10k/month without falling behind (and to draw me and Steve also at $10k/mo each).

2)  We will pay for you to waive into NY.  We will pay for your NY bar fees.  And, as discussed, we would like to pay as many other bar fees and fringe benefits as possible.  I have a call scheduled with Zenefits (outsourced HR) this afternoon, so I should have a better idea of what's possible after that.

3) In addition to the $10k/mo + 33% interest, we will pay you a bonus of 10% of all contingency recoveries, up to a maximum of $200k / annual bonus.

*If* we line up serious litigation financing, we will likely have to change these terms because the funders will want to eat up 100% of contingency recoveries until they're paid their very generous terms.  So, it is very likely that there would be no monies left to bonus you (or me or Steve).  In return for giving up our upside, we would enjoy a more steady cash stream.  So, at that point (should it arrive), we would propose changing the terms so that you (and Steve and me) enjoy a more regular monthly flow.  In other words, less risk less reward.

***

As I've said, we already think of you as a great teammate and we are looking forward to fully integrating you into our growing firm.

Yours,


Adam Pollock
POLLOCK COHEN LLP
60 Broad St., 24th Fl.
New York, NY 10004
m: +1.718.407.4257
Adam@PollockCohen.com
www.PollockCohen.com

Exhibit C

Pollock | Cohen LLP

+1.212.337.53



**RATED BY**
Super Lawyers

**Rising Stars**

**Steve Cohen**

SuperLawyers.com

# Steve Cohen

Email: SCohen@PollockCohen.com

Cell: +1.917.364.4197

For 35 years before going to law school, Steve was a successful publishing executive – including at Time and Scholastic – and the CEO of three internet start-ups. After being admitted to the New York Bar, he worked for three years for legendary trial lawyer Tom Moore's firm KDLM.

At KDLM, Steve was the principal investigator and lead attorney on a $1 billion False Claims Act qui tam case; won his first trial; and was awarded the American Bar Association's Outstanding Services Award for the Military Pro Bono Project. While at KDLM, Steve also worked on dozens of medical malpractice, personal injury, and product liability cases, from initial intake and evaluation through trial.

Exhibit D

| Close | Bonus Paid | Paid | Late | Today's Date | Days Late | Rate (Annual) | Interest | Total | Total Owed | Paid on amounts | Standard pay | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | $4,615.38 |
| 1/5/2020 | | | $4,615.38 | 7/6/2020 | 183 | 33.33% | $771.34 | | $5,386.72 | | | |
| 1/19/2020 | | $461.54 | $4,153.84 | 7/6/2020 | 169 | 33.33% | $641.10 | | $4,794.94 | | | |
| 2/2/2020 | | $461.54 | $4,153.84 | 7/6/2020 | 155 | 33.33% | $587.99 | | $4,741.83 | | | |
| 2/16/2020 | | $4,615.38 | - | | | | | | | | | |
| 3/1/2020 | | $4,615.38 | - | | | | | | | | | |
| 3/15/2020 | | $461.54 | $4,153.84 | 4/12/2020 | 28 | 33.33% | $106.22 | | $4,260.06 | | | |
| 4/12/2020 | | $1,009.62 | $3,250.44 | 4/14/2020 | 2 | 33.33% | $5.94 | | $3,256.38 | | | |
| 4/14/2020 | | $1,000.00 | $2,256.38 | 4/15 | 1 | 33.33% | $2.06 | | $2,258.44 | | | |
| 4/14/2020 | | $1,000.00 | $1,258.44 | 7/6/2020 | 83 | 33.33% | $95.39 | | $1,353.83 | | | |
| 3/29/2020 | | $4,615.38 | - | | | | | | | $4,615.38 | | |
| 4/26/2020 | | $0.00 | | | | | | | | $0.00 | | |
| 5/10/2020 | | $3,845.77 | - | | | | | | | $3,845.77 | | |
| 5/24/2020 | | $3,845.77 | - | | | | | | | $3,845.77 | | |
| 6/7/2020 | | $3,845.77 | - | | | | | | | $3,845.77 | | |
| 6/21/2020 | | $3,845.77 | - | | | | | | | $3,845.77 | | |
| 7/5/2020 | | 3158.35 | - | | | | | | | 3158.35 | | |
| | | and still owed from 2019 | | | | | | | $6,879.49 | | | |
| **TOTAL** | | **$36,781.81** | | | | | | | $23,156.81 | | **$0.00** outstanding owed |

$6,596.47  note, for W2 purposes, that paid $6596.47 on 1/3/2020, which was for Sun, Nov 24, 2019 paycheck + ▮▮▮▮ settlement

| Pay Period Close | Bonus Paid | Paid | Late | Today's Date | Days Late |
|---|---|---|---|---|---|
| Sun, Dec 23, 2018 | | $4,615.38 | $0 | | 0 |
| Sun, Jan 6, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, Jan 20, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, Feb 3, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, Feb 17, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, Mar 3, 2019 | | $4,615.38 | $0 | | 0 |
| 3/20 | $500 | | $0 | | 0 |
| Sun, Mar 17, 2019 | | $4,615.38 | $0 | | 0 |
| 3/22 | $125 | | $0 | | 0 |
| Sun, Mar 31, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, Apr 14, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, Apr 28, 2019 | | $4,615.38 | $0 | | 0 |
| 5/14 | $125 | | $0 | | 0 |
| Sun, May 12, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, May 26, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, Jun 9, 2019 | | $2,307.69 | $2,307.69 | 7/12 | 33 |
| Sun, Jun 23, 2019 | | $4,615.38 | $0 | | 0 |
| Tue, Jul 2, 2019 | $112.50 | | | | |
| Sun, Jul 7, 2019 | | **$0.00** | $4,615.38 | 8/9 | 33 |
| Sun, Jul 21, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, Aug 4, 2019 | | **$0.00** | $4,615.38 | 9/6 | 33 |
| Thu, Aug 15, 2019 | $1,336.98 | | | | |
| Sun, Aug 18, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, Sep 1, 2019 | | **$0.00** | $4,615.38 | 9/17 | 16 |
| Sun, Sep 15, 2019 | | **$0.00** | $4,615.38 | 9/19 | 4 |
| Tue, Sep 24, 2019 | $7,500.00 | | | | |
| Sun, Sep 29, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, Oct 13, 2019 | | $4,615.38 | $0 | | 0 |
| Tue, Oct 22, 2019 | | | $1,812.50 | | |
| Sun, Oct 27, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, Nov 10, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, Nov 24, 2019 | | | $4,615.38 | 1/3 | 40 |
| Sun, Dec 8, 2019 | | | $4,615.38 | 7/6 | 211 |
| Sun, Dec 22, 2019 | | $461.54 | $4,153.85 | 12/25 | 3 |
| Sun, Dec 22, 2019 | | $3,000.00 | **$1,165.23** | 7/6 | 197 |
| **$133,958.70** | **$9,699.48** | **$93,461.54** | | | |

| Rate (Annual) | Interest | Total | Total Owed | | 0 |
|---|---|---|---|---|---|
| | | | | 0 PAID on 1/2/2019 | |
| | | | | | |
| | | | ███████ | | |
| | | | ███████ | | |
| | | | ███████ | | |
| 33.33% | $69.54 | $2,377.23 | 0 | | |
| | | | ███████ | | |
| 33.33% | $139.08 | $4,754.46 | 0 | | |
| 33.33% | $139.08 | $4,754.46 | 0 | | |
| | | | ███████ | | |
| 33.33% | $67.43 | $4,682.82 | $0.00 | | |
| 33.33% | $16.86 | $4,632.24 | $0.00 | | |
| | | | ████ | | |
| | | $1,812.50 | ████ | | |
| 33.33% | $168.58 | $4,783.97 | | paid $6596.47 on 1/3 | |
| 33.33% | $889.27 | | $5,504.65 | | |
| 33.33% | $11.38 | **3000** | | paid $3000 of balance on 12/25 | |
| 33.33% | $209.61 | | $1,374.84 | | |
| | **$1,710.83** | **$30,797.69** | **$6,879.49** | | |

$6,596.47

| Pay Period Close | Principal | Today's Date | Days Late | Rate (Annual) | Interest | Total | Outstanding | | $0.00 |
|---|---|---|---|---|---|---|---|---|---|
| Fri, May 11, 2018 | $4,615.38 | 8/31 | 112 | 33.33% | $472.03 | $5,087.41 | $0.00 | PAID | |
| Fri, May 25, 2018 | $4,615.38 | 8/31 | 98 | 33.33% | $413.03 | $5,028.41 | $0.00 | PAID | |
| Fri, Jun 8, 2018 | $4,615.38 | 8/31 | 84 | 33.33% | $354.02 | $4,969.41 | $0.00 | PAID | |
| Fri, Jun 22, 2018 | $4,615.38 | 8/31 | 70 | 33.33% | $295.02 | $4,910.40 | $0.00 | PAID | |
| Fri, Jul 6, 2018 | $4,615.38 | 8/31 | 56 | 33.33% | $236.01 | $4,851.40 | $0.00 | PAID | |
| Fri, Jul 20, 2018 | $4,615.38 | 8/31 | 42 | 33.33% | $177.01 | $4,792.40 | $0.00 | PAID | |
| Fri, Aug 3, 2018 | $4,615.38 | | | 33.33% | $0.00 | $4,615.38 | $0.00 | PAID | |
| Fri, Aug 17, 2018 | $4,615.38 | | | 33.33% | $0.00 | $4,615.38 | $0.00 | PAID | |
| Fri, Aug 31, 2018 | $4,615.38 | | | 33.33% | $0.00 | $4,615.38 | $0.00 | PAID | |
| Fri, Sep 14, 2018 | $4,615.38 | | | 33.33% | $0.00 | $4,615.38 | $0.00 | PAID | |
| Fri, Sep 28, 2018 | $4,615.38 | 10/31 | 33 | 33.33% | $139.08 | $4,754.46 | 0 | PAID | |
| Fri, Oct 12, 2018 | $4,615.38 | 11/1 | 20 | 33.33% | $84.29 | $4,699.68 | 0 | PAID | |
| Fri, Oct 26, 2018 | $4,615.38 | 11/1 | 6 | 33.33% | $25.29 | $4,640.67 | 0 | PAID | |
| Fri, Nov 9, 2018 | $4,615.38 | | 0 | 33.33% | $0.00 | $4,615.38 | 0 | PAID | |
| Fri, Nov 23, 2018 | $4,615.38 | | 0 | 33.33% | $0.00 | $4,615.38 | 0 | PAID | |
| Fri, Dec 7, 2018 | $4,615.38 | | 0 | 33.33% | $0.00 | $4,615.38 | 0 | PAID | |
| Wed, Dec 12, 2018 | 375 | | 0 | 33.33% | $0.00 | $375.00 | 0 | PAID | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | $74,221.15 | | | | $2,195.78 | $76,416.93 | $0.00 | | |
| | | | | | | | | | |
| | | | | | | $12,000.00 | 1099 pay | | |
| | | | | | | $88,416.93 | | | |
| | | | | | | -$375.00 | | | |
| | | | | | | $88,041.93 | | | |

# Exhibit E

| From: | Darth Newman <newmandm@gmail.com> |
| --- | --- |
| Sent: | Thursday, March 26, 2020 11:18 AM |
| To: | Steve Cohen |
| Subject: | Recapping our call |

Thanks for chatting.

- Withdrawals - you are checking with Adam/Chris and then you and I will talk again.
- Emails - you're going to check on the bouncing/out of office message so we can coordinate. I'd really like to know what any out of office message will say before it starts going out.
  - Also - can you send me the "Admin" and "Housekeeping" folders?
- Client contact - We agreed that I would reach out to at least ████████████████ and will tell them the firm can no longer pay me but that I enjoyed working with them and can continue to do so - they need to choose their lawyers going forward.
  - Would be great if you could let me know what Adam said to them.
- Comp - as we discussed yesterday our deal stands such that I am owed expenses, comp, and interest through March 25, 2020 and 10/5% of contingency/atty fee awards on existing cases to be paid as the firm collects money.
- References - I will send potential employers to you and you will express your high degree of satisfaction with my work and acumen and great sadness that the firm could not continue to pay me but hope that it will be able to call me back in the future. I'm still "with" the firm a la the website and my resume but effectively on furlough and everyone is ok with me seeking other employment just sad to see me go.

Please let me know if my recapping does not match your memory of our chats.

# Exhibit F

| | |
|---|---|
| From: | Steve Cohen <SCohen@pollockcohen.com> |
| Sent: | Friday, April 17, 2020 5:58 PM |
| To: | Darth Newman |
| Subject: | Re: A reimbursement to you? |

Please send them an email to contact me. I will sign up to try to contact them. Am on with India now re my computer

Steve Cohen
60 Broad St., 24th Floor
New York, NY 10004
office: +1.212.337.5361
mobile: +1.917.364.4197
Pollock Cohen LLP

On Fri, Apr 17, 2020 at 5:55 PM Steve Cohen <SCohen@pollockcohen.com> wrote:

I will find it

Steve Cohen
60 Broad St., 24th Floor
New York, NY 10004
office: +1.212.337.5361
mobile: +1.917.364.4197
Pollock Cohen LLP

On Fri, Apr 17, 2020 at 5:54 PM Darth Newman <newmandm@gmail.com> wrote:
Response to first question.

On Fri, Apr 17, 2020, 5:53 PM Steve Cohen <SCohen@pollockcohen.com> wrote:

where?

Steve Cohen
60 Broad St., 24th Floor
New York, NY 10004
office: +1.212.337.5361
mobile: +1.917.364.4197

[Pollock Cohen LLP](#)

On Fri, Apr 17, 2020 at 5:39 PM Darth Newman <[newmandm@gmail.com](mailto:newmandm@gmail.com)> wrote:
FYI, you wrote first Fire not Hire.

On Fri, Apr 17, 2020, 10:12 AM Darth Newman <[newmandm@gmail.com](mailto:newmandm@gmail.com)> wrote:
Thank you! Kind words.

On Fri, Apr 17, 2020, 9:52 AM Steve Cohen <[SCohen@pollockcohen.com](mailto:SCohen@pollockcohen.com)> wrote:

**Have you had an occasion to refer another client to Darth and what was the feedback, if any?** *

> Feedback from clients was always incredibly positive.

**Would you work with/hire Darth again?** *

> Yes, absolutely.

**Reviews help our lawyers to receive more work: Please provide a few statements about your experience with Darth that we may share with others as they learn more about Darth's work** *

> Darth has a first-rate legal mind. He is one of the best (and fastest) legal researchers I have ever known. He understands complex legal issues, and cuts to the key legal issues very quickly. His legal writing is very good, and his negotiating skills even better. He would be a real asset to any firm and any client. I am truly sorry we can't currently employ him. (We are a start-up firm, and the COVID-19 pandemic has cut off most of our cash flow.)

SUBMIT REFERENCE

**REFERENCE QUESTIONNAIRE**

How did you come to work with Darth and in what capacity? *

> I am a founding partner of the firm, and Darth was our first hire: as Special Counsel.

Can you confirm when you worked with Darth and for how long? *

> From 2018 through March 2020.

How would you describe your experience overall, and as compared to other lawyers you've worked with? *

> Darth is incredibly bright, and a superb lawyer. He is among the smartest lawyers I have ever dealt with.

Please describe Darth's responsiveness and communication style. *

> Darth is direct, clear, and. very responsive.  On numerous occasions I have seen him handle difficult, prickly clients -- and their complex legal issues -- with tact and effectiveness.

Have you had an occasion to refer another client to Darth and what was the feedback, if any? *

> Feedback from clients was always incredibly positive.

I got their request and just submitted answers to their 4 short questions  -- attached.


Steve Cohen
60 Broad St., 24th Floor
New York, NY 10004
office: +1.212.337.5361
mobile: +1.917.364.4197
Pollock Cohen LLP


On Fri, Apr 17, 2020 at 12:26 AM Darth Newman <newmandm@gmail.com> wrote:
 Great, thanks. You should have questions or a link or something by email first thing Friday. I'd be curious what they ask as they only said it was 4 questions.

 ~~~Darth

On Thu, Apr 16, 2020 at 4:48 PM Steve Cohen <scohen@pollockcohen.com> wrote:
 Of course.

 Sent from my iPhone

 On Apr 16, 2020, at 4:26 PM, Darth Newman <newmandm@gmail.com> wrote:

       Can I use you as an attorney reference for signing up for Priorilegal?

You'll have to answer something like 4 questions about my skill as a lawyer.

~~~Darth

On Thu, Apr 16, 2020 at 11:52 AM Darth Newman <newmandm@gmail.com> wrote:
Thank you.

On Thu, Apr 16, 2020, 11:51 AM Steve Cohen <SCohen@pollockcohen.com> wrote:

cyetis@pollockcohen.com


Steve Cohen
60 Broad St., 24th Floor
New York, NY 10004
office: +1.212.337.5361
mobile: +1.917.364.4197
Pollock Cohen LLP


On Thu, Apr 16, 2020 at 11:43 AM Darth Newman <newmandm@gmail.com> wrote:
Gotcha. Thank you for clarification re: gusto. Super shitty re: Cathy's dad. What's her email address so I can send her a note?

Let me know on the other stuff when you can.

~~~Darth

On Thu, Apr 16, 2020 at 11:38 AM Steve Cohen <SCohen@pollockcohen.com> wrote:
Darth,

As bits of money come in, we're processing payments to folks as quickly as we can. I think the reason some are called "normal" and some "additional" is that Gusto is set up for "normal" on a specific schedule; so anything we want to process off-schedule has a different designation.

Candidly, I haven't looked into the insurance question, but I will. And I've gotten no traction on sharing timesheets. I've asked for the captions of the cases you

worked on, but that too has been delayed a week:
Cathy's father died the other day. Heart attack.

Although not much happening on individual cases, feel
like I'm on a hamster wheel trying to keep lights on. Just
heard -- only because I bugged a banker I know -- that
our PPP application which was submitted as soon as
they accepted applications -- had two errors that needed
to be corrected. (No one reached out to us.) And it
was  completely unintuitive -- with Adobe -- how to
amend the government form. Took almost 2 hours. But
I'm just bitching.

Hopefully back to you soon on other stuff.

Hang in there.


Steve Cohen
60 Broad St., 24th Floor
New York, NY 10004
office: +1.212.337.5361
mobile: +1.917.364.4197
Pollock Cohen LLP


On Thu, Apr 16, 2020 at 11:08 AM Darth Newman <newmandm@gmail.com> wrote:
I got a paycheck yesterday for "normal" income and then today for "additional earnings"
but still no expense reimbursements and the December report remains "processing". Can
you guys send me an updated salary tracker when you release pay so I know what's
happening?

Separately - what's the word re: insurance and timesheet?

Thanks!

