**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DARTH NEWMAN,<br><br>Plaintiff,<br><br>v.<br><br>POLLOCK COHEN, LLP,<br>STEVE COHEN,<br>CHRISTOPHER K. LEUNG, and<br>ADAM POLLOCK,<br><br>Defendants. | ) | Civil Action No. 2:20-cv-01973-RJC<br><br>The Honorable Robert J. Colville<br><br>*ELECTRONICALLY FILED* |

**DEFENDANTS' BRIEF IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Defendants Pollock Cohen, LLP, Steve Cohen, Christopher K. Leung, and Adam Pollock file the following Brief in Opposition to Plaintiff Darth Newman's Motion for Preliminary Injunction:

## I. Introduction

Newman asks this Court to enter a preliminary injunction in a scenario that the Court has held repeatedly does not justify injunctive relief: a routine breach of contract case seeking monetary damages when the plaintiff asks the court to enter an injunction to ensure that funds are available for a potential judgment. As this Court has made clear, not only does that type of claim fail to show the irreparable harm necessary for injunctive relief, the relief requested falls outside a district court's authority to grant in the first place. To make things worse, in the process of bringing his meritless Motion, Newman also cited the wrong law and failed to follow this Court's requirement to confer with Defendants beforehand.[1] For those reasons, and because Newman fails

[1] Newman's Motion cites only Pennsylvania law when federal law applies, and the Motion also fails to "affirmatively state whether the motion has been discussed with all other parties, and their position as to the relief sought." Newman's counsel made no attempt to confer with Defendants before filing the Motion. *See* Standing Order on Civil Motions at ¶ 1(a) (Colville, J.).

to meet his burden on *any* of the elements he must satisfy before the Court can enter an injunction, Defendants request that Newman's Motion be denied and that Defendants be awarded attorneys' fees spent defending against Newman's baseless arguments.

## II. Statement of Relevant Facts

Newman joined Pollock Cohen as Special Counsel in April 2018. (Compl. at ¶ 24). Pollock Cohen and Newman later agreed on a compensation plan for Newman, which contained the following term:

> We will pay you an annual bonus of 10% of all "contingency recoveries" (as defined below) up to the first $2 million per year … Contingency recoveries includes both fee awards and our part of contingency wins/settlements/awards. Bonus is calculated before deductions for overheads/comp and non-case specific expenses.

*Id.* at ¶ 29 (citing Exhibit B to Complaint).

Pollock Cohen agreed to pay Newman an "annual bonus" consisting of "contingency recoveries." (*See* Ex. B). As that language makes plain, Pollock Cohen did not guarantee Newman a revenue share or grant him any ownership interest in the Firm. (*See id.*). Nor did the Firm promise Newman that he would receive compensation from those contingency recoveries in perpetuity should he no longer be employed at Pollock Cohen. (*See id.*).

In March 2020, Pollock Cohen terminated Newman's employment. (Compl. at ¶ 42) (while not pleaded in his Complaint, Newman was terminated for cause based on his poor performance.) To help Newman find another job, the Firm agreed to, among other things, give Newman a positive, public-facing reference and to keep his profile active on Pollock Cohen's website until he found new employment. (*Id.* at ¶¶ 43, 48). What Pollock Cohen would *not* agree to do, however, was to rewrite Newman's contract to provide him with benefits above and beyond those to which the parties had agreed. Pollock Cohen did not agree to Newman's demand for a

bonus arising from contingency recoveries from cases that resolved when he was no longer at the Firm. (*See id.* at ¶ 64).

When the Firm did not give in to Newman's demands for this unearned compensation, he sued Pollock Cohen and three of its partners in the Court of Common Pleas of Allegheny County on November 24, 2020. (*See generally* Compl.). Defendants later removed the case to this Court based on diversity of citizenship. (*See generally* Notice of Removal).

