**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DARTH NEWMAN, | ) | |
| | ) | Civil Action No. 2:20-cv-01973-RJC |
| Plaintiff, | ) | |
| | ) | The Honorable Robert J. Colville |
| v. | ) | |
| | ) | |
| POLLOCK COHEN, LLP, | ) | *ELECTRONICALLY FILED* |
| STEVE COHEN, | ) | |
| CHRISTOPHER K. LEUNG, and | ) | |
| ADAM POLLOCK, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF
THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants Pollock Cohen, LLP, Steve Cohen, Christopher K. Leung, and Adam Pollock submit the following Brief in Support of their Motion to Dismiss Plaintiff's Complaint:

**I.    Introduction**

It is a fundamental tenet of contract law that a breach of contract claim's purpose is to provide the plaintiff the benefit of his bargain—not to award the plaintiff with *more* than he bargained for.  That is what Darth Newman is asking for here: a contractual benefit the other party never agreed to give him.

Specifically, Newman demands that his former law firm pay him an annual bonus tied to the Firm's contingency recoveries in cases that conclude *after* his for cause termination, but which were pending back when he was still employed by the firm.  And he seeks this annual bonus not only for the year 2020, when his employment ended, but in perpetuity, whether the Firm earns a fee in a case next year or ten years from now.

Newman seeks this windfall despite the lack of any language in the parties' agreement that plausibly supports such a one-sided outcome.  The plain text of the agreement does not envision paying him bonuses long after his employment concludes.  And because all of Newman's claims

hinge on that same, flawed argument, none of them are fit to survive a motion to dismiss.  For that

reason, as detailed below, Newman's complaint should be dismissed in its entirety, with prejudice.

## II.    Statement of Relevant Facts[1]

In early 2018, Pollock contacted Newman about working at Pollock Cohen.  (Compl. at

¶ 15).  After Newman initially worked at the Firm as an independent contractor, Pollock and

Newman discussed Newman joining Pollock Cohen full time.  (*Id.* at ¶¶ 18, 22).  Newman agreed

and joined Pollock Cohen as Special Counsel in April 2018.  (*Id.* at ¶ 24).

Pollock Cohen and Newman later agreed on a compensation plan for Newman, which

contained the following term:

> We will pay you an annual bonus of 10% of all "contingency recoveries" (as defined
> below) up to the first $2 million per year … Contingency recoveries includes both fee
> awards and our part of contingency wins/settlements/awards.  Bonus is calculated before
> deductions for overheads/comp and non-case specific expenses.

*Id.* at ¶ 29 (citing Exhibit B to Complaint).

Pollock Cohen agreed to pay Newman an "annual bonus" consisting of a percentage of

"contingency recoveries."  (*See* Ex. B).  As that language makes plain, Pollock Cohen did not

guarantee Newman a revenue share or grant him any ownership interest in the Firm.  (*See id.*).

Nor did the Firm promise Newman that he would receive compensation from contingency

recoveries in perpetuity should he no longer be employed at Pollock Cohen.[2]  (*See id.*).

In March 2020, Pollock Cohen terminated Newman's employment.  (Compl. at ¶ 42).[3]  To

assist Newman in finding another job, the Firm agreed to, among other things, give Newman a

---

[1] Defendants accept the factual allegations in Newman's Complaint as true solely for the purpose of this Motion to Dismiss.

[2] Notably, this is not a case where any salary wages are unpaid.  Newman's complaint is filled with details about his salary structure, but he notes that every penny of salary wages were fully paid, with interest.

[3] While not pleaded in his Complaint, Newman was terminated for cause based on his poor performance.

positive, public-facing reference and to keep his profile active on Pollock Cohen's website until he found new employment. (*Id.* at ¶¶ 43, 48).

What Pollock Cohen would *not* agree to do, however, was to rewrite Newman's contract to provide him with benefits above and beyond those to which the parties had agreed. Specifically, Pollock Cohen did not agree to pay Newman's demand for an annual bonus arising from contingency recoveries from cases that resolved *after* his discharge. (*See id.* at ¶ 64). When the Firm did not give in to Newman's demands for this substantial unearned compensation, he sued Pollock Cohen and three of its partners in the Court of Common Pleas of Allegheny County on November 24, 2020. (*See generally* Compl.). Defendants later removed the case this Court based on diversity of citizenship. (*See generally* Notice of Removal).