~~~Darth

On Thu, Apr 9, 2020 at 11:25 AM Steve Cohen <SCohen@pollockcohen.com> wrote:
 Will follow up.

Steve Cohen
60 Broad St., 24th Floor
New York, NY 10004
office: +1.212.337.5361
mobile: +1.917.364.4197
Pollock Cohen LLP


On Thu, Apr 9, 2020 at 11:24 AM Darth Newman <newmandm@gmail.com> wrote:
FYI: When I log into expensify I see my Jan, Feb, March reports are now "approved" but
December is not.  I think it takes a bunch of days for payment to actually show up.

On Wed, Apr 8, 2020 at 9:43 AM Darth Newman <newmandm@gmail.com> wrote:
Yes it is and I already did. It's part of the March 2020 report that's pending Adam's
"approval".

On Wed, Apr 8, 2020 at 9:41 AM Steve Cohen <SCohen@pollockcohen.com> wrote:

Is this a reimbursement you are owed?

If so, please send an expense report, and we will pay
you, then deposit this.
Thanks


Steve Cohen
60 Broad St., 24th Floor
New York, NY 10004
office: +1.212.337.5361
mobile: +1.917.364.4197
Pollock Cohen LLP

# Exhibit G

From: **Darth M. Newman** <darth@dnewmanlaw.com>
Date: Tue, Jun 2, 2020 at 4:20 PM
Subject: Re: ███ Decision
To: Adam Pollock <Adam@pollockcohen.com>

████████████████████████████████████████████████████

Darth M. Newman, Esq.
Law Offices of Darth M. Newman LLC
412-436-3443

On Tue, Jun 2, 2020 at 4:09 PM Adam Pollock <Adam@pollockcohen.com> wrote:

Darth-- Thanks for your note.   I totally agree -- this was a nice win and very pleasing to see a well-written, well-reasoned decision.

I'll definitely keep you posted on decisions.  Sorry I didn't get this one to you sooner.

Best,

**Adam Pollock**
**Pollock Cohen LLP**
+1.646.290.7251
60 Broad St., 24th Flr.
New York, NY 10004

On Tue, Jun 2, 2020 at 12:12 PM Darth M. Newman <darth@dnewmanlaw.com> wrote:

I was checking on my withdrawals since I didn't get confirmation emails from NYSCEF and saw the full win counterclaim dismissal in ████! A really good decision, too.  In fact, the most comprehensive and well-cited opinion I think I've seen from NY Supreme at least in any of our cases. Looks like the judge agreed with essentially all of my arguments plus added the single instance rule which I do not recall briefing. Someone should move Perry to the commercial division.

If it's not too much trouble, please let me know as the cases I worked get decisions. I'm still interested in seeing how the work turns out and what happens for the clients, I'm not on all the dockets, and won't get email after I withdraw anyway.

~~~Darth

Darth M. Newman, Esq.

Law Offices of Darth M. Newman LLC
412-436-3443

From: **Darth M. Newman** <darth@dnewmanlaw.com>
Date: Fri, Jun 19, 2020 at 1:10 PM
Subject: Re: ███████████████████████
To: Adam Pollock <Adam@pollockcohen.com>
Cc: Steve Cohen <SCohen@pollockcohen.com>

Not a bad decision. At least now the justice seems to have a good sense of the allegations. ███████ smugness is likely to increase though.

Darth M. Newman, Esq.
Law Offices of Darth M. Newman LLC
412-436-3443

On Fri, Jun 19, 2020 at 9:10 AM Adam Pollock <Adam@pollockcohen.com> wrote:

> **Adam Pollock**
> **Pollock Cohen LLP**
> +1.646.290.7251
> 60 Broad St., 24th Flr.
> New York, NY 10004
>
>
> ---------- Forwarded message ---------
>
>
> ---------- Forwarded message ---------
> From: ███████████████████ >
> Date: Fri, Jun 19, 2020 at 8:39 AM
> Subject: ███████████████████████
> To: ████████████████████████████████████
> scohen@pollockcohen.com <scohen@pollockcohen.com>
>
> CounseL:
> I am attaching the decision and grey sheet for the motion to dismiss filed under motion sequence in 007.  The efiled version was stamped signed on June 5, 2020.  The signed and dated version should be efiled this week.

Thank you.

████████, Court Attorney for ████████████

Exhibit H



From: **Steve Cohen** <SCohen@pollockcohen.com>
Date: Wed, Jul 29, 2020 at 6:58 PM
Subject: Re: ████████████
To: Darth M. Newman <darth@dnewmanlaw.com>
Cc: Adam Pollock <Adam@pollockcohen.com>


Darth,

Your March 26th email did not conform to my memory of our conversation, which is why I didn't respond to it and why your separation discussions shifted to Adam.

When your work was good, it was very good. When it wasn't, it was the source of great frustration and too often went unremarked upon. That was probably a management failure on my part.

I have zero interest in -- or intention to -- discuss a bonus with you at this time.  Let's revisit in December.

Stay healthy.

Steve


**Steve Cohen**
60 Broad St., 24th Floor
New York, NY 10004
office: +1.212.337.5361
mobile: +1.917.364.4197
**Pollock_Cohen_LLP**

On Wed, Jul 29, 2020 at 1:30 PM Darth M. Newman <darth@dnewmanlaw.com> wrote:

Steve,

I am confused and disappointed that you are taking this position now, after we explicitly discussed that I would receive payment for any contingency recoveries as the firm received money, even after my departure. In fact, I recapped our several conversations in an email to you on March 26, 2020, and specifically asked that you "let me know if my recapping does not match your memory of our chats." That was after I told you on the phone I was going to send just such an email. Neither you nor anyone from the firm responded or otherwise communicated to dispute any portion of my recollection of our several conversations.

I am equally dismayed that you are referencing "substantial errors" I made during my employment at PC. This is the first time any such substantial errors are being brought to my attention. In fact, my work product was the subject of regular internal and external praise. We received accolades from opposing counsel for my efforts including at least one direct client referral and our assigned ████ in a state *qui tam* had rather wonderful things to say about my motion to dismiss briefing. I know our clients appreciated my advice and approach and each of the partners at various times went out of their way to praise my on-phone interactions with current and prospective clients - including very recently. As it relates to the recently terminated case, up until my dismissal, I was the lead person on our team interacting with our client and formulating our negotiation strategy. And, even after my dismissal, my work product continues to generate favorable judicial decisions. Plus, PC's private and public post-dismissal statements about me remained positive until I raised what appears to be the first post-termination revenue-sharing obligation. I could go on.

I too prefer an amicable resolution but, to me, an amicable separation includes honoring our commitments and contracts. If PC has already determined not to abide by our agreement, I do not understand what you plan to discuss or revisit in December. Perhaps you can help me understand your intention here?

Darth M. Newman, Esq.
Law Offices of Darth M. Newman LLC
412-436-3443


On Wed, Jul 22, 2020 at 9:07 AM Steve Cohen <SCohen@pollockcohen.com> wrote:

Dear Darth:

We disagree: we don't believe  you are entitled to a bonus for any case settled after your departure from the firm. Neither our agreement nor the law support your position. Similarly, at this time, we are not holding you accountable for the substantial errors you made while you were here.

We disagree with many of the contentions in your email.  Among others, your contention that bonuses were meant to be paid at the time revenue was received just isn't right.  The last time that you and Adam discussed that, you wrote:  "if we've discussed before then sorry for re-raising a closed issue  … ah, you are right, it was originally year end".

When we chose to terminate you, we decided to position it as a down-sizing due to Covid-19. If you wish to discuss the "for cause" reasons that underlied that decision, we can. In any event, no accounting is forthcoming.

We'd prefer to maintain the separation on as amicable terms as possible. Let's revisit in December.

Steve


**Steve Cohen**
60 Broad St., 24th Floor
New York, NY 10004
office: +1.212.337.5361

mobile: +1.917.364.4197
Pollock_Cohen_LLP

On Wed, Jul 15, 2020 at 11:33 PM Darth M. Newman <darth@dnewmanlaw.com> wrote:
Hello,

The revenue share was never discretionary nor tied to performance and Steve confirmed its continuing applicability after my dismissal. It was paid on an as-the-revenue-was-received basis for the entirety of our time together with, if memory serves, the exception of one payment that was forgotten/missed by mistake and then paid as soon as there was cash to cover it. In fact, during our pre-employment discussions, the firm explicitly rejected a performance or case-by-case revenue sharing scheme in favor of what we actually agreed to, which was to share revenues across all contingent matters for which the firm was engaged without regard to originations, time worked, or performance either in general or with regard to any particular matter. Your *post hoc* assessment of my performance is just not relevant.

I clearly accepted a smaller fixed salary in exchange for a non-discretionary share of the "upside" - sharing risk and reward. Adam often made statements acknowledging my fixed but deferrable salary was below market/too low and we all looked forward to the firm generating sufficient revenues to consistently pay all of the attorneys larger monthly amounts. I regularly made similar statements. A large part of my non-traditional compensation package was based on trust that the firm would both honor its commitments and be transparent about its revenues. The failure to provide notice about the recent case termination and apparent refusal to pay revenue share was, frankly, shocking.

If anything, my conversations with Adam over the past ~2 years led me to believe the firm would pay *discretionary* bonuses **on top of and in addition to** my agreed fixed salary and contingency recovery revenue share when the firm received large contingency recoveries. Indeed, this avowed openness and willingness to let the rising tide raise all ships was part of what attracted me to, and incentivized me to continue performing for, the firm.

Please provide the amount of all contingency recoveries the firm has obtained since March 25, 2020, a fixed date by which you plan to pay my contingency recovery revenue share and the amount thereof, and confirm that you will provide prompt notification of future case terminations together with the amounts of any resulting contingency recoveries for all matters that existed on March 25, 2020. I would greatly appreciate receiving this information by the 22nd.

~~~Darth


Darth M. Newman, Esq.
Law Offices of Darth M. Newman LLC
412-436-3443


On Sun, Jul 12, 2020 at 10:57 AM Adam Pollock <Adam@pollockcohen.com> wrote:
We disagree that your performance merits an end-of-the-year bonus, but we can discuss in December.

**Adam Pollock**
**Pollock_Cohen_LLP**
+1.646.290.7251
60 Broad St., 24th Flr.
New York, NY 10004


On Fri, Jul 10, 2020 at 12:45 PM Darth M. Newman <darth@dnewmanlaw.com> wrote:
Hello,

I can't conceive of a reason for the dismissal other than settlement, so congrats!

Not sure why you can't comment but it doesn't really matter. You do not need to disclose the terms of any possible settlement or other outcome but we do need to make arrangements for payment of my 10%/5% of any resulting firm payment which requires disclosure of the amount of any firm recovery but not any of the client facing terms/outcomes.

~~~Darth



Darth M. Newman, Esq.
Law Offices of Darth M. Newman
412-436-3443

On Thu, Jul 9, 2020, 8:45 PM Adam Pollock <Adam@pollockcohen.com> wrote:
Yes, will send tomorrow or this weekend.

We cannot comment on the ███ dismissal.

**Adam Pollock**
**Pollock_Cohen_LLP**
+1.646.290.7251
60 Broad St., 24th Flr.
New York, NY 10004

On Wed, Jul 8, 2020 at 10:03 PM Darth M. Newman <darth@dnewmanlaw.com> wrote:
Hello,

Can you shoot me an updated salary calculator spreadsheet when you get a chance?

~~~Darth

Darth M. Newman, Esq.
Law Offices of Darth M. Newman
412-436-3443

On Wed, Jul 1, 2020, 9:31 AM Darth M. Newman <darth@dnewmanlaw.com> wrote:
Bumping for response.

Darth M. Newman, Esq.
Law Offices of Darth M. Newman
412-436-3443

On Thu, Jun 25, 2020, 12:13 PM Darth M. Newman <darth@dnewmanlaw.com> wrote:
Hello,

I'm noticing (late) that the ████████ was voluntarily dismissed before the ███ was filed. ...
what happened? Did they finally agree to settle?

Darth M. Newman, Esq.
Law Offices of Darth M. Newman LLC
412-436-3443

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

DARTH NEWMAN,                                          CIVIL DIVISION

       Plaintiff,

    vs.                                               GD No.

POLLOCK COHEN, LLP,
STEVE COHEN,
CHRISTOPHER K. LEUNG, and
ADAM POLLOCK,

       Defendants.

## VERIFICATION

    I verify that the statements made in the foregoing Civil Complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements herein made are subject to the penalties of 18 Pa. Cons. Stat. Section 4904, relating to unsworn falsification to authorities.

Date: 11-20-2020                          By: _____

                                 Mr. Darth Newman, Esq.

25

**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the Public Access Policy of the Unified

Judicial System of Pennsylvania Case Records of the Appellate and Trial Courts that require

filing confidential information and documents differently than non-confidential information and

documents.

Submitted By:

*/s/ Rachel L. McElroy*

26

Home > Search > Case Search

🔍 Zoom-In    🔍 Zoom-Out    ⟳

## Case Details - GD-20-012030

**Newman vs Pollock Cohen LLP etal**

Filing Date:
11/24/2020
Filing Time:
03:22:51
Related Cases:
Consolidated Cases:
Judge:
No Judge
Amount In Dispute:
$ 0
Case Type:
Employment Dispute - Other
Court Type:
General Docket
Current Status:
Motion-Preliminary Injunction
Jury Requested:
Y

### ➖ Parties Count : 7

**--Litigants--**    [Search]    ▣ ▤ ▦▾

| LName | FName | MI | Type | Address | Initial Service Completion | Attorney |
|-------|-------|----|----|---------|---------------------------|----------|
| Newman | Darth | | Plaintiff | 461 Cochran Road Suite 107 PITTSBURGH PA 15228 | -- | Rachel Lynn Mcelroy |
| Pollock Cohen LLP | | | Defendant | 60 Broad Street Suite 2417 New York NY 10004 | -- | -- |
| Pollock | Adam | | Defendant | 60 Broad Street Suite 2417 New York NY 10004 | -- | -- |
| Leung | Christopher | | Defendant | 60 Broad Street Suite 2417 New York NY 10004 | -- | -- |
| Cohen | Steve | | Defendant | 60 Broad Street Suite 2417 New York NY 10004 | -- | -- |

Showing 1 to 5 of 5 rows

**--Attorney--**    [Search]    ▣ ▤ ▦▾

| LName | FName | MI | Type | Address | Phone |
|-------|-------|----|----|---------|-------|
| Mcelroy | Rachel | Lynn | Plaintiff's Attorney | 461 Cochran Road P.O. Box 107 Pittsburgh PA 15228 | -- |
| Presley | Marla | N. | Defendant's Attorney | | -- |

Showing 1 to 2 of 2 rows

**--Non Litigants--**    [Search]    ▣ ▤ ▦▾

No matching records found

### ➖ Docket Entries Count : 3

[Search]    ▣ ▤

| Filing Date | Docket Type | Docket Text | Filing Party | Redacted Document |
|-------------|-------------|-------------|--------------|-------------------|
| 12/18/2020 | Motion-Preliminary Injunction | | Darth Newman | 📄 Document 3 |
| 12/15/2020 | Acceptance of Service | of Writ of Summons on behalf of Defts. Pollock Cohen LLP, Steve Cohen, Christopher K. Leung, and Adam Pollock on 12/15/2020 | Pollock Cohen LLP | 📄 Document 2 |

| Filing Date | Docket Type | Docket Text | Filing Party | Redacted Document |
|---|---|---|---|---|
| 11/24/2020 | Complaint | | Darth Newman |  Document 1 |

Showing 1 to 3 of 3 rows

### ▬ Event Schedule Count : 0

Search [            ]

No matching records found

### ▬ Services Count : 0 Complete Service History

Search [            ]

No matching records found

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

DARTH NEWMAN,

               Plaintiff,

    v.

POLLOCK COHEN, LLP,
STEVE COHEN,
CHRISTOPHER K. LEUNG, and
ADAM POLLOCK,

               Defendants.

CIVIL DIVISION

Case No. GD-20-012030

JURY TRIAL DEMANDED

**ACCEPTANCE OF SERVICE**
**AND STIPULATION OF EXTENSION OF**
**TIME TO RESPOND TO COMPLAINT**

Filed on behalf of: Defendants

Counsel of record for this party:

Marla N. Presley, Esquire
PA ID No. 91020
Marla.Presley@jacksonlewis.com
Jackson Lewis, PC
1001 Liberty Avenue
Suite 1000
Pittsburgh, PA 15222
T.: (412) 338-5148
F.: (412) 232-3441

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| DARTH NEWMAN, | ) | |
| | ) | Case No. GD-20-012030 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| POLLOCK COHEN, LLP, | ) | |
| STEVE COHEN, | ) | |
| CHRISTOPHER K. LEUNG, and | ) | |
| ADAM POLLOCK, | ) | |
| | ) | |
| Defendants. | ) | |

## ACCEPTANCE OF SERVICE
## AND STIPULATION OF EXTENSION OF TIME TO RESPOND TO COMPLAINT

I, Marla N. Presley, hereby accept service of the Writ of Summons on behalf of the

Defendants Pollock Cohen, LLP, Steve Cohen, Christopher K. Leung, and Adam Pollock as of

December 15, 2020, and certify that I am authorized to do so.

The Parties also stipulate that Defendants have 60 days from the date of filing to respond

to the Complaint.

Respectfully submitted,

Marla N. Presley, Esquire
PA ID No. 91020
Marla.Presley@jacksonlewis.com
Jackson Lewis, PC
1001 Liberty Avenue
Suite 1000
Pittsburgh, PA 15222
T.: (412) 338-5148
F.: (412) 232-3441

*Attorneys for Defendants*

Dated: December 15, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on this date a true and correct copy of the foregoing document was served on the following individual via email:

Rachel L. McElroy, Esq.
McElroy Law Firm LLC
461 Cochran Rd. #107
Pittsburgh, PA 15228
rachel@mcelroylawfirm.com
412-620-8735

Dated: December 15, 2020                    Marla Presley, Esquire

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

DARTH NEWMAN

              Plaintiff,

      **v.**

POLLOCK COHEN, LLP,
STEVE COHEN
CHRISTOPHER K. LEUNG, and
ADAM POLLOCK,
              Defendants.