**III. Preliminary Injunction Standard.**

Federal Rule of Civil Procedure 65(a) grants federal courts the authority to issue preliminary injunctions. *Donald J. Trump for President, Inc. v. Boockvar*, No. 2:20-cv-966, 2020 U.S. Dist. LEXIS 163261, at **23-24, (W.D. Pa. Sept. 8, 2020); Fed. R. Civ. P. 65(a).[2] "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* Because a preliminary injunction is an "extraordinary remedy," that should only be granted "in limited circumstances," the plaintiff must make "a clear showing that the plaintiff is entitled to such relief." *Id.*; *see also Holland v. Rosen*, 895 F.3d 272, 285 (3d Cir. 2018).

The first two factors that a plaintiff must show—a reasonable likelihood of success on the merits and irreparable harm—are "prerequisites" to obtain a preliminary injunction. *Id.* (citing *Holland*, 895 F.3d at 286). Each of these two factors is also a prerequisite to the other. *See, e.g.*, *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982) ("[A] failure by the moving party to satisfy these prerequisites: that is, a failure to show a likelihood of success

[2] In diversity cases like this one, federal courts apply state law to substantive issues and federal law to procedural issues. *Donald J. Trump for President, Inc. v. Boockvar*, No. 2:20-cv-966, 2020 U.S. Dist. LEXIS 163261, at **23-24, (W.D. Pa. Sept. 8, 2020) (citing *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) ("[F]ederal courts are to apply state substantive law and federal procedural law.")). There can thus be no dispute that federal law applies to the preliminary injunction standard to be applied here. *Id.*

or a failure to demonstrate irreparable injury, must necessarily result in the denial of a preliminary injunction."). Thus, if a plaintiff fails to show that he is likely to suffer irreparable harm, the court should deny the preliminary injunction and need not address the remaining factors. *Boockvar*, 2020 U.S. Dist. LEXIS 163261, at *24 (citing *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) ("[W]e have repeated that a district court—in its sound discretion—should balance those four factors so long as the party seeking the injunction meets the threshold on the first two.").

## IV. Argument

### A. A preliminary injunction is wholly inappropriate because the relief requested falls outside the Court's authority.

Courts in this Circuit have consistently denied injunctive relief seeking to have funds placed in escrow to ensure their availability to satisfy a judgment of monetary damages. *See, e.g.*, *Reidenbach & Assocs., LLC v. Brown*, No. 20-1822-KSM, 2020 U.S. Dist. LEXIS 77327 (E.D. Pa. May 1, 2020) (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund*, 527 U.S. 308 (1999)). In those cases, the courts based their decision not just on the moving party's failure to satisfy the elements listed above, but also that the injunctive relief requested was beyond the court's authority to provide.

For example, in *Novatek Corp. v. Mallet*, 324 F. Supp. 3d 560, 562 (E.D. Pa. 2018), a corporation sued its former treasurer in Pennsylvania State Court for misappropriating company funds in breach of a contract between the shareholders, seeking injunctive relief requiring the treasurer "to place in escrow the net proceeds for her anticipated sale of her home . . . to ensure that those proceeds are reachable to pay any judgment entered in favor of [the company]." The court concluded that it could not enter the injunction requested. Because the company sought "to recover some $600,000 in damages from [the treasurer] for her breach of the oral agreement" the case was "an action at law and not an equitable proceeding." *Id.* at 566. The court stressed that it

was "not a case where there is a lien or where ownership or control of specific property such as a bank account, a piece of real estate, or a work of art is at issue." *Id.* Nor was the court "concerned with a matter of public interest." *Id.* Because of that, the court held that even if the company had proven the elements for a preliminary injunction, the court had "no authority to enter a preliminary injunction to compel [the treasurer] to place [the funds] in escrow" while it decided what was merely an action for money damages. *Id.* at 567. Similarly, in *NVR, Inc. v. Majestic Hills, LLC*, this Court denied a similar motion because it "[did] not have the authority to enter a preliminary injunction freezing assets [or placing them in escrow] in an action for damages where no lien or equitable interest in the assets [was] claimed[.]" No. 2:18-cv-01335, 2019 U.S. Dist. LEXIS 164051, at *5 (W.D. Pa. Sept. 25, 2019).