## III.   Standard of Review

Rule 12(b)(6) gives district courts the power to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). In essence, Rule 12(b)(6) tests the legal sufficiency of the complaint: If the plaintiff has not pleaded enough facts to create a facially plausible claim for relief, his claims should be dismissed. *Hull v. Welex Inc.*, No. 02-7735, 2002 U.S. Dist. LEXIS 24772 (E.D. Pa. Dec. 30, 2002) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

When analyzing a complaint under this Rule, while a district court should accept the plaintiff's well-pleaded factual allegations as true, the court should disregard any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although the district court's analysis is generally limited to the complaint itself, the court can—and should—consider other documents that are "integral to or explicitly relied upon in the complaint." *Hull*, 2002 U.S. Dist. LEXIS 24772, at *4 (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

**IV.    Argument**

**A.    Newman's WPCL claim fails because there is no contractual basis that he "earned" the funds to which he claims entitlement.**

Newman's WPCL claim cannot survive a motion to dismiss because he cannot establish that a plausible, contractual basis exists to award him the damages he seeks. The WPCL creates no right to compensation but merely creates a statutory remedy for breach of a wage contract already in place. *Weldon v. Kraft, Inc.,* 896 F.2d 793, 800-01 (3d Cir. 1990). Under the WPCL, the burden falls on Newman to prove that the proceeds he seeks were "earned"—i.e., his right to those proceeds vested—while he was actually employed at Pollock Cohen, consistent with the terms of his employment agreement ("the Agreement"). *Blackwell-Murray v. PNC Bank*, 963 F. Supp. 2d 448, 470 (E.D. Pa. 2013). As detailed below, nothing in the language of the Agreement or Pennsylvania law entitles Newman to the compensation he seeks.

It is important to focus on what Newman is actually seeking: a *bonus* for cases that were settled by the Firm *after* his termination. The Agreement does not promise Newman any kind of "revenue share." No reasonable interpretation of the Agreement supports Newman's arguments that Pollock Cohen agreed to provide him a "revenue share" that would obligate the Firm to pay him proceeds from its fee awards and settlements for an indefinite period. Unilaterally rebranding an "annual bonus" as a "revenue share"—a term that appears nowhere in the Agreement—does not make it so. The Agreement instead refers to the compensation Newman seeks as an "annual bonus," so it must be treated as a bonus. And the Agreement defines that bonus to consist entirely of "contingency recoveries," which "includes both fee awards and [the Firm's] part of contingency wins/settlements/awards."

Thus, Newman must prove that his right to a portion of those "contingency recoveries" vested while he was still employed at Pollock Cohen, consistent with the terms of the Agreement. But that he cannot do, as Newman did not "earn" the bonuses before his employment ended. Had

these cases settled before Newman left the Firm, he would be entitled to a bonus set out in his employment agreement. But they did not settle during that period. And however much Newman may now want to rewrite his contract, he did not bargain for anything more than what the Agreement details. Thus his argument that he is somehow entitled to a bonus outside the terms of the contract fails, because Pennsylvania law has never supported such a broad definition of an "earned" bonus.

To be sure, "[t]he mere fact that certain compensation is not payable until a future date is not necessarily fatal to a WPCL claim so long as the employee is deemed to have 'earned' it during his employment." *Riseman v. Advanta Corp.*, 39 F. App'x 761, 765 (3d Cir. 2002). In *Riseman*, the company had set very specific milestones for bonus eligibility and those events occurred while the employee was still at the company. *Riseman v. Advanta Corp.*, No. 98 Civ. 6671, 2001 U.S. Dist. LEXIS 15760, at *3–6 (E.D. Pa. Sep. 7, 2001). Accordingly, while the fact that compensation is payable at a future date is "not necessarily fatal" to Newman's claim from the outset, he would still need to meet his burden of proof: he would have the burden to show that he earned the bonus because the triggering events occurred during his employment.