CIVIL DIVISION

No.: GD 20-012030

**MOTION FOR PRELIMINARY INJUNCTION**

Filed on Behalf of Plaintiff

Counsel of Record for Plaintiff:

Rachel L. McElroy
PA ID No. 321624
McElroy Law Firm, LLC
461 Cochran Rd. #107
Pittsburgh, PA 15228
Phone: 412-620-8735
Email: rachel@mcelroylawfirm.com

Counsel of Record for Defendants:

Marla N. Presley, Esq.
Jackson Lewis, P.C.
Liberty Center
1001 Liberty Avenue, Suite 1000
Pittsburgh, PA 15222
Phone: 412-338-5148
Email: marla.presley@jacksonlewis.com

**Date Motion Served:**
**December 17, 2020**

I, <u>Rachel McElroy, Esq.</u> HEREBY CERTIFIY THAT THIS MOTION REQUESTS RELEIF FOR A CASE THAT HAS NEVER APPEARED ON ANY PUBLISHED TRIAL LIST, HAS NOT BEEN DESIGNATED COMPLEX, AND OR COMPLEX DESIGNATION IS NOT PENDING.

              <u>/s/ Rachel McElroy</u>

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

DARTH NEWMAN,                                    CIVIL DIVISION

        Plaintiff,

    vs.                                                  GD No. GD 20-012030

POLLOCK COHEN, LLP,
STEVE COHEN,
CHRISTOPHER K. LEUNG, and
ADAM POLLOCK,

        Defendants.

## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff, Darth Newman, by and through his undersigned attorney, files the following Motion for Preliminary Injunction.

1. Plaintiff Darth Newman respectfully moves this Court for a Preliminary Injunction pursuant to Rule 1531 of the Pennsylvania Rules of Civil Procedure.

2. On November 24, 2020, Plaintiff filed his Verified Complaint with this Court, seeking, *inter alia*, payment for unpaid wages and declarative relief against Defendants Pollock Cohen, LLP (hereinafter "The Firm"), Adam Pollock, Christopher Leung, and Steve Cohen (collectively "Defendants"). The Verified Complaint is attached hereto and the allegations contained therein are incorporated into and made part of this Motion as Exhibit A.

3. Defendants' attorney accepted service and filed an Acceptance of Service on December 15, 2020.

4. As set forth fully in the Verified Complaint, Plaintiff's action was brought due to Defendants' failure to pay Newman compensation under the agreement ("Employment Agreement") between themselves and Newman in which The Firm agreed to pay Newman five to ten percent of *all*

1

contingency recoveries and attorneys' fee awards as a part of his compensation (hereinafter "Revenue Share"). In the Complaint, Newman seeks a declaration that the Employment Agreement is enforceable and asks this court to require Defendants to pay Plaintiff 10% of all contingency recoveries received by Defendants for any such matters for the first $2 million of recoveries each year and then 5% thereafter.

5.      Defendants, at all times, were aware of and fully understood the Employment Agreement, in fact, they wrote it.

6.      On March 25, 2020, The Firm terminated Newman's employment due to financial hardships (hereinafter "Separation Date"). The Firm, according to Defendants, was unable to pay its basic monthly bills and owed Newman substantial back pay.

7.      Shortly before Newman's separation from The Firm, Newman was in the middle of managing the final negotiations on a large multi-million dollar *qui tam* contingency fee case (hereinafter "Multi-Million Dollar Case").

8.       When Newman left Defendants' employment, Defendants agreed to continue to pay Newman on the contingency cases that The Firm settled or otherwise resolved after his departure. This conversation was recapped in an email sent to Defendant Cohen on March 26, 2020.

9.      On or about March 26, 2020, in addition to validating the Employment Agreement, Defendants agreed to keep Newman informed about contingency fee cases as they settled or were otherwise resolved. Defendants kept Newman informed about other cases but actively took steps to hide the settlement of the Multi-Million Dollar Case.

10.     Despite Defendants' known contractual obligations under the Employment Agreement, Defendants did not pay Newman his share of the contingency fee on the Multi-Million Dollar Case.

11.     On or about July 9, 2020, after learning of the Multi-Million Dollar Case settlement, Newman requested Defendants pay Revenue Share under the Employment Agreement and Defendants

refused.

12.     On September 30, 2020, Newman again requested payment on the Multi-Million Dollar Case. Newman also requested that Defendants escrow disputed monies owed to him. Defendants did not provide Newman with evidence that they had escrowed the disputed Revenue Share and did not respond to that portion of Newman's request. (Exhibit B pg 8)

13.      On November 9, 2020, Newman again requested that Defendants escrow the disputed Revenue Share. Defendants failed and refused to respond to Newman's second request for the disputed Revenue Share to be escrowed. (Exhibit C pg 2)

14.     For the reasons set forth herein, Newman asks the Court to grant his Preliminary Injunction enjoining the Defendants to escrow the disputed portions of any contingency recoveries received by Defendants after Newman's Separation Date.

15.     Defendants received significant compensation in the form of a contingency fee from the Multi-Million Dollar Case.

16.     Newman disputes that The Firm is entitled to the entire contingency fee.

17.     Defendants are required under Pa.R.P.C. 1.15 and NY.R.P.C. 1.15 to escrow any disputed fee amounts. Specifically, NY.R.P.C. 1.15(b)(4) states:

> Funds belonging in part to a client or third person and in part currently or potentially to the lawyer or law firm shall be kept in such special account or accounts, but the portion belonging to the lawyer or law firm may be withdrawn when due **unless the right of the lawyer or law firm to receive it is disputed by the client or third person, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved**.
>
> (Emphasis Added)

18.     Plaintiff believes that Defendants have refused to escrow the funds because The Firm is financially unstable and because Defendants have ignored each of several requests that Defendants

confirm they are following the Rules of Professional Conduct and holding the disputed funds in escrow.

19.     On or about March 26, 2020, Defendant Cohen told Newman that The Firm was unable to pay their next regularly scheduled rent payment.

20.     At the time of the Separation Date, Newman was owed approximately $25,000 in back wages.

21.     Throughout Newman's employment The Firm did not have enough money to make Newman's salary and rarely had enough to cover partner draw and expenses.

22.     For the several months preceding the Separation Date, the Firm had not been making regularly scheduled salary payments to attorneys.

23.     Upon information and belief, at the time of the Separation Date, The Firm was insolvent.

24.     Based on Newman's understanding of The Firm's finances, the Multi-Million Dollar Case revenue will be consumed in ten to twelve months by The Firm's regular expenses.

25.     Despite The Firm's very recent economic troubles, Defendants have continued to spend money, including maintaining an office in Manhattan, NY, adding additional attorneys, and opening an office in San Francisco, CA, one of the most expensive cities in the world.

26.     In or around early December, 2020, The Firm posted a job add for an associate attorney in New York City, NY. (Exhibit D)

27.     As recently as December 14, 2020, The Firm posted another job ad for an associate attorney in San Francisco, CA. (Exhibit E)

28.     Newman has suffered, and will continue to suffer, irreparable harm that cannot be compensated by monetary damages due to The Firm's dissipation of assets. Dissipation of The Firm's assets will render money damages inadequate, thereby necessitating equitable relief.

29.     A greater injury will occur from refusing the injunction than from granting it as the firm

4

depletes its assets from the Multi-Million Dollar Case on various new attorneys and offices when a mere eight months ago it was insolvent.

30.     The injunction will restore the parties to the status quo by requiring Defendants to abide by NY.R.P.C. 1.15(b)(4) which requires that all disputed fees be escrowed.

31.     Spending the disputed portion of the Multi-Million Dollar Case contingency fee is against the Rules of Professional Conduct and requiring Defendants to keep the amount and any future disputed amounts in escrow is reasonably suited to abate the infraction.

32.     Newman's right to relief is clear, Defendants are in clear violation of the Rules of Professional Conduct and he only asks that the disputed portion of any fees be escrowed until the dispute is resolved.

33.     The granting of the requested preliminary injunction will not harm the public interest. Rather, it is in the public interest to enjoin Defendants from spending disputed attorneys' fees and enhances confidence in the Legal Profession.

34.      Newman has a substantial likelihood of prevailing on the merits at trial. (Exhibit A.)

35.     The balance of equities weighs in favor of Newman because the injuries and threatened injuries to Newman outweigh any harm an injunction poses to Defendants.

36.     In accordance with Pa. R. Civ. P. 1531(b), Newman is prepared to post bond or security in an amount deemed reasonable and necessary by the Court. Plaintiff believes, and therefore avers, that a bond in the amount of $1 is appropriate in this matter.

WHEREFORE, Plaintiff Newman, based on his Verified Complaint and Exhibits, respectfully request that the Court enter a Preliminary Injunction as set forth in the attached Order of Court.

Respectfully submitted:

Rachel L. McElroy, Esq.
Attorney for Plaintiff Darth Newman

# Exhibit A
# Motion for PI:
# Verified Complaint

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

DARTH NEWMAN,                                          CIVIL DIVISION

        Plaintiff,

  vs.                                               GD No.

POLLOCK COHEN, LLP,
STEVE COHEN,
CHRISTOPHER K. LEUNG, and
ADAM POLLOCK,

        Defendants.                          **CIVIL COMPLAINT AND
                                                       DECLARATORY JUDGEMENT**


Filed on Behalf of Plaintiff

Counsel of Record for this Party:

Rachel L. McElroy
PA ID No. 321624

McElroy Law Firm LLC
461 Cochran Rd. #107
Pittsburgh, PA 15228
412-620-8735
email: rachel@mcelroylawfirm.com


**JURY TRIAL DEMANDED**

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

DARTH NEWMAN,                                             CIVIL DIVISION

          Plaintiff,

      vs.                                                      GD No.

POLLOCK COHEN, LLP,
STEVE COHEN,
CHRISTOPHER K. LEUNG, and
ADAM POLLOCK,

          Defendants.


## <u>NOTICE TO DEFEND</u>

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any property or other rights important to you.


**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**LAWYER REFERRAL SERVICE
ALLEGHENY COUNTY BAR ASSOCIATION
400 KOPPERS BUILDING
436 SEVENTH AVE.
PITTSBURGH, PENNSYLVANIA 15219**

**Telephone: (412) 261-5555**

2

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

DARTH NEWMAN,                                    CIVIL DIVISION

        Plaintiff,

    vs.                                              GD No.

POLLOCK COHEN, LLP,
STEVE COHEN,
CHRISTOPHER K. LEUNG, and
ADAM POLLOCK,

        Defendants.

<u>**CIVIL COMPLAINT**</u>

AND NOW, comes Plaintiff Darth Newman ("Newman"), by and through his attorney, Rachel L. McElroy, Esquire and files the within Civil Complaint, averring as follows:

**I. Introduction**

1.    Plaintiff Darth Newman brings this lawsuit to recover damages for lost wages, breach of contract, restitution for unjust enrichment, statutory fines for violations related to his various counts, pre- and post-judgment interest and attorney's fees and cost. Newman worked for Defendant Pollock Cohen, LLP (hereinafter "The Firm") as Special Counsel until Defendants terminated his employment due to COVID-19 related financial difficulties on March 25, 2020. As a part of Newman's compensation, The Firm agreed to pay him five to ten percent of *all* contingency recoveries and attorneys' fee awards. Just prior to his termination, Newman spent significant time working on a multi-million dollar contingency case. After terminating Newman's employment, the multi-million dollar case settled and The Firm obtained significant fees. The Firm took steps to conceal the multi-million dollar case settlement from Newman.

3

Newman seeks payment on the contingency recovery for the multi-million dollar case and all contingency matters active at the time of his termination in accordance with his compensation agreement.

## II. Parties

2.     Plaintiff, Darth Newman, is an adult individual who resides in Moon Township, Allegheny County, Pennsylvania.

3.     Defendant, Pollock Cohen, LLP (hereinafter "The Firm"), is a New York limited liability partnership with a principal place of business located at 60 Broad Street, Suite 2417 24th Floor, New York, New York, 10004.

4.     Defendant, Steve Cohen, is an individual who resides in Manhattan, New York County, New York.

5.     Defendant, Christopher K. Leung, is an individual who resides in Brooklyn, Kings County, New York.

6.     Defendant, Adam Pollock, is an individual who resides in Brooklyn, Kings County, New York.

7.     On information and belief, Defendants Cohen, Pollock, and Leung are equal equitable partners in The Firm and as such are jointly liable for the actions of The Firm.

## III. Jurisdiction and Venue

8.     This Court has general jurisdiction over all claims against Defendants pursuant to 42 Pa. C.S. §5301(2).

9.     Defendants regularly conduct business in Allegheny County, Pennsylvania, including filing lawsuits on behalf of Pennsylvania clients in the United States District Court for

4

the Western District of Pennsylvania, counseling clients in the Fifth Judicial District of Pennsylvania and sending demand letters on behalf of Allegheny County clients.

10.     Defendants represented to clients that they conduct business in Pennsylvania by printing business cards listing Pittsburgh as a location and by advertising online as serving clients in Allegheny County.

11.     One or more transactions or occurrences out of which this cause of action arose took place in Allegheny County, Pennsylvania, as set forth in Paragraphs 14 through 70 below.

12.     In addition, at all times relevant here, Newman continued to live and work in Allegheny County, Pennsylvania and was the only Firm lawyer licensed to practice in the Commonwealth of Pennsylvania.

13.     As such, venue is proper in this Court pursuant to Pa.R.Civ.P. 2179(a).

### III. Facts

#### A. Defendants Hire Newman

14.     In or around December 2017, prior to The Firm's incorporation, Defendant Pollock contacted Newman about a position at Pollock's prior employer.

15.     In or around January 2018, when it became apparent Pollock intended to start his own firm with Cohen, Pollock reached out to Newman about working at The Firm.

16.     Defendants Pollock and Cohen incorporated The Firm on March 19, 2018.

17.     At all times relevant to this action, Defendants Pollock and Cohen have policy making and decision making authority over Newman's wages and payments.  After Defendant Leung joined The Firm as the third co-equal partner in or around the spring of 2019, he also had policy making and decision making authority over Newman's wages and payments. Discovery

5

will show Leung knew about and was involved in The Firm's decision to deny Newman wages.

18.    In or around April 2018, Newman began working at The Firm as an independent contractor in exchange for twelve thousand dollars ($12,000) per month.

19.    Defendants knew that Newman resided in Pittsburgh, Pennsylvania when they contacted him about working at The Firm.

20.    Newman is licensed to practice law in the Commonwealth of Pennsylvania, State of New Jersey and New York State.

21.    At all relevant times in this action, Newman continued to live and work in Pennsylvania.

22.    In or around April 2018, Newman had a phone call with Defendant Pollock to discuss joining The Firm full time. (hereinafter "April 2018 Phone Call")  During the April 2018 Phone Call Defendant Pollock explained to Newman:

    a.  That he and Defendant Cohen intended for The Firm to primarily file whistleblower/*qui tam* claims and generally eschew hourly billable work.

    b.  That The Firm intended to take all whistleblower/*qui tam* claims on a contingency basis, and that although they can take years to resolve, whistleblower/*qui tam* claims can result in significant fees.

    c.  Despite The Firm's goal of primarily filing whistleblower/*qui tam* actions, Defendants Pollock and Cohen also stated that they wanted to bring on an attorney with significant knowledge and experience managing complex business litigation full time.

    d.  They were interested in bringing Newman to The Firm because of his experience managing complex business litigation and they enjoyed working with him.

    e.  The Firm would need to take on cases that paid on a billable hour or hybrid fee schedule until The Firm either secured litigation funding through an outside agency, or won a substantial *qui tam* contingency fee award. The Frim planned to bridge profitability with commercial litigation until the *qui tam* cases were resolved.  Defendant Cohen publicly acknowledged similar comments in an

6

article for Super Lawyers Magazine, New York Metro (Exhibit A).

23.     Neither Defendant Pollock nor Defendant Cohen had experience practicing complex business litigation. Defendant Cohen had only been an attorney for less than four and a half years prior to starting The Firm, and during those years he primarily worked on a large *qui tam* case, medical malpractice, and personal injury cases. Defendant Pollock spent the majority of his legal career defending white collar criminal cases and representing the State of New York as an Assistant Attorney General.

**B. The Compensation Scheme**

24.     After the April 2018 Phone Call, on or about April 24, 2018, Defendants Pollock and Cohen offered Newman employment at The Firm in the position of Special Counsel due in part to his complex business litigation experience.

25.     However, Defendants were not able to pay Newman a base salary equivalent to the market rate for his services because The Firm did not have steady cash flow.  As a result, on or around April 24, 2018, Defendants Pollock and Cohen offered to pay Newman ten thousand dollars ($10,000) per month, and a "bonus" of 10% of all contingency recoveries, up to a maximum of $200k per year bonus (hereinafter the "Initial Offer"). The Initial Offer based pay was less than Newman made per month working as a contract attorney with The Firm.

26.     In follow-up emails, Defendants clarified that there would be no cap, and Newman would get 10% of recoveries up to the first $2 million, 5% thereafter, and that contingency recoveries "includes both fee awards and our part of contingency wins/settlements/awards and bonus is calculated before deductions for overheads/comp and non-case specific expenses." (Exhibit B)

7

27.     By accepting a reduced base salary and payroll deferral, Defendants acknowledged Newman was taking significant risk which would be offset with a portion of The Firm's contingency recoveries. As Defendant Pollock stated: "I recognize that you would be incurring some risk here."  (Exhibit B)

28.     Furthermore, as Pollock repeated in several emails, Defendants were pursuing litigation funding  and would seek to renegotiate Newman's compensation structure if they secured funding. It was anticipated that securing litigation funding would permit The Firm to more regularly pay each lawyer the same $10,000 per month but likely eat up the proceeds from contingency wins such that neither Newman nor the partners would receive payments in excess of their common base compensation. As Defendant Pollock put it: "In other words, less risk less reward." (Exhibit B)

29.     On or about April 29 2019, Defendants further outlined the employment agreement in an email to Newman with the compensation terms as follows:

> "1. We would set compensation at $10,000/month as W2 income. To the extent that we don't have the cash flow to make the full $10k, we will pay simple interest at 33.33% / year on outstanding comp owed. While Steve and I wouldn't make a personal guarantee on the back comp/interest owed, Pollock Cohen LLP would continue to be obligated for what's owed as long as our firm or its successors exist. In other words, your backpay and interest immediately "vest" and are owed even if you leave. I recognize that you would be incurring some risk here..."

> "3. In addition to the above: We will pay you an annual bonus of 10% of all "contingency recoveries" (as defined below) up to the first $2 million per year… Contingency recoveries includes both fee awards and our part of contingency wins/settlements/awards. Bonus is calculated before deductions for overheads/comp and non-case specific expenses."

> (Exhibit B) (hereinafter "Employment Contract").

30.     Newman accepted The Firm's employment offer, and The Firm became Newman's employer.

31.     In the Employment Contract the Parties agreed in writing to the terms of Newman's payment compensation or in the alternative the Firm agreed to incur an obligation to Newman which can be inferred from the relationship between the parties.