Thus, Newman's motion seeks the same kind of injunctive relief rejected repeatedly in this Court as outside the scope of a district court's authority in the first place. Because Newman's claim is just one for monetary damages, the Court cannot award the injunctive relief he desires and his motion should be denied.

### B. Newman cannot prove that he would suffer irreparable harm without injunctive relief.

The Court should also deny Newman's motion because he has failed to show how he will suffer irreparable harm—the most critical element of any claim for injunctive relief. To prove irreparable harm, the moving party must "demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following trial." *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994). The moving party must offer a "clear showing of immediate irreparable injury." *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987). Moreover, "[t]he preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co.*, 882 F.2d at 801 (citing *Weinberger v. Romero-Barcello*, 456 U.S. 305 (1982)). The

moving party must make a clear showing of immediate, imminent irreparable injury or a "presently existing actual threat; [an injunction] may not be used simply to eliminate a possibility of a remote future injury." *Acierno*, 40 F.3d at 655 (citations omitted); *Cont'l Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (injunctions not issued to allay fears and apprehensions or to soothe anxieties of parties).[3]

Beyond "exceptional circumstances, economic loss does not qualify as irreparable harm." *Gumberg Assocs. - Chapel Square v. Keybank Nat'l Ass'n*, No. 2:20-CV-01661-CCW, 2020 U.S. Dist. LEXIS 222664, at *20 (W.D. Pa. Nov. 30, 2020) (quoting *Acierno*, 40 F.3d at 655); *see also Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."). In breach of contract cases in particular, irreparable harm may be found only in two scenarios: (1) where the subject matter of the contract is of such a special nature of peculiar value that damages would be inadequate; or (2) where because of some special and practical features of the contract, it is impossible to ascertain the legal measure of loss so that money damages are impracticable. *Gumberg Assocs.*, 2020 U.S. Dist. LEXIS 222664, at *20 (citing *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987)).

None of the special circumstances described above are present here, as nothing in Newman's Complaint shows that his claims are anything but a run-of-the-mill breach of contract action seeking monetary damages. Newman's unsupported conjecture that Defendants will lack the funds to pay out a judgment cannot transform this case into one justifying injunctive relief—

[3] Newman's reliance on New York Rule of Professional Conduct 1.15(b)(4), which speaks to escrowing client funds in the event of a dispute over them, is misplaced. Here, there's no dispute that the Firm has earned its contingency fee on case settlements. In fact, Newman's entire Complaint is premised on the Firm having the right to attorneys' fees. Distilled, his allegation is that *after* the Firm earned its fee, Newman—as an employee—is owed a bonus that stems from the Firm's contingency fee. Regardless of the merits of that claim, payments from the Firm to its employee (whether as salary or bonus) fall outside of the ambit of Rule 1.15(b)(4).

especially given that he has named the Firm's managing partners as individual defendants in this litigation (in addition to the partnership itself) giving him multiple avenues of potential recovery. With no proof of irreparable harm, Newman's motion should be denied at the outset.

**B. Newman is not entitled to injunctive relief because none of his claims are likely to succeed on the merits.**

**i. Newman's WPCL claim fails because there is no contractual basis that he "earned" the funds to which he claims entitlement.**

Newman's WPCL claim is unlikely to prevail because he cannot establish that a plausible, contractual basis exists to award him the damages he seeks. The WPCL creates no right to compensation but merely creates a statutory remedy for breach of a wage contract already in place. *Weldon v. Kraft, Inc.,* 896 F.2d 793, 800-01 (3d Cir. 1990). Under the WPCL, the burden falls on Newman to prove that the proceeds he seeks were "earned"—i.e., his right to those proceeds vested—while he was actually employed at Pollock Cohen, consistent with the terms of his employment agreement ("the Agreement"). *Blackwell-Murray v. PNC Bank*, 963 F. Supp. 2d 448, 470 (E.D. Pa. 2013). As detailed below, nothing in the language of the Agreement or Pennsylvania law entitles Newman to the compensation he seeks.