In fact, later case law citing *Riseman* makes clear that, in scenarios like that here, employees are generally not considered to have earned compensation payable in the future if they are no longer employed when the bonus-triggering event occurs. For instance, courts agree that in most cases involving commission payments on sales, courts "hold that the WPCL applies to commissions generated from sales completed before an employee's termination, but not to sales completed after the employee's termination." *Bowers v. Foto-Wear, Inc.*, No. 3:CV-03-1137, 2007 U.S. Dist. LEXIS 20253, at *27 (M.D. Pa. Mar. 22, 2007) (citing *Sendi v. NCR Comten, Inc.*, 619 F. Supp. 1577, 1579 (E.D.Pa.1985) ("Plaintiff clearly has no right under the [commission] Plans to receive commissions on sales made after his termination.")).

Importantly, courts hold that when payment of compensation requires a condition precedent to occur, and that condition precedent does not occur until *after* the employee's termination, the employee did not "earn" that compensation during his employment. *Meister v. Sun Chem. Corp.*, No. 18-3233, 2018 U.S. Dist. LEXIS 176295, at **7-8 (E.D. Pa. Oct. 15, 2018) (citing *Riseman*, 39 F. App'x at 765). Thus, when an employee "earning" pay is contingent on some event that does not occur before his employment ends, he cannot have "earned" that compensation under the WPCL.

That is just what happened here. Under the Agreement, the bonus payments Newman seeks are tied to "contingency recoveries," which have the word "contingency" in their name. (Ex. B). Whether there would even *be* "contingency recoveries" for Newman could not occur until a particular case resolved. Thus, Newman had no "vested" interest in a contingent outcome that occurred *after* his termination. Without that condition precedent satisfied before his employment ended, Newman cannot have "earned" the compensation he demands.

Any other interpretation would lead to absurd results. If Newman were entitled to proceeds from every single case active on March 25, 2020—just by virtue of being employed at the time— Pollock Cohen could conceivably be on the hook to pay him an annual bonus for *years and years* during which he is *not* working at the Firm. For example, in Newman's view, he could have performed minimal work on a case the day before his termination and then still collect 10% of a multi-million-dollar recovery five years down the road. The language of the Agreement does not support that interpretation, and to impose that meaning on the Agreement would violate the first canon of contract law: To give effect to the parties' intent. *Melton v. Melton*, 831 A.2d 646, 653-54 (Pa. Super. 2003) ("When interpreting the language of a contract, the intention of the parties is a paramount consideration."); *Empire Sanitary Landfill, Inc. v. Riverside Sch. Dist.*, 739 A.2d 651, 655 (Pa. Commw. 1999) ("[B]efore a court may interpret a contract in such a way as to reach

an absurd result, it must endeavor to reach an interpretation that is reasonable in light of the parties' intentions.").

And when discerning the parties' intent, the nature of the subject-matter is another important consideration—here, the nature of contingency fees, including their uncertainty. *Stamerro v. Stamerro*, 889 A.2d 1251, 1258 (Pa. Super. 2005) ("[T]he court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement. The court will adopt an interpretation that is most reasonable and probable bearing in mind the objects which the parties intended to accomplish through the agreement."). Considering that context, it is unreasonable to conclude—and unsupported by the plain text of the Agreement—that the Firm agreed to pay Newman essentially in perpetuity for any contingency recoveries from cases that were active on his termination date.

At bottom, Pennsylvania law does not support Newman's claim. The contract language at issue is not broad enough to entitle Newman to a cut of contingency recoveries that might not happen until years down the road, if at all. With no contractual entitlement to that compensation, Newman cannot sustain a claim under the WPCL.

### B.     Newman's breach of contract claim fails because he cannot establish that Defendants breached any contractual agreement with him.

Newman's breach of contract claim fails at this stage for largely the same reasons that his WPCL claim fails. In short, he cannot prove that Defendants breached any agreement to provide him the proceeds he desires because nothing in the contract shows an agreement to pay him those proceeds in the first place.