32.     The "annual bonus" as outlined in section 3 of the Employment Contract (Exhibit B) was a part of Newman's core employee compensation and was not a discretionary bonus. Instead the "bonus" is additional compensation in the form of revenue share on accounts that existed during Newman's employment. The Firm offered Newman the revenue share on contingency accounts to entice Newman to join the Firm. Newman accepted the core compensation "bonus" because while he shared the downside risk in a new and unproven firm that had no regular source of income, he would also share in the Firm's upside. As such, the "bonus" immediately vested when Newman agreed to work for the Firm. (hereinafter "Revenue Share")[1] The Revenue Share was not discretionary and in practice was paid on all contingency fee recoveries.

    a.  The Revenue Share was not tied to client originations.

    b.  The Revenue Share was not tied to work performance.

    c.  The Revenue Share was not tied to work effort or any number of hours worked or billed.

    d.  The Revenue Share was not tied to work effort or any number of hours worked or

---

[1] The "bonus" is referred to as a Revenue Share because the term "bonus" is a misnomer and is not used in it's legal sense. Equity share is also not fully descriptive because Newman did not adopt the liabilities of the Firm nor did he have decision making authority. Therefore, Revenue Share is the most descriptive term for this part of Newman's core compensation with the Firm..

9

billed on any particular case or overall.

33.     Defendant Pollock explained to Newman that he and The Firm specifically rejected any compensation scheme that paid lawyers based on the work performed on any particular case. Defendant Pollock had a poor experience working at an unrelated law firm that incentivized attorneys to only work on the cases they brought into the business. Defendants Pollock and Cohen wanted to create a firm based on team work and equal shares that permitted lawyers to work the cases they enjoyed and not work the ones they did not while maintaining a compensation structure based on shared value.

34.     Defendants Pollock and Cohen already had some active cases when they approached Newman to work for them and they stated that they would include all contingency recoveries from those cases as part of the Revenue Share even if Newman never performed any work on those cases.

35.     Two of those cases together represented the $1 billion *qui tam* case still referenced in Defendant Cohen's law firm bio but for which another law firm was expected to be primarily responsible. (Exhibit C) As a holdover from his government service, Defendant Pollock was ethically barred from having any contact with those cases.

36.     Defendants did not limit the Revenue Share to matters that were settled while Newman was employed at The Firm, as whistleblower cases can take years to resolve and require substantial early effort.

37.     Defendants explained that they could not offer Mr. Newman a "market value" salary because The Firm generated insufficient revenue to fund lawyer compensation and

expenses. Instead, The Firm offered Mr. Newman the Revenue Share and the same salary draw as the two partners, Mr. Cohen and Mr. Pollock.

38.     Newman accepted Defendants employment offer because Defendants led him to reasonably believe that the Revenue Share applied to all contingency fee matters held by The Firm during Newman's employment, regardless of when those cases resolved, if ever.

39.     After Newman accepted employment with The Firm, he was not paid the Monthly Salary for approximately five months in 2018, but was later compensated with interest when The Firm generated revenue.

40.     Newman's base compensation was similarly deferred during various other periods of time during his employment. At the time of his termination, The Firm owed Newman approximately $25,000 plus interest in unpaid base compensation.

41.     While Newman worked for The Firm, Defendants always paid Newman the Revenue Share when the revenue was obtained by The Firm. Newman has a list of all Revenue Share and when it was paid (Exhibit D).[2]

## C. The Amicable Separation

42.     On or about March 25, 2020, Defendant Cohen informed Newman that The Firm had to terminate Newman's employment due to financial hardships. Newman's salary was the largest line-item expense for The Firm, and The Firm was incurring back pay and interest obligations on unpaid compensation owed to Newman from 2019 and 2020. Defendant Cohen also stated he did not know how The Firm would pay rent for the  month.

---

[2] The lone exception was a $1,812.50 Revenue Share payment that was mistakenly unpaid and then made up when The Firm next had sufficient revenue.

43.     During that call, Newman and Defendant Cohen discussed various separation issues including, obtaining timesheets, access to non-client emails, payment of outstanding expenses, sharing captions of cases to facilitate withdrawals, ensuring back pay payments were accurate, and payment of the Revenue Share. During this conversation, Defendant Cohen also agreed to give Newman a positive public-facing reference and keep his profile active on The Firm's website until Newman found another job. The separation was amicable.

44.     On March 26, 2020, Newman sent Defendant Cohen an email confirming the details of his March 25, 2020 conversation with Defendant Cohen including the continued payment of the Revenue Share on all contingency fee matters held by The Firm at the time of Newman's separation. The relevant section of the email stated: "Comp - as we discussed yesterday our deal stands such that I am owed expenses, comp, and interest through March 25, 2020 and 10/5% of contingency/attorney fee awards on existing cases to be paid as the firm collects money." (Exhibit E)(hereinafter "Recapping Our Call Email")

45.     The Recapping Our Call Email closed with a specific request that Defendant Cohen "Please let me know if my recapping does not match your memory of our chats." (Exhibit E)

46.     Despite numerous conversations between the parties throughout March, April, June, and July 2020, no one at The Firm disputed the Recapping Our Call Email until after Mr. Newman asked that his Revenue Share be paid out in connection with the resolution of the Multi-Million Dollar Case.  In fact, later on the very same day Newman sent the Recapping Our Call Email, Defendant Cohen attempted to hire Newman as local counsel for an active litigation

12

case Newman had filed in the Western District of Pennsylvania while employed by The Firm. Defendant Cohen did not once dispute the Recapping Our Call Email.

47.     On or about April 17, 2020, Defendant Cohen wrote Newman a positive review for the legal site Priori. In addition, Defendant Cohen stated in an April 20, 2020 email to Priori that he let Newman go because of The Firm's financial difficulties. (Exhibit E)

48.     Defendant Cohen's responses to the legal site Prior's review questionnaire were specific and detailed:

- How would you describe your experience overall, and as compared to other lawyers you've worked with?

  ○ Darth is incredibly bright, and a superb lawyer. He is among the smartest lawyers I have ever dealt with.

- Please describe Darth's responsiveness and communication style.

  ○ Darth is direct, clear, and. very responsive. On numerous occasions I have seen him handle difficult, prickly clients -- and their complex legal issues -- with tact and effectiveness.

- Have you had an occasion to refer another client to Darth and what was the feedback, if any?

  ○ Feedback from clients was always incredibly positive.

- Would you work with/hire Darth again?

  ○ Yes, absolutely.

- Reviews help our lawyers to receive more work: Please provide a few statements about your experience with Darth that we may share with others as they learn more about Darth's work

  ○ Darth has a first-rate legal mind. He is one of the best (and fastest) legal researchers I have ever known. He understands complex legal issues, and cuts to the key legal issues very quickly. His legal writing is very good, and his negotiating skills even better. He would be a real asset to any firm and any client. I am truly sorry we can't currently employ him. (We are a start-up firm, and the COVID-19 pandemic has cut off most of our cash flow.) (Exhibit F)

13

**D. Defendants Become Adversarial**

49.     In or around April 2020, several of The Firm's clients decided to leave The Firm and pursue representation with Newman (hereinafter "Clients").

50.     On or about April 20, 2020, Defendant Cohen spoke with Newman about the Clients. During that discussion, Defendant Cohen specifically stated that Defendants' relationship with Newman would change and become much less amicable if the Clients continued to pursue representation with Newman instead of The Firm.

51.     Some of the Clients were contingency fee whistleblower clients. The Clients will owe a percentage of the contingency fee to The Firm and some to Newman under their new fee agreement and a separate agreement between each Client and The Firm. However, Newman is still owed his Revenue Share of The Firm's contingency fee and attorneys' fee awards, if any, on these matters.

### a. The Multi-Million Dollar Case

52.     Just before his separation, in or around March 2020, Newman was in the middle of managing the final negotiations on a large multi-million dollar *qui tam* contingency fee case (hereinafter "Multi-Million Dollar Case.").

53.     The Firm and Newman expected the Multi-Million Dollar Case to settle in the coming months generating a $560,000 to $640,000 fee for The Firm which would have been the single largest recovery by The Firm in its short history and represents almost a year of expenses for the Firm. Under the Employment Agreement and Revenue Share, Newman would have received 10% of the fee or between $56,000 and $64,000.

54.     After learning that clients had chosen to keep Newman as their lawyer and

14

terminate the services of The Firm, Defendants took steps to conceal the resolution of the Multi-Million Dollar Case and avoid paying The Revenue Share.

55. Unbeknownst to Newman at the time, the Multi-Million Dollar Case was voluntarily dismissed on or about May 28, 2020 before a Motion to Dismiss was filed. Upon information and belief, this case was settled and resulted in the payment of a contingency recovery to The Firm.

56. Mr. Pollock agreed to keep Mr. Newman informed of case developments, decisions, and resolutions and did send Mr. Newman updates for different cases on June 2, 2020 and June 19, 2020. Including an update on a positive judicial ruling for the Firm based on Newman's work. (Exhibit G)

57. Additionally, Defendant Pollock had promised to keep Newman updated as The Firm's matters resolved or obtained judicial decisions: "I'll definitely keep you posted on decisions. Sorry I didn't get this one to you sooner." (Exhibit G)

58. Importantly, to the best of Newman's knowledge, none of these decisions in Paragraph 57 resulted in the resolution of a case or the payment of contingency funds to The Firm.

59. Defendants did not, however, provide any notice to Newman that the Multi-Million Dollar Case had resolved.

60. Instead, Defendants tried to obfuscate their sudden influx of cash and refused to acknowledge that the Multi-Million Dollar Case resolved at all.

### b. *Defendants Breach the Employment Agreement*

61. At the time the Multi-Million Dollar Case was resolved, The Firm still owed

15

Newman many thousands of dollars of backpay.

62.     Several weeks had gone by with small or zero dollar payments, however, around the time the Multi-Million Dollar case is believed to have resolved, The Firm suddenly began making larger and very regular payments towards the outstanding backpay. Notably, however, the firm still drew these payments out over nearly two months. (Exhibit F)

63.     Newman first discovered the Multi-Million Dollar Case had been resolved on or around June 25, 2020.

64.     Once Newman learned that the Multi-Million Dollar Case had likely settled, he emailed The Firm to inquire about the status of the case, offer his congratulations, and arrange for compensation under the terms of the Employment Contract. The correspondence took place as follows:

    a.  On or about June 25, 2020, Newman emailed Defendants Pollock and Cohen about the Multi-Million Dollar Case to ask if it had in fact settled. (Exhibit H)

    b.  On or about July 1, 2020, Newman emailed Defendants Pollock and Cohen again seeking a response and was again ignored. (Exhibits G and H) Despite sending Newman other emails during this period of time, Defendants ignored these inquiries about the Multi-Million Dollar Case.

    c.  On or about July 8, 2020, Newman emailed Defendants Pollock and Cohen a third time using the same email chain seeking an updated record of back payments. (Exhibit H)

    d.  Finally, two weeks after the original email, on or about July 9, 2020, The Firm responded to Newman's repeat requests stating "We cannot comment on the [Multi-Million Dollar Case] dismissal." (Exhibit H)

    e.  On or about July 10, 2020, Newman responded to the July 9, 2020 Email asking The Firm to make arrangements to pay him the Revenue Share owed to him under the Employment Contract. (Exhibit H)

    f.  On or about July 12, 2020, Defendant Pollock emailed Newman stating "We disagree that your performance merits an end-of-the-year bonus, but we can

16

discuss in December." (Exhibit H)

g.  On or about July 15, 2020, Newman asked The Firm to provide to him the amount of all contingency recoveries The Firm had obtained since March 25, 2020. Newman also asked that The Firm provide prompt notification to him of future case terminations together with the amounts of any resulting contingency recoveries for all matters that existed on March 25, 2020. (Exhibit H)

h.  On or about July 22, 2020, Defendant Cohen responded "We disagree: we don't believe you are entitled to a bonus for any case settled after your departure from the firm." (Exhibit H). Defendant Cohen also refused to provide any information about current or future case resolutions.

i.  Later, on or about July 29, 2020, Defendant Cohen stated in an email to Newman about the Bonus "I have zero interest in - or intention to - discuss a bonus with you at this time." (Exhibit H).

65.  At the same time Defendants were ignoring and avoiding Newman's inquiries about the Million-Dollar Case, they were exchanging other emails about other topics with Newman.

66.  Defendants stated clearly in Exhibit H that they do not intend to pay Newman his Revenue Share on the Multi-Million Dollar Case or on any other contingency matters with the firm as of March 25, 2020.

67.  Defendants' various excuses for not honoring the Employment Agreement and instead refusing to make good on their obligation to pay Newman the Revenue Share contradict each other, the plain language of the Employment Agreement, and the parties' course of dealing and performance.

68.  At no time was the Revenue Share discretionary or tied in any way to performance.

69.  Nor is the Revenue Share dependent on Newman's continued employment with The Firm.

17

70.     Indeed, it would be manifestly unfair and inequitable for Defendants to terminate Newman's employment on the eve of a large contingency win and thereby capture the full measure of his efforts without paying him his fair share of the proceeds.

**Count I**
**Declaratory Judgment**
**42 P.S. § 7531**
**(Newman v. Pollock Cohen, LLP, Pollock, Cohen, and Leung)**

71.     Newman incorporates by reference paragraphs 1 through 70 above as if fully set forth in this paragraph.

72.     An actual controversy has arisen between the Plaintiff and Defendants, relating to whether The Employment Contract requires Defendants to pay Newman The Revenue Share for all matters held by The Firm as of March 25, 2020 regardless of when that revenue is realized by The Firm.

73.     Contrary to the language of The Employment Agreement and Newman's understanding of it, Defendants have asserted they owe no further payments under The Employment Contract.

74.     As The Firm resolves matters it held as of March 25, 2020, disputes will continue to arise regarding whether or not Newman is owed The Revenue Share in accordance with The Employment Contract.

WHEREFORE, it is prayed that this Honorable Court enter and Order:

    i. Declaring the Plaintiff's Employment Contract with Defendants valid and enforceable.

    ii. Requiring Defendants to provide a list of all matters for which they were engaged as of March 25, 2020 within 5 days of this order.

    iii. Requiring Defendants to provide notification to Plaintiff of the resolution of any

18

such matters or portions of matters and the amount of The Firm's share of any contingency recoveries defined as including both fee awards and The Firm's portion of any contingency wins, settlements or other awards and calculated before deductions for overheads, compensation, non-case specific expenses, or reimbursed expenses within 5 days of any such resolution or partial resolution.

iv. Requiring Defendants to pay to Plaintiff 10% of all contingency recoveries received by Defendants for any such matters for the first $2 million of recoveries each year and then 5% thereafter  within 5 days of the funds "clearing" The Firm's IOLTA account.

v. Such other relief as the Court deems just and appropriate.

<div align="center">

**Count II**
**<u>Pennsylvania Wage Payment and Collection Law</u>**
**<u>43 P.S. § 260.1, et seq.</u>**
**(Newman v. Pollock Cohen, LLP, Pollock, Cohen, and Leung)**

</div>

75.     Newman incorporates by reference paragraphs 1 through 74 above as if fully set forth in this paragraph.

76.     Defendants are Plaintiff's employer and as such are required to pay Plaintiff wages as agreed to upon the start of employment.

77.     Under Newman's compensation scheme and by agreement, Defendants are required to pay ten percent of *all* contingency recoveries up to $2 million and five percent on all contingency recoveries after $2 million each year to Newman which vested immediately according to the Employment Contract.

78.     Newman requested payment under his compensation scheme and agreement.

79.     Defendants engaged in conduct and emails stating that they will no longer honor The Employment Contract and have refused to pay Newman *any* compensation on The Multi-Million Dollar Case or any other contingency recoveries on matters active at the time of Newman's termination.

80.     This complaint was filed more than 60 days after Newman requested wages under his Employment Contract and Defendants refused to pay him.

81.     Defendants actions violated Pennsylvania's Wage Payment Collection Law, 43 Pa. Cons. Stat. § 260, *et seq*. Defendants Cohen, Pollock, and Leung are personally liable pursuant to 43 Pa. Cons. Stat. § 260.2a.

82.     Defendants' violations are not in good faith.

        WHEREFORE, it is prayed that this Honorable Court award wages, pre- and post-judgement interest, costs and attorneys fees pursuant to 43 P.S. § 260.9(a), as well as liquidated and/or statutory damages pursuant to  43 P.S. § 260.10 and such other relief as the Court deems just and appropriate.

### Count III
### <u>Breach of Contract</u>
### (Newman v. Pollock Cohen, LLP)

83.     Newman incorporates by reference paragraphs 1 through 82 above as if fully set forth in this paragraph.

84.     Newman entered into The Employment Contract with Defendants in which Defendants agreed to pay Newman a Revenue Share as compensation for his services.

85.     Newman performed all the conditions precedent to his agreement with Defendants.

86.     Defendants refused to pay Newman his Revenue Share compensation.

87.     Defendants refusal to pay Newman the amounts he is currently due on the Multi-Million Dollar Case and refusal to pay on any other contingency recoveries from matters active on March 25, 2020 constitute a breach of that agreement.

20

88.     Newman has suffered economic losses because of Defendants' breach of the Employment Contract.

        WHEREFORE, it is prayed that this Honorable Court hold Defendants joint and severally liable and award contract damages, an award of pre- and post-judgment interest, an award of costs, and such other relief as the Court deems just and appropriate.

### Count IV
### Unjust Enrichment
### (Newman v. Pollock Cohen, LLP, Pollock, Cohen, and Leung)

89.     Newman incorporates by reference paragraphs 1 through 88 above as if fully set forth in this paragraph.

90.     At all times relevant hereto, Defendants were authorized to and did act on their own behalf and on behalf of each other.

91.     Newman, through his efforts as an employee of The Firm,  conferred a benefit upon the Defendants.

92.     In particular, Newman's efforts contributed directly or indirectly to the resolution of the Multi-Million Dollar Case and the other contingent matters held by The Firm as of March 25, 2020.

93.     It would be unjust for Defendants to retain the benefits and value of Newman's contributions while simultaneously refusing to pay Newman as they had agreed.

94.     Newman is entitled to receive ten percent of *all* contingency recoveries up to $2 million each year and five percent on all contingency recoveries after $2 million each year for all contingency fee matters.

95.     The Defendants were enriched - without cost or setoff - by the value of Newman's

21

percentage of the contingency recoveries.