First, no reasonable interpretation of the Agreement supports Newman's arguments that Pollock Cohen agreed to provide him a "revenue share" that would obligate the Firm to pay him proceeds from its fee awards and settlements for an indefinite period. The Agreement only refers to the compensation Newman seeks as an "annual bonus," so it must be treated as a bonus. And the Agreement defines that bonus to consist entirely of "contingency recoveries," which "includes both fee awards and [the Firm's] part of contingency wins/settlements/awards." Thus, Newman must prove that his right to a portion of those "contingency recoveries" vested while he was still employed at Pollock Cohen, consistent with the terms of the Agreement. But that he cannot do, as Newman did not "earn" the bonuses before his employment ended. Had these cases been settled

before Newman left the Firm, he may have been entitled to a bonus set out in his employment agreement. But they did not settle during that period, and however much Newman may now want to rewrite his contract, he did not. Thus his argument that he is somehow entitled to a bonus outside the terms of the contract fails, because Pennsylvania law has never supported such a broad definition of an "earned" bonus.

In scenarios like that here, employees are generally not considered to have earned compensation payable in the future if they are no longer employed when it would have accrued. For instance, courts agree that in most cases involving commission payments on sales, courts "hold that the WPCL applies to commissions generated from sales completed before an employee's termination, but not to sales completed after the employee's termination." *Bowers v. Foto-Wear, Inc.*, No. 3:CV-03-1137, 2007 U.S. Dist. LEXIS 20253, at *27 (M.D. Pa. Mar. 22, 2007) (citing *Sendi v. NCR Comten, Inc.*, 619 F. Supp. 1577, 1579 (E.D. Pa.1985) ("Plaintiff clearly has no right under the [commission] Plans to receive commissions on sales made after his termination.")).[4]

Importantly, courts hold that when payment of compensation requires a condition precedent to occur, and that condition precedent does not occur until *after* the employee's termination, the employee did not "earn" that compensation during his employment. *Meister v. Sun Chem. Corp.*, No. 18-3233, 2018 U.S. Dist. LEXIS 176295, at **7-8 (E.D. Pa. Oct. 15, 2018). Thus, when an employee "earning" pay is contingent on some event that does not occur before his employment ends, he cannot have "earned" that compensation under the WPCL.

[4] Of course, "[t]he mere fact that certain compensation is not payable until a future date is not necessarily fatal to a WPCL claim so long as the employee is deemed to have 'earned' it during his employment." *Riseman v. Advanta Corp.*, 39 F. App'x 761, 765 (3d Cir. 2002). In *Riseman*, the company had set very specific milestones for bonus eligibility and those events occurred while the employee was still at the company. *Riseman v. Advanta Corp.*, No. 98 Civ. 6671, 2001 U.S. Dist. LEXIS 15760, at *3–6 (E.D. Pa. Sep. 7, 2001). Accordingly, while the fact that compensation is payable at a future date is "not necessarily fatal" to a wage claim, the employee would still have the burden to show that he earned the bonus because the triggering events occurred during his employment.

That is just what happened here. Under the Agreement, the bonus payments Newman seeks are tied to "contingency recoveries," which have the word "contingency" in their name. (Ex. B). Thus, whether there would even *be* "contingency recoveries" for Newman could not occur until a particular case resolved. Thus, Newman had no "vested" interest in a contingent outcome that occurred *after* his termination. Without that condition precedent satisfied before his employment ended, Newman cannot have "earned" the compensation he demands.

Any other interpretation would lead to absurd results. If Newman were entitled to proceeds from every single case active on March 25, 2020—just by virtue of being employed at the time—Pollock Cohen could conceivably be on the hook to pay him a bonus for *years and years* during which he is *not* working at the Firm. For example, in Newman's view, he could have performed minimal work on a case the day before his separation and then still collect 10% of a multi-million-dollar recovery five years down the road. The contract language does not support that interpretation, and to impose that meaning on the Agreement would violate the first canon of contract law: To give effect to the parties' intent. *Empire Sanitary Landfill, Inc. v. Riverside Sch. Dist.*, 739 A.2d 651, 655 (Pa. Commw. 1999) ("[B]efore a court may interpret a contract in such a way as to reach an absurd result, it must endeavor to reach an interpretation that is reasonable in light of the parties' intentions.").