To plead a cause of action for breach of contract under Pennsylvania law, a plaintiff must establish three elements: (1) the existence of a contract, including its essential terms; (2) a breach of the contract; and (3) resultant damages. *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v.*

*Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). Courts have not hesitated to dismiss breach of contract claims under Rule 12(b)(6) when there is no evidence on the face of the contract that the parties agreed to the criterion that gives rise to the alleged breach. *See, e.g.*, *Capital Funding, VI, LP v. Chase Manhattan Bank USA, N.A.*, No. 01-CV-6093, 2003 U.S. Dist. LEXIS 12102, at **15-16 (E.D. Pa. Mar. 21, 2003) (dismissing breach of contract claim under Rule 12(b)(6) when the contract language did not demonstrate that the defendant ever agreed to the duty it allegedly breached).

Like his WPCL claim, Newman's breach of contract claim cannot survive a motion to dismiss because the contract language at issue fails to demonstrate that Defendants ever agreed to pay him post-termination annual bonuses, let alone in perpetuity. The contract refers to an "annual bonus," not a revenue share or other instrument that could possibly survive termination of Newman's employment. (*See* Ex. B). To write the kind of guarantee Newman seeks into the agreement would flout one of the most fundamental canons of contract law: that courts must not ignore the plain language of an agreement "to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal." *Shionogi Ir. Ltd. v. United Research Labs., Inc.*, No. 11-2861, 2011 U.S. Dist. LEXIS 91817, *12 (E.D. Pa. Aug. 16, 2011); *see also Winshall v. Viacom Int'l., Inc.*, 76 A.3d 808, 816 (Del. 2013) (noting that breach of contract claims should not be used to "give the plaintiffs contractual protections that 'they failed to secure for themselves at the bargaining table.'").

In sum, the language of the agreement does not entitle Newman to an annual bonus of contingency recoveries after his termination, and this Court should not retroactively impose a contractual obligation on Defendants to which they never agreed. For that reason, Newman's breach of contract claim should be dismissed.

**C.     Newman's promissory estoppel claim is both inconsistent with his breach of contract claim and insufficient under Pennsylvania law.**

Newman's promissory estoppel claim fails for two reasons.  First, he cannot maintain such a claim while simultaneously claiming damages based on an express contract.  Second, like his breach of contract claim, Newman's promissory estoppel claim fails as a matter of law and should be dismissed, with prejudice.

*i.      Newman cannot simultaneously allege the existence of an express contract and maintain a promissory estoppel claim.*

First, Newman cannot sustain both a breach of contract claim, and a promissory estoppel claim under Pennsylvania law.  Promissory estoppel is an equitable doctrine raised to enforce a promise made by one party to another *when there is no enforceable contract between them. I.K. ex rel. B.K. v. Haverford Sch. Dist.*, 567 F. App'x 135, 137 (3d Cir. 2014) (citing *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000)) (emphasis added).  Newman cannot simultaneously allege that an enforceable contract *does exist* for the purposes of his breach of contract claim and *does not exist* for the purposes of his promissory estoppel claim.  Thus, Newman's promissory estoppel claim fails as a matter of law.[4]

*ii.     Newman cannot establish the elements of promissory estoppel under Pennsylvania law.*

Newman's promissory estoppel claim also fails because his allegations are legally insufficient to invoke this equitable doctrine.  To establish promissory estoppel under Pennsylvania law, a plaintiff must show that: (1) the defendant made a promise that they should have reasonably expected to induce action or forbearance on the part of the plaintiff; (2) the plaintiff actually took action or refrained from taking action in reliance on the promise; and (3) injustice can only be

---

[4] Rule 8 of the Federal Rules of Civil Procedure permits pleading in the alternative.  Newman, however, has not alleged promissory estoppel in the alternative.  Rather, he has raised it *in addition to* his breach of contract claim, which Pennsylvania law does not allow.

avoided by enforcing the promise.  *Haverford Sch. Dist.*, 567 F. App'x at 137 (citing *Crouse*, 745 A.2d at 610).