96. Because of their unlawful conduct, Defendants were unjustly enriched.

97. Newman has suffered economic loss and is entitled to restitution in *quantum meruit.*

WHEREFORE, it is prayed that this Honorable Court hold Defendants joint and severally liable and award restitution equal to the value of the benefit retained by the Defendants, an award of pre- and post-judgment interest, an award of costs, and such other relief as the Court deems just and appropriate.

**Count V**
**Breach of Fiduciary Duty**
**(Newman v. Pollock Cohen, LLP, Pollock, Cohen, and Leung)**

98. Newman incorporates by reference paragraphs 1 through 97 above as if fully set forth in this paragraph.

99. The Defendants had a fiduciary duty to Newman to account for the contingency recoveries they receive and pay to him the Revenue Share.

100. Defendants denial of Newman's request for payment on the Multi-Million Dollar Case on July 29, 2020 and refusal to account for or pay any other Revenue Share that may become due in the future, or even provide notice that The Firm's maters have resolved, constitute a breach of their fiduciary duties.

101. As a result of Defendants' actions Newman suffered economic losses.

WHEREFORE, it is prayed that this Honorable Court hold Defendants joint and severally liable and award damages for breach of fiduciary duty, an award of pre- and post-judgment interest, an award of costs, and such other relief as the Court deems appropriate.

22

**Count VI**
**Promissory Estoppel**
**(Newman v. Pollock Cohen, LLP, Pollock, Cohen, and Leung)**

102.    Newman incorporates by reference paragraphs 1 through 101 above as if fully set forth in this paragraph.

103.    Defendants promised Newman the Revenue Share in lieu of a fair market salary, to entice him to accept the possibility of not making any salary, join The Firm, and remain at The Firm during periods of financial distress.

104.    The Firm needed Newman's experience in complex commercial litigation in order to pay the bills until The Firm obtained enough whistleblower contingency recoveries or other monies to be self sufficient.

105.    Newman joined and remained at The Firm specifically because of the promised Revenue Share compensation and did in fact represent clients in complex commercial and other litigation including *qui tam* matters.

106.    Defendants terminated Newman's employment right before settling the Multi-Million Dollar Case and collecting significant fees.

107.    Newman spent significant time working on the Multi-Million Dollar Case.

108.    When Newman asked Defendants to pay him the Revenue Share on the Multi-Million Dollar Case, and generally to honor the Employment Contract as to other pending matters, Defendants refused.

109.    As a result of Defendants' actions, Newman suffered economic losses.

23

WHEREFORE, it is prayed that this Honorable Court hold Defendants joint and severally liable and award contract damages, an award of pre- and post-judgment interest, an award of costs, and such other relief as the Court deems just and appropriate.

Respectfully submitted;

Date: 11/24/2020

Rachel L. McElroy, Esq.
PA ID No. 321624
McElroy Law Firm LLC
461 Cochran Rd. #107,
Pittsburgh, PA 15228
Email: rachel@mcelroylawfirm.com
Phone: 412-620-8735
Attorney for Plaintiff

24

# Exhibit A



# The Entrepreneurial Spirit

**Steve Cohen began law school at 58;
now, at 68, he's on the Rising Stars list** AS TOLD TO NANCY ROMMELMANN

**IN HIS OWN WORDS**

*Steve Cohen has worked in advertising and publishing, served in the Navy, written seven books, co-chaired Hillary Clinton's White House task force on early childhood literacy, and launched a number of startups. At age 58, he started law school. Last year, he cofounded the firm Pollock Cohen. This is his first year on the Rising Stars list. He's 68.*



**Steve Cohen**

POLLOCK | COHEN

CLASS ACTION/MASS
TORTS: PLAINTIFF

NEW YORK

The first really rich guy I knew said to me that he returns every phone call within 24 hours. And the first phone call that's returned is from the name or number he doesn't recognize—because he never knows what opportunity's going to be at the other end of the line. That influenced me. I return every call. If it's the right opportunity, take a chance.

Working for J. Walter Thompson advertising, I kept pitching to get *Time* as an account. They turned down JWT but they asked me to come over as head of marketing. I was there almost seven years. Then there was a power coup two levels above me and all of us were out. It was devastating. Nobody likes getting fired. Once, as an entrepreneur, I had to let everybody in the startup go. I had to hire everybody and I had to fire everybody. That was incredibly difficult.

A couple years [after *Time*], I wound up going to Scholastic. I started a bunch of new businesses and projects at both of those places. I have the entrepreneurial spirit.

What led me to law school at age 58? Drinking. I was at a cocktail party, it was January of 2009, and I was telling this person next to me about an article I had just written—about serving on the jury of a big terrorism case in the Southern District. The person says, "That's really interesting, are you a lawyer?" I said, "No, I just dress like one." He said, "Don't be a wise guy." I said, "Forgive me, we've just met. My wife, who's at the other end of the room, will confirm that I am a wise guy. But I'll tell you the truth: If I didn't have to take the LSAT, I'd go to law school now." The person said, "You're accepted!" I said, "Who are you?" The person said, "I'm a dean at New York Law School."

The brain is a muscle that, in my case, hadn't atrophied, but, boy, was it out of shape. I had to relearn how to read. Law school was a shock to the system. It was harder because there is something called middle-age memory loss, but it was easier because I knew how the world worked. I loved law school. It made me 20 years younger. And it made me 20 pounds heavier, because I would go out drinking with the other students.

On average, I was twice the age [of the other students]. I had a specific role, I think. I would raise my hand and say

to the professor, "I don't get it." And I'd hear this collective sigh of relief, probably from a third of the class, who felt the same way: "Whew, thank God the old guy didn't get it, either." I had no shame. I was struggling just like everybody else. The *Wall Street Journal* did a piece about me, and they illustrated it with a photo of Rodney Dangerfield from the movie *Back to School*. It was totally appropriate!

I'm incredibly lucky now. I went to work for two of the top trial lawyers in the United States—Tom Moore and Judy Livingston—and Adam Pollock and I started this firm 15 months ago. Although it is very much a startup, entrepreneurial business, the things we wanted to do—principally focus on False Claims Act, whistleblower plaintiff's work—have a long lead time. It takes years for those cases to resolve and make money. So we take hourly billing. We do commercial litigations. We've done torts. We have a personal injury case we're taking right now.

People say, "Oh, I've always thought about going to law school." Do it. If it's half as satisfying for you as it has been for me, it's absolutely worth the investment. **SL**

## Wait ... Rising Star?

**From the Super Lawyers guidelines: "To be eligible for inclusion in Rising Stars, a candidate must be either 40 years old or younger, or in practice for 10 years or less."**

Super Lawyers®

RISING STARS 2019

Exhibit B

From:            Adam Pollock <adam@pollockcohen.com>
Sent:            Sunday, April 29, 2018 9:48 AM
To:              Darth Newman
Subject:         Re: proposed terms for Special Counsel role

Hi Darth,

Steve asked me to clarify point 3, which had too many commas for his taste.... But there's no substantive change here:

1) We would set compensation at $10,000 / month as W2 income. To the extent that we don't have the cash flow to make the full $10k, we will pay simple interest at 33.33% / year on outstanding comp owed. While Steve and I wouldn't make a personal guarantee on the back comp / interest owed, Pollock Cohen LLP would continue to be obligated for what's owed as long as our firm or its successors exist. In other words, your backpay and interest immediately "vest" and are owed even if you leave.

I recognize that you would be incurring some risk here. But we should all know within a few months whether this is going to work out. And, as discussed, we already have a lot of work and I'm cautiously optimistic that we'll have enough flow to pay you $10k/month without falling behind (and to draw me and Steve also at $10k/mo each).

2) We will pay for you to waive into NY. We will pay for your NY bar fees. And, as discussed, we would like to pay as many other bar fees and fringe benefits as possible. I have a call scheduled with Zenefits (outsourced HR) this afternoon, so I should have a better idea of what's possible after that.

3) In addition to the above: We will pay you an annual bonus of 10% of all "contingency recoveries" (as defined below) up to the first $2 million per year. So, for example, if the firm has $2 million in contingency recoveries in one year, your bonus would be $200,000. After the first $2 million, your bonus would be 5% of the firm's contingency recoveries. So, for example, if we have $10m in contingency recoveries in a year, you would get $200,000 + $400,000 = $600,000.

Contingency recoveries includes both fee awards and our part of contingency wins/settlements/awards.

Bonus is calculated before deductions for overheads/comp and non-case specific expenses.

On expenses, if for example a recovery is $105,000 and there were $5,000 in case specific expenses (*e.g.* depositions, accountants, case specific travel, etc), then our standard deal with our clients is $5000 off the top first, and then split-- *e.g.* $60,000 to client and $40,000 to us. So your bonus would be calculated on the $40,000 remaining.

I think we have at least one case where we will eat expenses if not otherwise recovered. So, for example of $100,000, $40,000 to us, $5,000 to recover case-specific expenses, and now your bonus is calculated on $35,000. (And also, FWIW, Steve and I are now obviously sharing only from the remaining $35k in that scenario.)

*If* we line up serious litigation financing, we will likely have to change these terms because the funders will want to eat up 100% of contingency recoveries until they're paid their very generous terms. So, it is very likely that there would be no monies left to bonus you (or me or Steve). In return for giving up our upside, we would enjoy a more steady cash stream. So, at that point (should it arrive), we would propose changing the terms so that you (and Steve and me) enjoy a more regular monthly flow. In other words, less risk less reward.

AP

Adam Pollock
POLLOCK COHEN LLP
60 Broad St., 24th Fl.
New York, NY 10004
m: +1.718.407.4257
Adam@PollockCohen.com
www.PollockCohen.com

On Fri, Apr 27, 2018 at 10:23 AM, Adam Pollock <adam@pollockcohen.com> wrote:
 Great.  Very happy that you're joining our team.


 Adam Pollock
 POLLOCK COHEN LLP
 60 Broad St., 24th Fl.
 New York, NY 10004
 m: +1.718.407.4257
 Adam@PollockCohen.com
 www.PollockCohen.com

On Thu, Apr 26, 2018 at 7:31 PM, Darth Newman <dnewman@pollockcohen.com> wrote:
 Yep. Agree that is what we discussed.

 On Thu, Apr 26, 2018 at 7:26 PM, Adam Pollock <adam@pollockcohen.com> wrote:
 Confirmed.

 On expenses, if recovery is $105,000 and there were $5,000 case specific expenses (e.g. depositions accountants case specific travel etc), then our standard deal with our clients is $5000 off the top first, and then split-- e.g. 60,000 to client and 40,000 to us.   So your bonus would be calculated on the 40,000 remaining.

 I think we have at least one case where we will eat expenses if not otherwise recovered.   So, for example of $100,000, 40,000 to us, 5,000 to recover expenses, and now your bonus is calculated on 35,000.  (And also, fwiw, steve and I are now obvious sharing only from the remaining 35k in that scenario.)

 Adam Pollock
 POLLOCK COHEN LLP
 60 Broad St., 24th Fl.
 New York, NY 10004
 m: +1.718.407.4257
 Adam@PollockCohen.com
 www.pollockcohen.com

On Apr 26, 2018, at 7:18 PM, Darth Newman <dnewman@pollockcohen.com> wrote:

Sounds good. We also discussed that contingent recoveries includes both fee awards and our part of contingency wins/settlements/awards and bonus is calculated before deductions for overheads/comp and non-case specific expenses.

~~~Darth

On Thu, Apr 26, 2018 at 6:47 PM, Adam Pollock <adam@pollockcohen.com> wrote:
 Per our discussion, on #3, Steve says:  no cap, 10% of recoveries up to the first $2 million, 5% thereafter annual.    So, for example, if we have $10m in contingency recoveries, you would get $200,000 + $400,000.

 Adam Pollock
 POLLOCK COHEN LLP
 60 Broad St., 24th Fl.
 New York, NY 10004
 m: +1.718.407.4257
 Adam@PollockCohen.com
 www.PollockCohen.com

 On Tue, Apr 24, 2018 at 11:52 AM, Adam Pollock <adam@pollockcohen.com> wrote:
 Hi Darth,

 This email is intended to put numbers onto our discussions.

 1)  We would set compensation at $10,000 / month as W2 income.  To the extent that we don't have the cash flow to make the full $10k, we will pay simple interest at 33.33% / year on outstanding comp owed.  While Steve and I wouldn't make a personal guarantee on the back comp / interest owed, Pollock Cohen LLP would continue to be obligated for what's owed as long as our firm or its successors exist.  In other words, your backpay and interest immediately "vest" and are owed even if you leave.

 I recognize that you would be incurring some risk here.  But we should all know within a few months whether this is going to work out.   And, as discussed, we already have a lot of work and I'm cautiously optimistic that we'll have enough flow to pay you $10k/month without falling behind (and to draw me and Steve also at $10k/mo each).

 2)  We will pay for you to waive into NY.  We will pay for your NY bar fees.  And, as discussed, we would like to pay as many other bar fees and fringe benefits as possible.  I have a call scheduled with Zenefits (outsourced HR) this afternoon, so I should have a better idea of what's possible after that.

 3) In addition to the $10k/mo + 33% interest, we will pay you a bonus of 10% of all contingency recoveries, up to a maximum of $200k / annual bonus.

 *If* we line up serious litigation financing, we will likely have to change these terms because the funders will want to eat up 100% of contingency recoveries until they're paid their very generous terms.  So, it is very likely that there would be no monies left to bonus you (or me or Steve).  In return for giving up our upside, we would enjoy a more steady cash stream.  So, at that point (should it arrive), we would propose changing the terms so that you (and Steve and me) enjoy a more regular monthly flow.  In other words, less risk less reward.

 ***

 As I've said, we already think of you as a great teammate and we are looking forward to fully integrating you into our growing firm.

3

Yours,


Adam Pollock
POLLOCK COHEN LLP
60 Broad St., 24th Fl.
New York, NY 10004
m: +1.718.407.4257
Adam@PollockCohen.com
www.PollockCohen.com

Exhibit C

Case 2:20-cv-00993-RDC Document 8-13 Filed 01/23/20 Page 46 of 163





# Steve Cohen

Email: SCohen@PollockCohen.com

Cell: +1.917.364.4197

For 35 years before going to law school, Steve was a successful publishing executive – including at Time and Scholastic – and the CEO of three internet start-ups. After being admitted to the New York Bar, he worked for three years for legendary trial lawyer Tom Moore's firm KDLM.

At KDLM, Steve was the principal investigator and lead attorney on a $1 billion False Claims Act qui tam case; won his first trial; and was awarded the American Bar Association's Outstanding Services Award for the Military Pro Bono Project. While at KDLM, Steve also worked on dozens of medical malpractice, personal injury, and product liability cases, from initial intake and evaluation through trial.

# Exhibit D

| Close | Bonus Paid | Paid | Late | Today's Date | Days Late | Rate (Annual) | Interest | Total | Total Owed | Paid on amounts | Standard pay | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | $4,615.38 |
| 1/5/2020 | | | $4,615.38 | 7/6/2020 | 183 | 33.33% | $771.34 | | $5,386.72 | | | |
| 1/19/2020 | | $461.54 | $4,153.84 | 7/6/2020 | 169 | 33.33% | $641.10 | | $4,794.94 | | | |
| 2/2/2020 | | $461.54 | $4,153.84 | 7/6/2020 | 155 | 33.33% | $587.99 | | $4,741.83 | | | |
| 2/16/2020 | | $4,615.38 | - | | | | | | | | | |
| 3/1/2020 | | $4,615.38 | - | | | | | | | | | |
| 3/15/2020 | | $461.54 | $4,153.84 | 4/12/2020 | 28 | 33.33% | $106.22 | | | $4,260.06 | | |
| 4/12/2020 | | $1,009.62 | $3,250.44 | 4/14/2020 | 2 | 33.33% | $5.94 | | | $3,256.38 | | |
| 4/14/2020 | | $1,000.00 | $2,258.38 | 4/15 | 1 | 33.33% | $2.06 | | | $2,258.44 | | |
| 4/14/2020 | | $1,000.00 | $1,258.44 | 7/6/2020 | 83 | 33.33% | $95.39 | | $1,353.83 | | | |
| 3/29/2020 | | $4,615.38 | - | | | | | | | | $4,615.38 | |
| 4/26/2020 | | $0.00 | - | | | | | | | | $0.00 | |
| 5/10/2020 | | $3,845.77 | - | | | | | | | | $3,845.77 | |
| 5/24/2020 | | $3,845.77 | - | | | | | | | | $3,845.77 | |
| 6/7/2020 | | $3,845.77 | - | | | | | | | | $3,845.77 | |
| 6/21/2020 | | $3,845.77 | - | | | | | | | | $3,845.77 | |
| 7/5/2020 | | 3158.35 | - | | | | | | | | 3158.35 | |
| | | and still owed from 2019 | | | | | | | $6,879.49 | | | |
| **TOTAL** | | **$36,781.81** | | | | | | | $23,156.81 | | **$0.00** outstanding owed | |

$6,596.47  note, for W2 purposes, that paid $6596.47 on 1/3/2020, which was for Sun, Nov 24, 2019 paycheck + ████████ settlement

| Pay Period Close | Bonus Paid | Paid | Late | Today's Date | Days Late |
|---|---|---|---|---|---|
| Sun, Dec 23, 2018 | | $4,615.38 | $0 | | 0 |
| Sun, Jan 6, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, Jan 20, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, Feb 3, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, Feb 17, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, Mar 3, 2019 | | $4,615.38 | $0 | | 0 |
| 3/20 | $500 | | $0 | | 0 |
| Sun, Mar 17, 2019 | | $4,615.38 | $0 | | 0 |
| 3/22 | $125 | | $0 | | 0 |
| Sun, Mar 31, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, Apr 14, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, Apr 28, 2019 | | $4,615.38 | $0 | | 0 |
| 5/14 | $125 | | $0 | | 0 |
| Sun, May 12, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, May 26, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, Jun 9, 2019 | | $2,307.69 | $2,307.69 | 7/12 | 33 |
| Sun, Jun 23, 2019 | | $4,615.38 | $0 | | 0 |
| Tue, Jul 2, 2019 | $112.50 | | | | |
| Sun, Jul 7, 2019 | | **$0.00** | $4,615.38 | 8/9 | 33 |
| Sun, Jul 21, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, Aug 4, 2019 | | **$0.00** | $4,615.38 | 9/6 | 33 |
| Thu, Aug 15, 2019 | $1,336.98 | | | | |
| Sun, Aug 18, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, Sep 1, 2019 | | **$0.00** | $4,615.38 | 9/17 | 16 |
| Sun, Sep 15, 2019 | | **$0.00** | $4,615.38 | 9/19 | 4 |
| Tue, Sep 24, 2019 | $7,500.00 | | | | |
| Sun, Sep 29, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, Oct 13, 2019 | | $4,615.38 | $0 | | 0 |
| Tue, Oct 22, 2019 | | | $1,812.50 | | |
| Sun, Oct 27, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, Nov 10, 2019 | | $4,615.38 | $0 | | 0 |
| Sun, Nov 24, 2019 | | | $4,615.38 | 1/3 | 40 |
| Sun, Dec 8, 2019 | | | $4,615.38 | 7/6 | 211 |
| Sun, Dec 22, 2019 | | $461.54 | $4,153.85 | 12/25 | 3 |
| Sun, Dec 22, 2019 | | $3,000.00 | **$1,165.23** | 7/6 | 197 |
| **$133,958.70** | **$9,699.48** | **$93,461.54** | | | |

| Rate (Annual) | Interest | Total | Total Owed | | 0 |
|---|---|---|---|---|---|
| | | | | 0 PAID on 1/2/2019 | |
| | | | ■■■■ | | |
| | | | ■■■■ | | |
| | | | ■■■■ | | |
| 33.33% | $69.54 | $2,377.23 | 0 | | |
| | | | ■■■■ | | |
| 33.33% | $139.08 | $4,754.46 | 0 | | |
| 33.33% | $139.08 | $4,754.46 | 0 | | |
| | | | ■■■■ | | |
| 33.33% | $67.43 | $4,682.82 | $0.00 | | |
| 33.33% | $16.86 | $4,632.24 | $0.00 | | |
| | | | ■■■ | | |
| | | $1,812.50 | ■■■ | | |
| 33.33% | $168.58 | $4,783.97 | | paid $6596.47 on 1/3 | |
| 33.33% | $889.27 | | $5,504.65 | | |
| 33.33% | $11.38 | **3000** | | paid $3000 of balance on 12/25 | |
| 33.33% | $209.61 | | $1,374.84 | | |
| | **$1,710.83** | **$30,797.69** | **$6,879.49** | | |

$6,596.47

| Pay Period Close | Principal | Today's Date | Days Late | Rate (Annual) | Interest | Total | Outstanding | | $0.00 |
|---|---|---|---|---|---|---|---|---|---|
| Fri, May 11, 2018 | $4,615.38 | 8/31 | 112 | 33.33% | $472.03 | $5,087.41 | $0.00 | PAID | |
| Fri, May 25, 2018 | $4,615.38 | 8/31 | 98 | 33.33% | $413.03 | $5,028.41 | $0.00 | PAID | |
| Fri, Jun 8, 2018 | $4,615.38 | 8/31 | 84 | 33.33% | $354.02 | $4,969.41 | $0.00 | PAID | |
| Fri, Jun 22, 2018 | $4,615.38 | 8/31 | 70 | 33.33% | $295.02 | $4,910.40 | $0.00 | PAID | |
| Fri, Jul 6, 2018 | $4,615.38 | 8/31 | 56 | 33.33% | $236.01 | $4,851.40 | $0.00 | PAID | |
| Fri, Jul 20, 2018 | $4,615.38 | 8/31 | 42 | 33.33% | $177.01 | $4,792.40 | $0.00 | PAID | |
| Fri, Aug 3, 2018 | $4,615.38 | | | 33.33% | $0.00 | $4,615.38 | $0.00 | PAID | |
| Fri, Aug 17, 2018 | $4,615.38 | | | 33.33% | $0.00 | $4,615.38 | $0.00 | PAID | |
| Fri, Aug 31, 2018 | $4,615.38 | | | 33.33% | $0.00 | $4,615.38 | $0.00 | PAID | |
| Fri, Sep 14, 2018 | $4,615.38 | | | 33.33% | $0.00 | $4,615.38 | $0.00 | PAID | |
| Fri, Sep 28, 2018 | $4,615.38 | 10/31 | 33 | 33.33% | $139.08 | $4,754.46 | 0 | PAID | |
| Fri, Oct 12, 2018 | $4,615.38 | 11/1 | 20 | 33.33% | $84.29 | $4,699.68 | 0 | PAID | |
| Fri, Oct 26, 2018 | $4,615.38 | 11/1 | 6 | 33.33% | $25.29 | $4,640.67 | 0 | PAID | |
| Fri, Nov 9, 2018 | $4,615.38 | | 0 | 33.33% | $0.00 | $4,615.38 | 0 | PAID | |
| Fri, Nov 23, 2018 | $4,615.38 | | 0 | 33.33% | $0.00 | $4,615.38 | 0 | PAID | |
| Fri, Dec 7, 2018 | $4,615.38 | | 0 | 33.33% | $0.00 | $4,615.38 | 0 | PAID | |
| Wed, Dec 12, 2018 | 375 | | 0 | 33.33% | $0.00 | $375.00 | 0 | PAID | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | $74,221.15 | | | | $2,195.78 | $76,416.93 | $0.00 | | |
| | | | | | | | | | |
| | | | | | | $12,000.00 | 1099 pay | | |
| | | | | | | $88,416.93 | | | |
| | | | | | | -$375.00 | | | |
| | | | | | | $88,041.93 | | | |

Exhibit E

| From: | Darth Newman <newmandm@gmail.com> |
|---|---|
| Sent: | Thursday, March 26, 2020 11:18 AM |
| To: | Steve Cohen |
| Subject: | Recapping our call |

Thanks for chatting.


- Withdrawals - you are checking with Adam/Chris and then you and I will talk again.
- Emails - you're going to check on the bouncing/out of office message so we can coordinate. I'd really like to know what any out of office message will say before it starts going out.
    - Also - can you send me the "Admin" and "Housekeeping" folders?
- Client contact - We agreed that I would reach out to at least ███████████████████ and will tell them the firm can no longer pay me but that I enjoyed working with them and can continue to do so - they need to choose their lawyers going forward.
    - Would be great if you could let me know what Adam said to them.
- Comp - as we discussed yesterday our deal stands such that I am owed expenses, comp, and interest through March 25, 2020 and 10/5% of contingency/atty fee awards on existing cases to be paid as the firm collects money.
- References - I will send potential employers to you and you will express your high degree of satisfaction with my work and acumen and great sadness that the firm could not continue to pay me but hope that it will be able to call me back in the future. I'm still "with" the firm a la the website and my resume but effectively on furlough and everyone is ok with me seeking other employment just sad to see me go.

Please let me know if my recapping does not match your memory of our chats.

1

# Exhibit F

| | |
|---|---|
| From: | Steve Cohen <SCohen@pollockcohen.com> |
| Sent: | Friday, April 17, 2020 5:58 PM |
| To: | Darth Newman |
| Subject: | Re: A reimbursement to you? |

Please send them an email to contact me. I will sign up to try to contact them. Am on with India now re my computer

Steve Cohen
60 Broad St., 24th Floor
New York, NY 10004
office: +1.212.337.5361
mobile: +1.917.364.4197
Pollock Cohen LLP

On Fri, Apr 17, 2020 at 5:55 PM Steve Cohen <SCohen@pollockcohen.com> wrote:

I will find it

Steve Cohen
60 Broad St., 24th Floor
New York, NY 10004
office: +1.212.337.5361
mobile: +1.917.364.4197
Pollock Cohen LLP

On Fri, Apr 17, 2020 at 5:54 PM Darth Newman <newmandm@gmail.com> wrote:
Response to first question.

On Fri, Apr 17, 2020, 5:53 PM Steve Cohen <SCohen@pollockcohen.com> wrote:

where?

Steve Cohen
60 Broad St., 24th Floor
New York, NY 10004
office: +1.212.337.5361
mobile: +1.917.364.4197

[Pollock Cohen LLP](#)

On Fri, Apr 17, 2020 at 5:39 PM Darth Newman <[newmandm@gmail.com](mailto:newmandm@gmail.com)> wrote:
 FYI, you wrote first Fire not Hire.

 On Fri, Apr 17, 2020, 10:12 AM Darth Newman <[newmandm@gmail.com](mailto:newmandm@gmail.com)> wrote:
  Thank you! Kind words.

  On Fri, Apr 17, 2020, 9:52 AM Steve Cohen <[SCohen@pollockcohen.com](mailto:SCohen@pollockcohen.com)> wrote:

**Have you had an occasion to refer another client to Darth and what was the feedback, if any?** *

> Feedback from clients was always incredibly positive.

**Would you work with/hire Darth again?** *

> Yes, absolutely.

**Reviews help our lawyers to receive more work: Please provide a few statements about your experience with Darth that we may share with others as they learn more about Darth's work** *

> Darth has a first-rate legal mind. He is one of the best (and fastest) legal researchers I have ever known. He understands complex legal issues, and cuts to the key legal issues very quickly. His legal writing is very good, and his negotiating skills even better. He would be a real asset to any firm and any client. I am truly sorry we can't currently employ him. (We are a start-up firm, and the COVID-19 pandemic has cut off most of our cash flow.)

**SUBMIT REFERENCE**

**REFERENCE QUESTIONNAIRE**

How did you come to work with Darth and in what capacity? *

> I am a founding partner of the firm, and Darth was our first fire: as Special Counsel.

Can you confirm when you worked with Darth and for how long? *

> From 2018 through March 2020.

How would you describe your experience overall, and as compared to other lawyers you've worked with? *

> Darth is incredibly bright, and a superb lawyer. He is among the smartest lawyers I have ever dealt with.

Please describe Darth's responsiveness and communication style. *

> Darth is direct, clear, and. very responsive.  On numerous occasions I have seen him handle difficult, prickly clients -- and their complex legal issues -- with tact and effectiveness.

Have you had an occasion to refer another client to Darth and what was the feedback, if any? *

> Feedback from clients was always incredibly positive.

I got their request and just submitted answers to their 4 short questions  -- attached.


Steve Cohen
60 Broad St., 24th Floor
New York, NY 10004
office: +1.212.337.5361
mobile: +1.917.364.4197
Pollock Cohen LLP


On Fri, Apr 17, 2020 at 12:26 AM Darth Newman <newmandm@gmail.com> wrote:
 Great, thanks. You should have questions or a link or something by email first thing Friday. I'd be curious what
 they ask as they only said it was 4 questions.

 ~~~Darth

On Thu, Apr 16, 2020 at 4:48 PM Steve Cohen <scohen@pollockcohen.com> wrote:
 Of course.

 Sent from my iPhone

 On Apr 16, 2020, at 4:26 PM, Darth Newman <newmandm@gmail.com> wrote:

      Can I use you as an attorney reference for signing up for Priorilegal?

You'll have to answer something like 4 questions about my skill as a lawyer.

~~~Darth

On Thu, Apr 16, 2020 at 11:52 AM Darth Newman <newmandm@gmail.com> wrote:
Thank you.

On Thu, Apr 16, 2020, 11:51 AM Steve Cohen <SCohen@pollockcohen.com> wrote:
cyetis@pollockcohen.com


Steve Cohen
60 Broad St., 24th Floor
New York, NY 10004
office: +1.212.337.5361
mobile: +1.917.364.4197
Pollock Cohen LLP


On Thu, Apr 16, 2020 at 11:43 AM Darth Newman <newmandm@gmail.com> wrote:
Gotcha. Thank you for clarification re: gusto. Super shitty re: Cathy's dad. What's her email address so I can send her a note?

Let me know on the other stuff when you can.

~~~Darth

On Thu, Apr 16, 2020 at 11:38 AM Steve Cohen <SCohen@pollockcohen.com> wrote:
Darth,

As bits of money come in, we're processing payments to folks as quickly as we can. I think the reason some are called "normal" and some "additional" is that Gusto is set up for "normal" on a specific schedule; so anything we want to process off-schedule has a different designation.

Candidly, I haven't looked into the insurance question, but I will. And I've gotten no traction on sharing timesheets. I've asked for the captions of the cases you

worked on, but that too has been delayed a week: Cathy's father died the other day. Heart attack.

Although not much happening on individual cases, feel like I'm on a hamster wheel trying to keep lights on. Just heard -- only because I bugged a banker I know -- that our PPP application which was submitted as soon as they accepted applications -- had two errors that needed to be corrected. (No one reached out to us.) And it was  completely unintuitive -- with Adobe -- how to amend the government form. Took almost 2 hours. But I'm just bitching.

Hopefully back to you soon on other stuff.

Hang in there.


Steve Cohen
60 Broad St., 24th Floor
New York, NY 10004
office: +1.212.337.5361
mobile: +1.917.364.4197
Pollock Cohen LLP


On Thu, Apr 16, 2020 at 11:08 AM Darth Newman <newmandm@gmail.com> wrote:
I got a paycheck yesterday for "normal" income and then today for "additional earnings" but still no expense reimbursements and the December report remains "processing". Can you guys send me an updated salary tracker when you release pay so I know what's happening?

Separately - what's the word re: insurance and timesheet?

Thanks!

~~~Darth

On Thu, Apr 9, 2020 at 11:25 AM Steve Cohen <SCohen@pollockcohen.com> wrote:
 Will follow up.

Steve Cohen
60 Broad St., 24th Floor
New York, NY 10004
office: +1.212.337.5361
mobile: +1.917.364.4197
Pollock Cohen LLP


On Thu, Apr 9, 2020 at 11:24 AM Darth Newman <newmandm@gmail.com> wrote:
FYI: When I log into expensify I see my Jan, Feb, March reports are now "approved" but December is not. I think it takes a bunch of days for payment to actually show up.

On Wed, Apr 8, 2020 at 9:43 AM Darth Newman <newmandm@gmail.com> wrote:
Yes it is and I already did. It's part of the March 2020 report that's pending Adam's "approval".

On Wed, Apr 8, 2020 at 9:41 AM Steve Cohen <SCohen@pollockcohen.com> wrote:

Is this a reimbursement you are owed?

If so, please send an expense report, and we will pay you, then deposit this.
Thanks


Steve Cohen
60 Broad St., 24th Floor
New York, NY 10004
office: +1.212.337.5361
mobile: +1.917.364.4197
Pollock Cohen LLP

# Exhibit G

From: **Darth M. Newman** <darth@dnewmanlaw.com>
Date: Tue, Jun 2, 2020 at 4:20 PM
Subject: Re:███████Decision
To: Adam Pollock <Adam@pollockcohen.com>

████████████████████████████████████████████████

Darth M. Newman, Esq.
Law Offices of Darth M. Newman LLC
412-436-3443

On Tue, Jun 2, 2020 at 4:09 PM Adam Pollock <Adam@pollockcohen.com> wrote:
> Darth-- Thanks for your note.   I totally agree -- this was a nice win and very pleasing to see a well-written, well-reasoned decision.
>
> I'll definitely keep you posted on decisions.  Sorry I didn't get this one to you sooner.
>
> Best,
>
> **Adam Pollock**
> **Pollock Cohen LLP**
> +1.646.290.7251
> 60 Broad St., 24th Flr.
> New York, NY 10004
>
>
> On Tue, Jun 2, 2020 at 12:12 PM Darth M. Newman <darth@dnewmanlaw.com> wrote:
>> I was checking on my withdrawals since I didn't get confirmation emails from NYSCEF and saw the full win counterclaim dismissal in ████! A really good decision, too.  In fact, the most comprehensive and well-cited opinion I think I've seen from NY Supreme at least in any of our cases. Looks like the judge agreed with essentially all of my arguments plus added the single instance rule which I do not recall briefing. Someone should move Perry to the commercial division.
>>
>> If it's not too much trouble, please let me know as the cases I worked get decisions. I'm still interested in seeing how the work turns out and what happens for the clients, I'm not on all the dockets, and won't get email after I withdraw anyway.
>>
>> ~~~Darth
>>
>>
>> Darth M. Newman, Esq.

From: **Darth M. Newman** <darth@dnewmanlaw.com>
Date: Fri, Jun 19, 2020 at 1:10 PM
Subject: Re: ██████████████████████
To: Adam Pollock <Adam@pollockcohen.com>
Cc: Steve Cohen <SCohen@pollockcohen.com>

Not a bad decision. At least now the justice seems to have a good sense of the allegations. ████████ smugness is likely to increase though.

Darth M. Newman, Esq.
Law Offices of Darth M. Newman LLC
412-436-3443

On Fri, Jun 19, 2020 at 9:10 AM Adam Pollock <Adam@pollockcohen.com> wrote:

> **Adam Pollock**
> **Pollock Cohen LLP**
> +1.646.290.7251
> 60 Broad St., 24th Flr.
> New York, NY 10004
>
>
> ---------- Forwarded message ---------
>
>
> ---------- Forwarded message ---------
> From: ████████████████████ >
> Date: Fri, Jun 19, 2020 at 8:39 AM
> Subject: ███████████████████████
> To: ████████████████████████████████████
> scohen@pollockcohen.com <scohen@pollockcohen.com>
>
> CounseL:
> I am attaching the decision and grey sheet for the motion to dismiss filed under motion sequence in 007. The efiled version was stamped signed on June 5, 2020. The signed and dated version should be efiled this week.

Thank you.

████████ , Court Attorney for ████████████

Exhibit H

From: **Steve Cohen** <SCohen@pollockcohen.com>
Date: Wed, Jul 29, 2020 at 6:58 PM
Subject: Re: ████████████
To: Darth M. Newman <darth@dnewmanlaw.com>
Cc: Adam Pollock <Adam@pollockcohen.com>

Darth,

Your March 26th email did not conform to my memory of our conversation, which is why I didn't respond to it and why your separation discussions shifted to Adam.

When your work was good, it was very good. When it wasn't, it was the source of great frustration and too often went unremarked upon. That was probably a management failure on my part.

I have zero interest in -- or intention to -- discuss a bonus with you at this time.  Let's revisit in December.

Stay healthy.

Steve

**Steve Cohen**
60 Broad St., 24th Floor
New York, NY 10004
office: +1.212.337.5361
mobile: +1.917.364.4197
**Pollock_Cohen_LLP**

On Wed, Jul 29, 2020 at 1:30 PM Darth M. Newman <darth@dnewmanlaw.com> wrote:

Steve,

I am confused and disappointed that you are taking this position now, after we explicitly discussed that I would receive payment for any contingency recoveries as the firm received money, even after my departure. In fact, I recapped our several conversations in an email to you on March 26, 2020, and specifically asked that you "let me know if my recapping does not match your memory of our chats." That was after I told you on the phone I was going to send just such an email. Neither you nor anyone from the firm responded or otherwise communicated to dispute any portion of my recollection of our several conversations.

I am equally dismayed that you are referencing "substantial errors" I made during my employment at PC. This is the first time any such substantial errors are being brought to my attention. In fact, my work product was the subject of regular internal and external praise. We received accolades from opposing counsel for my efforts including at least one direct client referral and our assigned ███ in a state *qui tam* had rather wonderful things to say about my motion to dismiss briefing. I know our clients appreciated my advice and approach and each of the partners at various times went out of their way to praise my on-phone interactions with current and prospective clients - including very recently. As it relates to the recently terminated case, up until my dismissal, I was the lead person on our team interacting with our client and formulating our negotiation strategy. And, even after my dismissal, my work product continues to generate favorable judicial decisions. Plus, PC's private and public post-dismissal statements about me remained positive until I raised what appears to be the first post-termination revenue-sharing obligation. I could go on.

I too prefer an amicable resolution but, to me, an amicable separation includes honoring our commitments and contracts. If PC has already determined not to abide by our agreement, I do not understand what you plan to discuss or revisit in December. Perhaps you can help me understand your intention here?

Darth M. Newman, Esq.
Law Offices of Darth M. Newman LLC
412-436-3443


On Wed, Jul 22, 2020 at 9:07 AM Steve Cohen <SCohen@pollockcohen.com> wrote:

Dear Darth:

We disagree: we don't believe  you are entitled to a bonus for any case settled after your departure from the firm. Neither our agreement nor the law support your position. Similarly, at this time, we are not holding you accountable for the substantial errors you made while you were here.

We disagree with many of the contentions in your email.  Among others, your contention that bonuses were meant to be paid at the time revenue was received just isn't right.  The last time that you and Adam discussed that, you wrote:  "if we've discussed before then sorry for re-raising a closed issue  … ah, you are right, it was originally year end".

When we chose to terminate you, we decided to position it as a down-sizing due to Covid-19. If you wish to discuss the "for cause" reasons that underlied that decision, we can. In any event, no accounting is forthcoming.

We'd prefer to maintain the separation on as amicable terms as possible. Let's revisit in December.

Steve


**Steve Cohen**
60 Broad St., 24th Floor
New York, NY 10004
office: +1.212.337.5361

mobile: +1.917.364.4197
**Pollock_Cohen_LLP**


On Wed, Jul 15, 2020 at 11:33 PM Darth M. Newman <darth@dnewmanlaw.com> wrote:
> Hello,
>
> The revenue share was never discretionary nor tied to performance and Steve confirmed its continuing applicability after my dismissal. It was paid on an as-the-revenue-was-received basis for the entirety of our time together with, if memory serves, the exception of one payment that was forgotten/missed by mistake and then paid as soon as there was cash to cover it. In fact, during our pre-employment discussions, the firm explicitly rejected a performance or case-by-case revenue sharing scheme in favor of what we actually agreed to, which was to share revenues across all contingent matters for which the firm was engaged without regard to originations, time worked, or performance either in general or with regard to any particular matter. Your *post hoc* assessment of my performance is just not relevant.
>
> I clearly accepted a smaller fixed salary in exchange for a non-discretionary share of the "upside" - sharing risk and reward. Adam often made statements acknowledging my fixed but deferrable salary was below market/too low and we all looked forward to the firm generating sufficient revenues to consistently pay all of the attorneys larger monthly amounts. I regularly made similar statements. A large part of my non-traditional compensation package was based on trust that the firm would both honor its commitments and be transparent about its revenues. The failure to provide notice about the recent case termination and apparent refusal to pay revenue share was, frankly, shocking.
>
> If anything, my conversations with Adam over the past ~2 years led me to believe the firm would pay *discretionary* bonuses **on top of and in addition to** my agreed fixed salary and contingency recovery revenue share when the firm received large contingency recoveries. Indeed, this avowed openness and willingness to let the rising tide raise all ships was part of what attracted me to, and incentivized me to continue performing for, the firm.
>
> Please provide the amount of all contingency recoveries the firm has obtained since March 25, 2020, a fixed date by which you plan to pay my contingency recovery revenue share and the amount thereof, and confirm that you will provide prompt notification of future case terminations together with the amounts of any resulting contingency recoveries for all matters that existed on March 25, 2020. I would greatly appreciate receiving this information by the 22nd.
>
> ~~~Darth
>
>
> Darth M. Newman, Esq.
> Law Offices of Darth M. Newman LLC
> 412-436-3443
>
>
> On Sun, Jul 12, 2020 at 10:57 AM Adam Pollock <Adam@pollockcohen.com> wrote:
>> We disagree that your performance merits an end-of-the-year bonus, but we can discuss in December.
>>
>> **Adam Pollock**
>> **Pollock_Cohen_LLP**
>> +1.646.290.7251
>> 60 Broad St., 24th Flr.
>> New York, NY 10004
>>
>>
>> On Fri, Jul 10, 2020 at 12:45 PM Darth M. Newman <darth@dnewmanlaw.com> wrote:
>>> Hello,
>>>
>>> I can't conceive of a reason for the dismissal other than settlement, so congrats!
>>>
>>> Not sure why you can't comment but it doesn't really matter. You do not need to disclose the terms of any possible settlement or other outcome but we do need to make arrangements for payment of my 10%/5% of any resulting firm payment which requires disclosure of the amount of any firm recovery but not any of the client facing terms/outcomes.
>>>
>>> ~~~Darth



Darth M. Newman, Esq.
Law Offices of Darth M. Newman
412-436-3443

On Thu, Jul 9, 2020, 8:45 PM Adam Pollock <Adam@pollockcohen.com> wrote:
Yes, will send tomorrow or this weekend.

We cannot comment on the ██████ dismissal.

**Adam Pollock**
**Pollock Cohen LLP**
+1.646.290.7251
60 Broad St., 24th Flr.
New York, NY 10004

On Wed, Jul 8, 2020 at 10:03 PM Darth M. Newman <darth@dnewmanlaw.com> wrote:
Hello,

Can you shoot me an updated salary calculator spreadsheet when you get a chance?