When discerning the parties' intent, the nature of the subject-matter is another important consideration—here, the nature of contingency fees, including their uncertainty. *Stamerro v. Stamerro*, 889 A.2d 1251, 1258 (Pa. Super. 2005) ("[T]he court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement."). Considering that context, it is unreasonable to conclude that the parties would have ever agreed to pay Newman essentially in perpetuity for any contingency recoveries from cases that were active on his termination date.

At bottom, Pennsylvania law does not support Newman's claim. The contract language at issue is not broad enough to entitle Newman to a cut of contingency recoveries that might not happen until years down the road, if at all. With no contractual entitlement to that compensation, Newman's WPCL is unlikely to succeed on the merits.

**ii. Newman's breach of contract claim fails because he cannot establish that Defendants breached any contractual agreement with him.**

Newman's breach of contract claim fails at this stage for largely the same reasons that his WPCL claim fails. To plead a cause of action for breach of contract under Pennsylvania law, a plaintiff must establish three elements: (1) the existence of a contract, including its essential terms; (2) a breach of the contract; and (3) resultant damages. *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016).

Like his WPCL claim, Newman's breach of contract claim is unlikely to succeed because the contract language at issue fails to demonstrate that Defendants ever agreed to pay him contingency recoveries in perpetuity. The contract refers to an "annual bonus," not a revenue share or other instrument that could possibly survive termination of Newman's employment. (*See* Ex. B). To write the kind of guarantee Newman seeks into the agreement would flout one of the most fundamental canons of contract law: that courts must not ignore the plain language of an agreement "to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal." *Shionogi Ir. Ltd. v. United Research Labs., Inc.*, No. 11-2861, 2011 U.S. Dist. LEXIS 91817, at *12 (E.D. Pa. Aug. 16, 2011); *see also Winshall v. Viacom Int'l., Inc.*, 76 A.3d 808, 816 (Del. 2013) (noting that breach of contract claims should not be used to "give the plaintiffs contractual protections that 'they failed to secure for themselves at the bargaining table.'").

In sum, the language of the agreement does not entitle Newman to an annual bonus of contingency recoveries after his termination, and this Court should not retroactively impose a

contractual obligation on Defendants to which they never agreed. For that reason, Newman's breach of contract claim will also not likely succeed on the merits.

**iii. Newman's promissory estoppel and unjust enrichment claims fail because they are both inconsistent with his breach of contract claim and insufficient under Pennsylvania law.**

***1. Newman cannot simultaneously allege the existence of an express contract and maintain promissory estoppel and unjust enrichment claims.***

First, Newman cannot sustain both a breach of contract claim and a promissory estoppel claim under Pennsylvania law. Promissory estoppel is an equitable doctrine raised to enforce a promise made by one party to another *when there is no enforceable contract between them*. *I.K. ex rel. B.K. v. Haverford Sch. Dist.*, 567 F. App'x 135, 137 (3d Cir. 2014) (citing *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000)) (emphasis added). The same is true for Newman's unjust enrichment or quantum meruit claim. Unjust enrichment is a quasi-contract claim, and a quasi-contract imposes a duty not *because of* any agreement but *in spite of* the lack of an agreement, when one party has been unjustly enriched at the expense of another. *Lackner*, 892 A.2d at 34 (citing *AmeriPro Search, Inc. v. Fleming Steel Company*, 787 A.2d 988, 991 (Pa. Super. 2001)).