First, Newman cannot satisfy the first element because the agreement does not support that Defendants made him a promise that they should have reasonably expected to induce action on Newman's part.  As detailed above, nothing in the terms of Newman's employment plausibly entitled to him to compensation from contingency recoveries—irrespective of how far in the future the case resolved—from any case that happened to be active on the date of his termination.  It defies logic and the clear words of the agreement.  This sort of "broad and vague implied promise" cannot satisfy the first element of a promissory estoppel claim.  *Haverford Sch. Dist.*, 567 F. App'x at 138 (citing *C&K Petroleum Prod., Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988)).

Newman also cannot demonstrate that "injustice can only be avoided" under the circumstances by enforcing Defendants' alleged promise to pay him the funds he seeks, as required by the third element.  Again, nothing in the Parties' agreement demonstrates that Defendants ever intended to give Newman the right to receive proceeds from contingency recoveries after his termination.  There would be no "justice" in rewriting that contract after the fact to bestow a benefit on Newman for which he did not bargain in the first place.

For the reasons above, Newman's promissory estoppel claim has no more merit than his other claims and cannot withstand a motion to dismiss.

> **D.**     **Newman cannot sustain a quasi-contract claim under Pennsylvania law because he cannot show Defendants were unjustly enriched under the circumstances.**

Finally, Newman claims entitlement to payment by Defendants through yet another form of equitable relief—the quasi-contract doctrine of *quantum meruit*.  Just like his promissory estoppel claim, however, Newman's *quantum meruit* claim is both inconsistent with his breach of

contract claim and legally flawed because he cannot show how it would cause "injustice" to deny him the payment he seeks.

> ### i. *Newman cannot both claim that a contract exists between himself and Defendants and seek damages for a quantum meruit claim because a contract does not exist.*

First, quasi-contracts are distinct from express contracts. A quasi-contract imposes a duty, not because of any agreement but *in spite of* the lack of an agreement, when one party has been unjustly enriched at the expense of another. *Lackner*, 892 A.2d at 34 (citing *AmeriPro Search, Inc. v. Fleming Steel Company*, 787 A.2d 988, 991 (Pa. Super. 2001)). For that reason, a plaintiff cannot sustain an unjust enrichment claim where an express contract exists between the parties. *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 896 (Pa. Super. 2011) (citing *Scott v. Westinghouse Elec. Corp.*, 259 A.2d 443, 448 (Pa. 1969)).[5] Thus, Newman cannot both claim that an enforceable contract exists and seek a remedy that only applies when there is no such contract.

> ### ii. *Newman's unjust enrichment claim fails because he cannot show how it would be "unjust" if he were not compensated under the circumstances.*

Just like his promissory estoppel claim, Newman's unjust enrichment claim is legally insufficient. To prove a quasi-contract claim for unjust enrichment, a plaintiff must demonstrate: (1) benefits conferred on the defendant by the plaintiff; (2) appreciation of such benefits by the defendant; (3) acceptance and retention of such benefits by the defendant; (4) under such circumstances that it would be unjust for the defendant to retain the benefits without paying the plaintiff for their value. *Lackner*, 892 A.2d at 34 (citing *AmeriPro Search, Inc.*, 787 A.2d at 991). When unjust enrichment exists, the law implies a quasi-contract that requires the defendant to pay

---

[5] Rule 8 of the Federal Rules of Civil Procedure permits pleading in the alternative. With that said, Newman does not plead his unjust enrichment claim in the alternative. Like his promissory estoppel claim, he raises this claim on top of his breach of contract claim, which he cannot do.

the plaintiff for the value of the benefit conferred.  *Id.* (quoting *AmeriPro Search, Inc.*, 787 A.2d at 991).

The key determination of any unjust enrichment claim "is whether the enrichment of the defendant is unjust."  *Id.* (quoting *AmeriPro Search, Inc.*, 787 A.2d at 991).  "The doctrine does not simply apply because the defendant may have benefited as a result of the actions of the plaintiff."  *Id.*

Newman's claim fails because, *inter alia*, he cannot establish the final—and most important—element of his claim: that Defendants' enrichment was *unjust* under the circumstances. For the reasons above, to conclude that not paying Newman a bonus for post-termination contingency recoveries, a bonus that Defendants never agreed to pay him, would be an *injustice* would stretch the word beyond recognition.  Therefore, Newman cannot prove this critical element of his unjust enrichment claim, and thus his claim fails as a matter of Pennsylvania law.