~~~Darth

Darth M. Newman, Esq.
Law Offices of Darth M. Newman
412-436-3443

On Wed, Jul 1, 2020, 9:31 AM Darth M. Newman <darth@dnewmanlaw.com> wrote:
Bumping for response.

Darth M. Newman, Esq.
Law Offices of Darth M. Newman
412-436-3443

On Thu, Jun 25, 2020, 12:13 PM Darth M. Newman <darth@dnewmanlaw.com> wrote:
Hello,

I'm noticing (late) that the ██████████ was voluntarily dismissed before the ████ was filed. ... what happened? Did they finally agree to settle?

Darth M. Newman, Esq.
Law Offices of Darth M. Newman LLC
412-436-3443

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

DARTH NEWMAN,                                    CIVIL DIVISION

        Plaintiff,

    vs.                                          GD No.

POLLOCK COHEN, LLP,
STEVE COHEN,
CHRISTOPHER K. LEUNG, and
ADAM POLLOCK,

        Defendants.

## VERIFICATION

I verify that the statements made in the foregoing Civil Complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements herein made are subject to the penalties of 18 Pa. Cons. Stat. Section 4904, relating to unsworn falsification to authorities.

Date: 11-20-2020                        By: _____
                                     Mr. Darth Newman, Esq.

25

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Submitted By:

*/s/ Rachel L. McElroy*

# Exhibit B
# Motion for PI:
# Letter to
# Defendants



September 30, 2020

**Via First-Class Mail and Email**

Steve Cohen
Pollock Cohen, LLP
60 Broad Street, 24th Floor
New York, New York 10004
Email: SCohen@PollockCohen.com

Adam Pollock
Pollock Cohen, LLP
60 Broad Street, 24th Floor
New York, New York 10004
Email: Adam@PollockCohen.com

Christopher Leung
Pollock Cohen, LLP
60 Broad Street, 24th Floor
New York, New York 10004
Email: CLeung@PollockCohen.com

**Re: Darth Newman**

To Mr. Cohen, Mr. Pollock, and Mr. Leung,

Please let this letter serve as a notice of my representation of Darth Newman regarding the claims identified herein. As you are aware, Mr. Newman worked for Pollock Cohen, LLP (hereinafter "The Firm") as Special Counsel from April 29, 2018 until March 25, 2020. On April 29, 2018, The Firm and Mr. Newman agreed, in writing, that The Firm would pay Newman a percentage of all contingency recoveries brought in by The Firm (hereinafter "Employment Compensation Contract"). However, on July 29, 2020, The Firm, Mr. Cohen, Mr. Pollock, and Mr. Leung breached The Employment Compensation Contract when they refused to pay Mr. Newman monies owed from the ███████ settlement and also refused to pay any monies related to other or future contingency recoveries. In light of the Employment Compensation Contract breach, Mr. Newman has common law and statutory claims including claims under the Pennsylvania Wage Payment and Collection Law 43 Pa. Stat. Ann. § 260.1, et seq. hereinafter "WPCL") against The Firm and against Mr. Cohen, Mr. Pollock, and Mr. Leung individually.



      Below is a summary of the facts, law and arguments, that will be presented to the court if this matter cannot be cordially resolved. As you will see, my client has a very strong case under Pennsylvania law, and would be very likely to prevail. Although my client is prepared to litigate this matter, Mr. Newman would prefer an amicable resolution.

## I.   FACTS

      In April 2018, Mssrs. Newman, Pollock, and Cohen discussed and negotiated Mr. Newman's compensation scheme. On April 29, 2018, the parties agreed to the following Employment Compensation Contract terms:

> "1. We would set compensation at $10,000/month as W2 income. To the extent that we don't have the cash flow to make the full $10k, we will pay simple interest at 33.33% / year on outstanding comp owed. While Steve and I wouldn't make a personal guarantee on the back comp/interest owed, Pollock Cohen LLP would continue to be obligated for what's owed as long as our firm or its successors exist. In other words, your backpay and interest immediately "vest" and are owed even if you leave. I recognize that you would be incurring some risk here..."

> "3. In addition to the above: We will pay you an annual bonus of 10% of all "contingency recoveries" (as defined below) up to the first $2 million per year… Contingency recoveries includes both fee awards and our part of contingency wins/settlements/awards. Bonus is calculated before deductions for overheads/comp and non-case specific expenses."

      Under the Employment Compensation Contract, the "annual bonus" on all contingency recoveries was not discretionary. It was not tied to performance or based on origination, and the Firm did not have the discretion to pay it in some cases and not others. As such, it is more accurately described as a revenue share (hereinafter "Revenue Share"). Mr. Newman accepted employment with The Firm based largely on the Revenue Share compensation. The Firm represented to Mr. Newman that it intended to primarily take whistleblower *qui tam* cases and generally eschew straight hourly billing work in favor of contingency and alternative fee matters that might result in significant recoveries for The Firm. However, these cases can take years to resolve and often require significant upfront work. Throughout his employment, The Firm paid Mr. Newman his Revenue Share on a rolling basis, as The Firm collected contingency recoveries.[1]

---

[1] The lone exception was a $1,812.50 Revenue Share payment that was mistakenly unpaid and then made up when The Firm next had sufficient revenue.



The Firm needed Mr. Newman's expertise in complex commercial litigation cases and he quickly became an important contributor to The Firm's *qui tam* work as well. Neither Mr. Pollock nor Mr. Cohen had commercial litigation experience, yet those cases formed a key part of The Firm's planned bridge to profitability until the more lucrative contingency cases were resolved. The Firm could not offer Mr. Newman a "market value" salary because The Firm generated insufficient revenue to fund lawyer compensation and expenses. Instead, The Firm offered Mr. Newman the Revenue Share and the same salary draw as the two partners, Mr. Cohen and Mr. Pollock. However, due to financial difficulties, The Firm often paid Mr. Newman's salary several months late and rarely paid the partners any draw. Mr. Newman worked many months only to be paid more than 60 days after wages were due. The promised Revenue Share on high value whistleblower and other contingent cases was supposed to make up for the deficiencies and irregularity of the salary. At the time of Mr. Newman's involuntary departure, The Firm had not yet solved its cash flow problems and owed Mr. Newman tens of thousands of dollars in back pay.

On March 25, 2020, The Firm terminated Mr. Newman's employment, allegedly due to COVID-19 related financial difficulties. Upon termination, Mr. Newman and Mr. Cohen discussed The Firm's Revenue Share and other financial obligations to Mr. Newman. Mr. Newman summarized this conversation in an email dated March 26, 2020 stating: "Comp - as we discussed yesterday our deal stands such that I am owed expenses, comp, and interest through March 25, 2020 and 10/5% of contingency/attorney fee awards on existing cases to be paid as the firm collects money." Despite numerous conversations between the parties throughout March, April, June, and July 2020, no one at The Firm disputed this email until after Mr. Newman asked that his Revenue Share be paid out in connection with the resolution of the ██████ Case.

In March 2020, Mr. Newman spent significant time working with the client and negotiating a settlement agreement for the ██████ Case. The ██████ Case was positioned to be The Firm's largest contingency fee recovery to date. In May 2020, The Firm voluntarily dismissed the ██████ Case right before a motion to dismiss was due, indicating that the case settled. Mr. Pollock had agreed to keep Mr. Newman informed of case developments, decisions, and resolutions and did send Mr. Newman updates for different cases on June 15, 2020 and June 19, 2020. But no one at The Firm updated Mr. Newman about the ██████ Case. At the time that the ██████ Case was resolved, The Firm still owed Mr. Newman thousands of dollars in back wage payments which it had been irregularly paying since his termination. The Firm began making larger and more regular payments of back wages after it resolved the ██████ Case.



Mr. Newman found out about the ▮▮▮▮ Case dismissal on or about June 25, 2020. Between June 25, 2020 and July 29, 2020, Mr. Newman exchanged several emails with Mr. Pollock and Mr. Cohen about the Avalign case and the Revenue Share as follows:

a. On or about June 25, 2020, Mr. Newman emailed Mr.Pollock and Mr. Cohen about the ▮▮▮▮ Case to ask if it had in fact settled.

b. On or about July 1, 2020, Mr. Newman emailed Mr. Pollock and Mr. Cohen again seeking a response and was again ignored. Despite sending Mr. Newman other emails during this period of time, Mr. Pollock and Mr. Cohen ignored his inquiries about the ▮▮▮▮ Case.

c. On or about July 8, 2020, Mr. Newman emailed Mr. Pollock and Mr. Cohen a third time using the same email chain seeking an updated record of back payments.

d. Finally, two weeks after the original email and more than a month after the case actually resolved, on or about July 9, 2020, The Firm responded to Mr. Newman's repeated requests stating "We cannot comment on the [▮▮▮▮ Case] dismissal."

e. On or about July 10, 2020, Mr. Newman responded to the July 9, 2020 Email asking The Firm to make arrangements to pay him the Revenue Share owed to him under the Employment Contract.

f. On or about July 12, 2020, Mr. Pollock emailed Mr. Newman stating "We disagree that your performance merits an end-of-the-year bonus, but we can discuss in December."

g. On or about July 15, 2020, Mr. Newman asked The Firm to provide to him the amount of all contingency recoveries The Firm had obtained since March 25, 2020. Mr. Newman also asked that The Firm provide prompt notification to him of future case terminations together with the amounts of any resulting contingency recoveries for all matters that existed on March 25, 2020.

h. On or about July 22, 2020, Mr. Cohen responded "We disagree: we don't believe you are entitled to a bonus for any case settled after your departure from the firm." Mr. Cohen also refused to provide any information about current or future case resolutions.

i. Later, on or about July 29, 2020, Mr. Cohen stated in an email to Mr. Newman about the Bonus "I have zero interest in - or intention to - discuss a bonus with



you at this time."

Both Mr. Pollock and Mr. Cohen denied owing Mr. Newman any money under the Revenue Share and refused to pay Mr. Newman any money owed on the ████ Case or any other contingency recoveries on matters held by the firm as of March 25, 2020. As such, The Firm, Mr. Pollock, Mr. Cohen and Mr. Leung are in breach of the Employment Compensation Contract and have violated the WPCL.

## II.    LAW & ARGUMENT

The WPCL, as stated by the Pennsylvania Supreme Court, "provides employees a statutory remedy to recover wages and other benefits that are contractually due to them." Oberneder v. Link Computer Corp., 696 A.2d 148, 150 (Pa.1997); see also Thomas Jefferson Univ. v. Wapner, 903 A.2d 565, 574 (Pa.Super.2006); Hartman v. Baker, 766 A.2d 347, 352 (Pa.Super.2000). To "present a wage-payment claim the employee must aver a contractual entitlement 'to compensation from wages' and a failure to pay that compensation." Braun v. Walmart Stores, Inc., 24 A.3d 875, 954 (Pa.Super.2011) (quoting Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 716 (Pa.Super.2005)). An employee has to establish at a minimum an implied oral contract between the employee and employer. Braun at 954 (citing De Asencio v. Tyson Foods, Inc., 343 F.3d 301, 309 (3rdCir. 2003)).

The WPCL defines "wages" as the following:

> **"Wages."** Includes all earnings of an employee, regardless of whether determined on time, task, piece, commission or other method of calculation. The term "wages" also includes *fringe benefits or wage supplements* whether payable by the employer from his funds or from amounts withheld from the employees' pay by the employer.

43 Pa. Stat. Ann § 260.2a (West) [emphasis added]

"For example, bonuses, commissions, and stock options are 'wages." Braun at 961-962 Thus, if an employee demonstrates that any "amount to be paid pursuant to an agreement 'remain[s] unpaid,' then that employee may be entitled to liquidated damages." Id. The Braun court spent some time discussing alternative wages as outlined in Hartman v. Baker, 766 A.2d 347, 353 (Pa.Super.2000). In Hartman the Superior Court of Pennsylvania found an equity stake in a company to be wages. Id. The employee plaintiff agreed, in exchange for a reduction in pay,



to take an equity stake in the defendant company. *Id.* When the employee wanted to exercise his equity stake the employer refused. *Id.* The employee then brought an action under the WPCL. The Hartman court concluded that the "equity interest at issue also qualified as wages." <u>Braun</u> at 954. As "the equity interest was a payment offered to the employee in exchange for a reduction in pay." *Id.* Further, the employer did not offer the equity interest for reasons unrelated to the employee's employment." <u>Braun</u> at 954-955.

In the instant case, The Firm and Mr. Newman negotiated and agreed to an Employment Compensation Contract whereby Mr. Newman assumed significant financial risk by agreeing to be paid a below market salary and to have that salary deferred indefinitely as necessitated by The Firm's financial distress. In return, The Firm promised Mr. Newman a potential financial reward in the form of a percentage of all contingency recoveries. The Firm also benefited in that The Firm received Mr. Newman's specialized knowledge and experience on complex commercial litigation cases at a significantly discounted salary rate. Throughout Mr. Newman's employment, The Firm repeatedly relied upon and used Mr. Newman's willingness to temporarily forgo *all* compensation payments. Once the parties memorialized their "meeting of the minds" in the April 29, 2020 email, they proceeded to operate under the terms of the agreement by which The Firm provided Mr. Newman payment on all contingency recoveries on a rolling basis regardless of Mr. Newman's personal work on the case or client originations. As noted in the case law above, the WPCL applies to a variety of non-traditional payment structures and applies here.