Thus, a plaintiff cannot sustain these claims where an express contract exists between the parties. *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 896 (Pa. Super. 2011) (citing *Scott v. Westinghouse Elec. Corp.*, 259 A.2d 443, 448 (Pa. 1969)).[5] As a result, Newman cannot both claim that an enforceable contract exists and seek remedies that only apply when there is no contract.

[5] Rule 8 of the Federal Rules of Civil Procedure permits pleading in the alternative. With that said, Newman does not plead his unjust enrichment claim in the alternative. Like his promissory estoppel claim, he raises this claim on top of his breach of contract claim, which he cannot do.

#### 2. *Newman cannot establish the elements of promissory estoppel under Pennsylvania law.*

Newman's promissory estoppel claim also fails because his allegations are legally insufficient to invoke this equitable doctrine. To establish promissory estoppel under Pennsylvania law, a plaintiff must show that: (1) the defendant made a promise that it should have reasonably expected to induce action or forbearance on the part of the plaintiff; (2) the plaintiff actually took action or refrained from taking action in reliance on the promise; and (3) injustice can only be avoided by enforcing the promise. *Haverford Sch. Dist.*, 567 F. App'x at 137 (citing *Crouse*, 745 A.2d at 610).

First, Newman cannot satisfy the first element because the Agreement does not support that Defendants made him a promise that they should have reasonably expected to induce action on Newman's part. Nothing in the Agreement plausibly entitled to him to compensation from contingency recoveries years into the future from any case that happened to be active on the date of his termination. It defies logic and the clear words of the Agreement. This sort of "broad and vague implied promise" cannot satisfy the first element of a promissory estoppel claim. *Haverford Sch. Dist.*, 567 F. App'x at 138 (citing *C&K Petroleum Prod., Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988)).

Newman also cannot show that "injustice can only be avoided" under the circumstances by enforcing Defendants' alleged promise to pay him the funds he seeks, as required by the third element. Again, nothing in the Parties' agreement demonstrates that Defendants ever intended to give Newman the right to receive proceeds from contingency recoveries after his termination. There would be no "justice" in rewriting that contract after the fact to bestow a benefit on Newman

for which he did not bargain in the first place.[6] For those reasons, Newman's promissory estoppel claim has no more merit than his other claims and is unlikely to succeed.

***3. Newman's unjust enrichment claim fails because it would not be "unjust" if he were not compensated under the circumstances.***

Just like his promissory estoppel claim, Newman's unjust enrichment claim is legally insufficient. To prove a quasi-contract claim for unjust enrichment, a plaintiff must show: (1) benefits conferred on the defendant by the plaintiff; (2) appreciation of such benefits by the defendant; (3) acceptance and retention of such benefits by the defendant; (4) under such circumstances that it would be unjust for the defendant to retain the benefits without paying the plaintiff for their value. *Lackner*, 892 A.2d at 34 (citing *AmeriPro Search, Inc.*, 787 A.2d at 991).

Newman's claim fails because, *inter alia*, he cannot establish the final and most important element of his claim: that Defendants' enrichment was *unjust* under the circumstances.[7] For the reasons above, to conclude that not paying Newman a bonus for contingency recoveries that Defendants never agreed to pay him, would be an *injustice* would stretch the word beyond recognition. Therefore, Newman cannot prove this critical element of his unjust enrichment claim, and thus his claim will not likely succeed.

**v. Newman's breach of fiduciary duty claim is barred by the gist of the action doctrine.**

Next, Newman's breach of fiduciary duty claim is also unlikely to prevail, as the gist of the action doctrine bars such claims when the alleged breach of fiduciary duty is grounded in contractual obligations. *DePuy Synthes Sales, Inc. v. Globus Med., Inc.*, 259 F. Supp. 3d 225, 238

[6] Notably, this is not a case where any salary wages are unpaid. Newman's complaint and motion for a preliminary injunction are filled with details about his salary structure, but he notes that every penny of salary wages were fully paid, with interest.

[7] Newman also cannot establish the first and second elements of his claim. Newman was fired for cause, so it is questionable whether any benefits conferred upon or appreciated by Defendants outweighed the costs of Newman's poor work.