### E.   Newman's breach of fiduciary duty claim is barred by the gist of the action doctrine and should be dismissed.

Next, Newman's breach of fiduciary duty claim cannot survive dismissal either, as the gist of the action doctrine bars such claims when the alleged breach of fiduciary duty is grounded in contractual obligations.  *Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491, 499 (E.D. Pa. 2008); *see also DePuy Synthes Sales, Inc. v. Globus Med., Inc.*, 259 F. Supp. 3d 225, 238 (E.D. Pa. 2017) (granting motion to dismiss breach of fiduciary duty claim based only on contractual duties).

Newman's claim is plainly based on nothing but contractual duties, as that portion of his Complaint makes no mention of any alleged breach that is not directly tied to the contract between him and Defendants.  (Compl. at ¶¶ 98-101).  When a plaintiff makes "'no allegations of breach of fiduciary duty or duty of loyalty that transcend or exist outside of' the parties' contractual agreements," as is the case here, the gist of the action doctrine bars a breach of fiduciary duty

claim.  *Certainteed Ceilings Corp. v. Aiken*, No. 14-3925, 2015 U.S. Dist. LEXIS 10881, at *9 (E.D. Pa. Jan. 29, 2015).  Newman's claim makes no mention of any duty beyond those purportedly contained in the contract between him and Defendants, and for that reason, his claim is barred and should be dismissed.

      **F.**      **Newman's declaratory judgment claim is founded on the same flaws as his other claims and should be dismissed alongside them.**

Finally, Newman's declaratory judgment claim fails for several reasons.  First, his claim is meritless because it is based on the same faulty foundation as his other claims:  As noted above, Newman's complaint fails to show that he has any plausible right to relief under the contract at issue.  But in addition, Newman's declaratory judgment claim fails because it duplicative of his other claims.

"Courts routinely dismiss declaratory judgment claims when they are duplicative of breach of contract claims."  *LM Gen. Ins. Co. v. Lebrun*, No. 19-2144, 2020 U.S. Dist. LEXIS 115436, at *33 (E.D. Pa. July 1, 2020) (collecting cases); *see also In re Lincoln Nat'l COI Litig.*, 269 F. Supp. 3d 622, 639-40 (E.D. Pa. 2017) (granting motion to dismiss and holding that the declaratory judgment claim was duplicative of the breach of contract claim, where the plaintiffs requested declaratory relief resolving the parties' obligations under the applicable insurance policies); *Nova Fin. Holdings Inc. v. Bancinsure, Inc.*, No. 11-07840, 2012 U.S. Dist. LEXIS 53800, at *4 (E.D. Pa. Apr. 17, 2012) (same).

Newman's declaratory judgment claim differs from his breach of contract claim in name only, as he requests essentially the exact same relief in both.  (Compl. at ¶¶ 71-74).  Thus, this claim is just the sort of duplicative declaratory judgment claim courts dismiss without hesitation.  For that reason, Newman's declaratory judgment should face the same fate as his other claims and be dismissed under Rule 12(b)(6).

V.      **Conclusion**

For the reasons detailed above, Defendants request that this Court dismiss Newman's Complaint in its entirety, with prejudice, under Rule 12(b)(6).


Date:  February 1, 2021                        Respectfully submitted,

                                               JACKSON LEWIS P.C.

                                               */s/ Marla N. Presley*
                                               Marla N. Presley, Esquire
                                               PA ID No. 91020
                                               marla.presley@jacksonlewis.com
                                               Joanna M. Rodriguez
                                               PA ID No. 318853
                                               Joanna.Rodriguez@jacksonlewis.com
                                               1001 Liberty Avenue, Suite 1000
                                               Pittsburgh, PA  15222
                                               412-232-0404 | Telephone
                                               412-232-3441 | Facsimile

                                               *Counsel for Defendants*