The WPCL is not limited by an employee's termination. As noted in <u>Braun:</u> "[w]hile an employer may permissibly discharge an at-will employee at any time with or without cause, the doctrine does not relieve an employer of its contractual obligation to provide the compensation promised in return for an employee's services." <u>Braun</u> at 942. Additionally the Third Circuit stated in <u>Riseman v. Advanta Corp.</u>, 39 F. App'x 761, 765 (3rdCir. 2002), "[t]he mere fact that certain compensation is not payable until a future date is not necessarily fatal to a WPCL claim so long as the employee is deemed to have 'earned' it during his employment." As such The Firm is obligated to continue to pay Mr. Newman's Revenue Share even though his employment ended, contrary to Mr. Cohen's assertion in his July 22, 2020 email. Any contrary "interpretation" of the Employee Compensation Contract simply does not make sense and conflicts with the pain language of the agreement which states "Pollock Cohen LLP would continue to be obligated for what's owed as long as our firm or its successors exist." The plain language makes sense as whistleblower *qui tam* cases require significant up front work and can take *years* to resolve.

Pennsylvania Courts do not look favorably upon contract interpretations that benefit only the employer. In <u>Hazell v. Servomation Corp.</u>, 440 A.2d 559, 561 (Pa.Super.1982) the court found:



However, if we assume, arguendo, that the language of the contract is ambiguous and susceptible of two constructions, "one of which makes it fair, customary and such as prudent men would naturally execute, while the other makes it inequitable, unusual or such as reasonable men would not likely enter into, the interpretation which makes a rational and probable agreement must be preferred." <u>Consolidated Tile and Slate Company v. Fox</u>, 410 Pa. 336, 339, 189 A.2d 228, 229-230 (1963) quoting <u>Wilkes-Barre Township School District v. Corgan</u>, 403 Pa. 383, 386, 170 A.2d 97, 98-99 (1961); <u>Heidt v. Aughenbaugh Coal Company</u>, 406 Pa. 188, 192, 176 A.2d 400, 401-402 (1962); <u>Pritchard v. Wick</u>, supra at 603, 178 A.2d at 728. This is particularly true where, as here, the unusual and inequitable interpretation is urged by an employer who prepared an agreement, which it then required employees to sign. <u>Marcin v. Darling Valve and Manufacturing Company</u>, 259 F.Supp. 720, 724 (W.D.Pa.1966); <u>Unit Vending Company v. Lacas</u>, 410 Pa. 614, 617, 190 A.2d 298, 300 (1936); <u>Betterman v. American Stores Company</u>, 367 Pa. 193, 203, 80 A.2d 66, 73, cert. denied, 342 U.S. 827, 72 S.Ct. 49, 96 L.Ed. 625 (1951); <u>West v. MacMillan</u>, 301 Pa. 344, 349, 152 A. 104, 105 (1930).

Even disregarding the plain language of the contract, if Mr. Cohen's July 22, 2020 interpretation were accurate, The Firm would have the benefit of Mr. Newman's work at a significantly discounted rate and also the discretion to deny him the benefit of his bargain just before a large contingency recovery. This is of course exactly what The Firm has attempted to do and such action is unlawful under Pennsylvania law.

Please note under the WPCL, Mr. Cohen, Mr. Pollock and Mr. Leung are liable for damages as individual decision makers. 43 Pa. Stat. Ann. § 260.260.2a - 260.3 (West)  In addition, the WPCL provides for the mandatory payment of attorney fees and costs to prevailing employees. <u>Oberneder</u> at 151. And under the WPCL, liquidated damages are due:

Where wages remain unpaid for thirty days beyond the regularly scheduled payday, or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employe of a proper claim or for sixty days beyond the date of the agreement, award or other



> act making wages payable, ... and no good faith contest or
> dispute of any wage claim including the good faith
> assertion of a right of set-off or counter-claim exists
> accounting for such non-payment, the employee shall be
> entitled to claim, in addition, as liquidated damages an
> amount equal to twenty-five percent (25%) of the total
> amount of wages due, or five hundred dollars ($500),
> whichever is greater.

43 Pa. Stat. Ann. § 260.10 (West)

Mr. Newman requested payment on July 9, 2020. Thus the Revenue Share compensation became sixty days overdue as of September 8, 2020. In order to avoid liquidated damages, employers carry the burden of proving by *clear and convincing evidence* that they acted as a result of a good faith but incorrect legal conclusion. <u>Bruan</u> at 970. It is unlikely The Firm, Mr. Cohen, Mr. Pollock or Mr. Leung will be able to meet this high standard. Instead, The Firm, Mr. Cohen, Mr. Pollock and Mr. Leung took efforts to hide the ████ Case resolution from Mr. Newman while continuing to provide updates on matters that did not result in contingency recoveries. They adjusted the manner in which Mr. Newman's back wages were being paid so as to obscure the then-recent resolution of the ████Case. Then, once Mr. Newman finally learned that the ████ Case had been resolved, Mr. Cohen and Mr. Pollock tried to simply ignore him and ultimately refused even to confirm the status of the case. And finally, when they did answer Mr. Newman, they presented conflicting justifications for their actions which are inconsistent with the Employment Compensation Contract and the facts. The Firm, Mr. Cohen, Mr. Pollock, and Mr. Leung knew that they owed Mr. Newman money under the Employment Compensation Contract and not only deliberately and wrongfully withheld payments but attempted to hide the event which triggered their obligation to pay. These actions were not taken in good faith much less in reliance on "an incorrect legal conclusion in good faith that was based upon supportive authority and a thorough examination of the parties' course of conduct." <u>Bruan</u> at 970.

### III. RESOLUTION

My client is still willing to resolve this matter amicably and swiftly, without resorting to litigation. Accordingly, he demands:

- 10% of the contingency recovery from the ████ Case to be escrowed immediately pending final and full resolution of this dispute;



- Acknowledgement of the Employment Contract by The Firm stating it will pay the proper Revenue Share compensation to Mr. Newman on all contingency matters The Firm held as of March 25, 2020;

- That The Firm report to him, within five (5) days, the resolution, or partial resolution of any matters for which The Firm may be entitled to a contingency recovery and which The Firm held as of March 25, 2020;

- That The Firm report to him, within five (5) days, the collection of any partial or full contingency recovery on all matters which The Firm held as of March 25, 2020;

- Payment of the ▮▮▮▮▮ Case Revenue Share and all other Revenue Share Compensation within 5 days of IOLTA clearance; and

- Costs and Attorney's fees.

If we are unable to resolve this matter within the next **14 days**, by **October 14, 2020**, we will file a complaint and vigorously prosecute the aforementioned claims. And, if we are forced to do so, we will also seek liquidated damages equal to an additional 25% of all monies owed and pre- and post-judgment interest.

## IV.   LITIGATION HOLD

In addition, this letter serves as written notification for The Firm to place a "litigation hold" on any documents, including paper documents, electronic documents, and electronic communications such as text messages, emails, and voice messages, pertaining to Mr. Newman's employment with The Firm.

The Firm should immediately implement the following preservation measures:

1. Stop the automatic deletion of emails and other electronic data.

2. Hold in abeyance any existing document retention and/or destruction policies or practices, or any other actions that would result in the deletion of any material.

3. Stop the recycling or reuse of computer backup tapes.

4. Secure and preserve all recorded telephone conversations and email correspondence of the decision-makers responsible for withholding payment under the Employment Compensation Agreement.



5. Maintain all electronic data in reasonably accessible form.

6. Secure and preserve all computer or electronic hardware, including hard drives, laptops, PDAs, smartphones, and other similar equipment and devices, wherever located.

Specifically, all of The Firm's representatives and employees must preserve all relevant databases, logs of activity (both in paper and electronic formats), surveillance or any other videos or photographs, electronic mail, word processing and accounting files (including prior drafts, "deleted" files, and file fragments), information from calendar or scheduling programs, and metadata within the possession, custody, or control of The Firm or its agents, employees, or representatives. See Zubulake v. UBS Warburg, LLC, 220 F.R.D. 212, 217–18 (S.D.N.Y. 2003).

The obligation to preserve potentially relevant material includes information retained in network servers, hard drives, backup tapes, audio and/or visual data retention devices, offsite storage facilities, or other media retention devices, clouds, or hard copy in any location. If The Firm stores any of this information online or through a cloud service, they must preserve it or create a true and correct copy of each electronic data file. Additionally, The Firm must document the steps it has taken to assure that it will preserve the above copy and make it accessible for purposes of litigation.

## V. CONCLUSION

Kindly direct all further communications to me and I look forward to discussing this matter further with you.

Regards,

Rachel L. McElroy, Esq.

cc: Darth Newman, Esq.

Exhibit C
Motion for PI:
Second Letter
to Defendants
(Confidential
settlement
discussions
redacted.)

 Gmail

Rachel McElroy <rachel@mcelroylawfirm.com>

---

## RE: Darth Newman

**Rachel McElroy** <rachel@mcelroylawfirm.com>                    Mon, Nov 9, 2020 at 3:23 PM
To: "Rodriguez, Joanna M. (Pittsburgh)" <Joanna.Rodriguez@jacksonlewis.com>, "Presley, Marla N. (Pittsburgh)"
<Marla.Presley@jacksonlewis.com>, "Dawson, Sean P. (Pittsburgh)" <Sean.Dawson@jacksonlewis.com>
Bcc: Darth Newman <darth@dnewmanlaw.com>

Hi Joanna,

It was nice speaking with you this morning. ███████████████████████████████████
███████████████████████████████████████████████████████████████████████████████

███████████████████████████████

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████
████████████████████████████████

███████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████
█████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████

[REDACTED]

Additionally, *please confirm that your clients have escrowed all disputed fees as we have repeatedly requested.* Not only to show a willingness to resolve the dispute but also because the rules of professional conduct, in both PA and NY, require disputed fees to be placed in escrow. [REDACTED]

I look forward to hearing from you soon.

Regards,

Rachel

McElroy Law Firm
461 Cochran Rd.  #107
Pittsburgh, PA  15228
rachel@mcelroylawfirm.com
412-620-8735

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you

Exhibit D
Motion for PI:
Defendants
Job Posting



Search     

Try Premium Free
for 1 Month



↗  ...

# Associate Attorney

Pollock | Cohen LLP · New York, NY · 2 weeks ago · 28 applicants

Easy Apply     **Save**

## About the job

**More Legal Superstars Wanted**

Our fast-growing, plaintiff and impact-focused litigation boutique seeks a top attorney who is looking for something different, and who wants to make a difference. We are looking for someone with at least three years of litigation experience who can run their own cases, as part of our team-oriented approach.

Pollock Cohen LLP focuses on representing plaintiffs and protecting the public interest through impact and qui tam (false claims act) litigation. We also handle a broad range of complex commercial litigation, maintain an active pro bono practice representing aggrieved individuals, and are growing our appellate and class action practices.

We launched our firm as two lawyers in February 2018. We are now six attorneys and growing. We have a "start-up" feel, with the flexibility and drive to grow our firm, do good, and achieve success during these turbulent times. We're seeking an attorney who can contribute to all of our practice areas – qui tam, impact litigation, appellate, class action, and complex commercial litigation. The successful candidate will bring a "founder's mentality," a "get-it-done" approach, and a willingness to challenge conventional wisdom by asking, "What if?"

The successful candidate will have:
(1) top-tier credentials and clerkship;
(2) at least three years or so of experience;
(3) a real interest in complex and impactful litigation;
(4) near-obsessive attention to detail (really high standards for getting it right);
(5) a results-oriented focus (the ability to think creatively and figure out what needs to get done, and the initiative to move cases aggressively); and
(6) a powerful desire to master the facts (interview witnesses, review documents, know the trees, and map the forest).

We will continue to deliver great client outcomes by attracting and retaining a truly talented and diverse team. We encourage individuals with different backgrounds and experiences to apply.

We encourage you to check out our website (pollockcohen.com) to read about our work and our team, and really evaluate whether you might be a good fit.

We would prefer someone in New York or San Francisco, but we can be zoom-flexible as to alternate working situations.

Email us a resume, a writing sample, and transcript to Hiring@PollockCohen.com.

**See less ⌃**

### Contact the job poster



**Adam Pollock**   2nd
Pollock Cohen LLP
PREMIUM
**Send InMail**

### Job Details

**Seniority Level**
Entry level

**Industry**
Law Practice

**Employment Type**
Full-time

**Job Functions**
Legal

---

Get ahead with Premium Caree

Contact recruiters directly

See who's viewing your profile

Stand out as a featured applic:

**Try Free for 1 Month**

Looking for talent?  **Post a job**

🔔 Set alert for similar jobs

Pay range unavailable

 Messaging

# Exhibit E
# Motion for PI: Defendants Job Posting



Search

    

Try Premium Free
for 1 Month



## Associate Attorney

Pollock | Cohen LLP · San Francisco Bay Area · 3 days ago · **10 applicants**

Easy Apply | **Save**

---

### About the job

**More Legal Superstars Wanted**

Our fast-growing, plaintiff and impact-focused litigation boutique seeks a top attorney who is looking for something different, and who wants to make a difference. We are looking for someone with at least three years of litigation experience who can run their own cases, as part of our team-oriented approach.

Pollock Cohen LLP focuses on representing plaintiffs and protecting the public interest through impact and qui tam (false claims act) litigation. We also handle a broad range of complex commercial litigation, maintain an active pro bono practice representing aggrieved individuals, and are growing our appellate and class action practices.

We launched our firm as two lawyers in February 2018. We are now six attorneys and growing. We have a "start-up" feel, with the flexibility and drive to grow our firm, do good, and achieve success during these turbulent times. We're seeking an attorney who can contribute to all of our practice areas – qui tam, impact litigation, appellate, class action, and complex commercial litigation. The successful candidate will bring a "founder's mentality," a "get-it-done" approach, and a willingness to challenge conventional wisdom by asking, "What if?"

The successful candidate will have:
(1) top-tier credentials and clerkship;
(2) at least three years or so of experience;
(3) a real interest in complex and impactful litigation;
(4) near-obsessive attention to detail (really high standards for getting it right);
(5) a results-oriented focus (the ability to think creatively and figure out what needs to get done, and the initiative to move cases aggressively); and
(6) a powerful desire to master the facts (interview witnesses, review documents, know the trees, and map the forest).

We will continue to deliver great client outcomes by attracting and retaining a truly talented and diverse team. We encourage individuals with different backgrounds and experiences to apply.

We encourage you to check out our website (pollockcohen.com) to read about our work and our team, and really evaluate whether you might be a good fit.

We would prefer someone in New York or San Francisco, but we can be zoom-flexible as to alternate working situations.

Email us a resume, a writing sample, and transcript to Hiring@PollockCohen.com.

**See less** ⌃

---

### Contact the job poster



**Steve Cohen** · 2nd
Partner at Pollock Cohen LLP

**PREMIUM**
**Send InMail**

### Job Details

**Seniority Level**
Entry level

**Industry**
Law Practice

**Employment Type**
Full-time

**Job Functions**
Legal

---

🔔 **Set alert for similar jobs**

**Get ahead with Premium Care**

Contact recruiters directly

See who's viewing your profile

Stand out as a featured applic

**Try Free for 1 Month**

Looking for talent? | **Post a job**

---

**Pay range unavailable**
Salary information is not available at the moment.

 Messaging

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing **MOTION FOR PRELIMINARY INJUNCTION** was served via email this 17th of December 2020, on the following:

Marla N. Presley, Esquire
Jackson Lewis, P.C.
Liberty Center
1001 Liberty Avenue, Suite 1000
Pittsburgh, PA 15222
Phone: 412-338-5148
Email: marla.presley@jacksonlewis.com


<u>/s/ *Rachel McElroy*</u>
Rachel McElroy, Esq.

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

/s/ *Rachel McElroy*
Rachel McElroy, Esq.

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

DARTH NEWMAN,

                 Plaintiff,

    v.

POLLOCK COHEN, LLP,
STEVE COHEN,
CHRISTOPHER K. LEUNG, and
ADAM POLLOCK,

                Defendants.

CIVIL DIVISION

Case No. GD-20-012030

JURY TRIAL DEMANDED

**NOTICE OF FILING OF NOTICE OF REMOVAL**

Filed on behalf of: Defendants

Counsel of record for this party:

Marla N. Presley, Esquire
PA ID No. 91020
Marla.Presley@jacksonlewis.com
Jackson Lewis, PC
1001 Liberty Avenue
Suite 1000
Pittsburgh, PA 15222
T.: (412) 338-5148
F.: (412) 232-3441

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CIVIL DIVISION**

DARTH NEWMAN,                )

                             )    Case No. GD-20-012030

             Plaintiff,    )

                             )

    v.                      )

                             )

POLLOCK COHEN, LLP,       )

STEVE COHEN,              )

CHRISTOPHER K. LEUNG, and  )

ADAM POLLOCK,          )

                             )

            Defendants.   )

**NOTICE OF FILING OF NOTICE OF REMOVAL**

Defendants Pollock Cohen, LLP, Steve Cohen, Christopher K. Leung, and Adam Pollock, by and through their undersigned counsel, hereby give notice that they have removed Case No. GD-20-012030 to the United States District Court for the Western District of Pennsylvania. A copy of the Notice of Removal is attached as Exhibit A.

Dated:  December 18, 2020             JACKSON LEWIS P.C.

 

                                              */s/ Marla N. Presley*

                                              Marla N. Presley

                                              PA ID No. 91020

                                              Marla.presley@jacksonlewis.com

                                              Liberty Center, Suite 1000

                                              1001 Liberty Avenue

                                              Pittsburgh, PA 15222

                                              (412) 232-0404

                                              (412) 232-3441 *facsimile*

                                              *Counsel for Defendants*

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CIVIL DIVISION**

DARTH NEWMAN,                          )
                                        )     Case No. GD-20-012030
                    Plaintiff,          )
                                        )
        v.                              )
                                        )
POLLOCK COHEN, LLP,                     )
STEVE COHEN,                            )
CHRISTOPHER K. LEUNG, and               )
ADAM POLLOCK,                           )
                                        )
                    Defendants.         )

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of December, 2020, I served the foregoing *Notice of*

*Filing of Notice of Removal* upon Plaintiff's counsel, via electronic mail, addressed as follows:

Rachel L. McElroy, Esq.
McElroy Law Firm LLC
461 Cochran Rd. #107
Pittsburgh, PA 15228
rachel@mcelroylawfirm.com
412-620-8735

Dated:  December 18, 2020                    _____
                                              Marla Presley, Esquire