(E.D. Pa. 2017) (granting motion to dismiss fiduciary duty claim based only on contractual duties). Newman's claim is plainly based on nothing but contractual duties, as that portion of his Complaint makes no mention of any alleged breach that is not directly tied to the contract between him and Defendants. (Compl. at ¶¶ 98-101). When a plaintiff makes "'no allegations of breach of fiduciary duty or duty of loyalty that transcend or exist outside of' the parties' contractual agreements," as is the case here, the gist of the action doctrine bars a breach of fiduciary duty claim. *Certainteed Ceilings Corp. v. Aiken*, No. 14-3925, 2015 U.S. Dist. LEXIS 10881, at *9 (E.D. Pa. Jan. 29, 2015). Newman's claim mentions no duty beyond those purportedly contained in the contract between him and Defendants, and for that reason, his claim is barred.

**vi. Newman's declaratory judgment claim is duplicative of his other claims and should be dismissed alongside them.**

Finally, Newman's declaratory judgment claim fails for several reasons. First, his claim is meritless because it is based on the same faulty foundation as his other claims: As noted above, Newman's complaint fails to show that he has any plausible right to relief under the contract at issue, but Newman's declaratory judgment claim also fails because it is duplicative of his other claims. "Courts routinely dismiss declaratory judgment claims when they are duplicative of breach of contract claims." *LM Gen. Ins. Co. v. Lebrun*, No. 19-2144, 2020 U.S. Dist. LEXIS 115436, at *33 (E.D. Pa. July 1, 2020) (collecting cases). Newman's declaratory judgment claim differs from his breach of contract claim in name only, as he requests essentially the exact same relief in both. (Compl. at ¶¶ 71-74). Thus, this claim is just the sort of duplicative declaratory judgment claim courts dismiss without hesitation and is unlikely to succeed.

**C. Newman's motion should also be dismissed because the balance of equities do not favor him, nor would injunctive relief be in the public interest.**

As noted above, this Court need not even consider the remaining elements for a preliminary injunction given Newman's failure to show irreparable injury or likelihood of success on the

merits. But in any event, Newman cannot satisfy the latter two elements either. First, with no proof of irreparable harm considering the adequacy of monetary damages under the circumstances, the *only* harm an injunction would cause here would be to Defendants, who would be forced to set aside a substantial sum of money that could otherwise help pay operating expenses. *See, e.g.*, *ACE Am. Ins. Co. v. Wachovia Ins. Agency Inc.*, 306 F. App'x 727, 731-32 (3d Cir. 2009) (readily finding that the balance of harms weighed against injunctive relief when monetary damages were appropriate for the harm alleged by the plaintiff). Further, the public interest does not favor injunctive relief either considering the lack of any proof of irreparable harm. *See, e.g.*, *TES Franchising, LLC v. Dombach*, No. 10-0017, 2010 U.S. Dist. LEXIS 107951, at **56-57 (E.D. Pa. Oct. 7, 2010) (explaining that the public interest in favor of enforcing contractual obligations did not support granting an injunction when the plaintiff failed to show that monetary damages would be an inadequate form of relief). Thus, none of the other elements weigh in Newman's favor here either.

**V. Conclusion**

For the reasons above, Defendants request that this Court deny Newman's Motion for Preliminary Injunction. Defendants also request that the Court award Defendants their attorneys' fees spent defending against Newman's Motion considering its lack of merit against the legal background detailed above. (Defendants can submit a fee petition if so ordered.)

Date: January 25, 2021

Respectfully submitted,

JACKSON LEWIS P.C.

*/s/ Marla N. Presley*

Marla N. Presley, Esq.
PA ID No. 91020
marla.presley@jacksonlewis.com

Joanna M. Rodriguez
PA ID No. 318853
Joanna.Rodriguez@jacksonlewis.com
1001 Liberty Avenue, Suite 1000
Pittsburgh, PA 15222
412-232-0404 | Telephone
412-232-3441 | Facsimile

*Counsel for Defendants*