IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

DARTH NEWMAN,                           Civil Action No. 2:20-cv-01973-RJC

          Plaintiff,

    v.                                  Honorable Robert J. Colville

POLLOCK COHEN, LLP,
STEVE COHEN,
CHRISTOPHER K. LEUNG, and
ADAM POLLOCK,                           *Electronically Filed*

          Defendants.              JURY TRIAL DEMANDED


PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

     Plaintiff, Darth Newman, by and through his undersigned attorney, files the following Plaintiff's Brief in Support of Motion for Preliminary Injunction.

## I.    Procedural History

     As a preliminary matter, this motion has a rather unusual procedural history. Plaintiff filed his Complaint in state court. After Defendants accepted service of the Complaint, Plaintiff filed a Motion for Preliminary Injunction in state court on December 18, 2020, and served said motion on Defendants at 8:20am. On the same day, Defendants rather than responding to the Motion for Preliminary Injunction removed the action to this Court. Defendants included Plaintiff's pending Motion for Preliminary Injunction as Exhibit B to their Notice of Removal. The removal of the action to Federal Court did not render Plaintiff's Motion for Preliminary Injunction moot, and explains Plaintiff's citation to state law in the moving papers. Additionally, the Honorable Judge McVay scheduled a status conference on the Motion for Preliminary Injunction for December 21, 2020. While

1

Judge McVay did not attend the status conference due to the removal, both Plaintiff's counsel and Defendants counsel were on the Teams meeting during the allotted time. Defendants were well aware of the pending Motion for Preliminary Injunction prior to removing the case to this Court, a meet and confer would have been entirely cermonal.

## II.    Introduction

Regardless of whether or not Mr. Newman brings his Motion for Preliminary Injunction under Pa.R.C.P. 1531 or F.R.C.P 65(a), it is clear that the court has the jurisdiction to grant the relief he is requesting. Mr. Newman is simply asking that the portion of contingency fees owed to him, which Defendants have an independant ethical obligation to escrow under the Rules of Professional Conduct, be set aside until the dispute is concluded.    Mr. Newman has specifically brought equitable claims against the contingency fee(s) which distinguishes this case from the jurisdictional cases cited by Defendants. Additionally, both the PA state courts and the Third Circuit have acknowledged the court's power to grant a preliminary injunction to protect future damages by enjoining a defendant from consuming and dissipating the disputed monies. As Mr. Newman can establish that he is likely to succeed on the merits, that he will suffer irreparable harm without the injunction, that the balance of equities tips in his favor, and that granting the injunction is in the public interest, this court should grant the preliminary injunction.

## III.    Statement of Fact

Mr. Newman incorporated and attached his verified complaint to his motion for preliminary injunction in lieu of an affidavit under F.R.C.P. 65. As a preliminary matter, it should be noted that Defendants have not attached *any* affidavits or other verified

documents to their Brief in Opposition to support statements not contained in the complaint. For example, without any factual support, Defendants brief states that Mr. Newman was discharged for cause. This scurrilous assertion is in direct contradiction to Defendants' own contemporaneous written documentation and entirely irrelevant. (Exhibit F to Complaint) The contract at issue here is not dependent on or connected to "performance." Additionally, Defendants did agree on March 26, 2020 to continue to pay Mr. Newman his Revenue Share as memorized in email. (Exhibit E to Complaint) It was only after Mr. Newman requested payment and several clients selected Mr. Newman's firm over Defendants, that Defendants decided to reinterpret the agreement to exclude Mr. Newman from what they had called the "the upside" of agreeing to join a startup firm with no money and irregular revenues.

## IV.    Argument

### 1.  This Court has the Authority to Grant Mr. Newman's Preliminary Injunction

This court has the authority to grant the requested preliminary injunction under any of several exceptions to the general rule which withholds preliminary injunctions tied to contractual claims for money damages. First, Mr. Newman asserted equitable claims against Defendants for a portion of the Revenue Share. These equitable claims are well within the court's jurisdiction and the court may issue injunctive relief in connection with those claims. Second, Defendants' refusal to escrow the disputed portion of a settlement award is a stark and serious violation of the Rules of Professional Conduct. *See* N.Y.R.P.C. 1.15. When it comes to the regulation of the practice of law, there is no greater public interest than ensuring attorneys adhere to the Rules of Professional Conduct as they relate to the safeguarding of funds. The requested injunction, which seeks nothing more than

compliance with the Rules, neatly fits into the public interest exception outlined by the Supreme Court. Third, Defendants, who were insolvent in March 2020, have admitted their intention and apparent need to spend the disputed portions of contingency fee(s) owed to Mr. Newman. In fact, they assert the relatively small percentages owed to Mr. Newman are a "substantial sum of money that could otherwise help pay operating expenses." (Dkt No. 10 Brief in Opposition at 15) The Third Circuit has repeatedly held that courts may issue injunctions to prevent defendants from dissipating the consumption, dissipation, or fraudulent conveyance of the assets that the party pursuing the asset freeze seeks to recover in the underlying litigation.

### a. Mr. Newman's equitable interest in the disputed fees enables injunctive relief

Defendants are correct that *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund,* generally stands for the proposition that a court does not have the authority to award a preliminary injunction for monetary relief. 527 U.S. 308, 310 (1999) (rejecting "preliminary injunction preventing the defendant from transferring assets in which **no lien or equitable interest is claimed**.")(emphasis added). However, Defendants fail to acknowledge that because Mr. Newman also asserted an equitable interest claim against Defendants, *Grupto* does not apply. In *Grupo*, a registered Mexican corporation defaulted on and owed money to Alliance Bond, an American company. Alliance Bond had evidence that Grupo was paying creditors in Mexico first and sought an injunction to prevent Grupo from using additional funds to pay other creditors.  The Court rejected preliminary injunctive relief because Alliance Bond had only a general and unsecured claim to monies owed to it by Grupo. *Id.* at 312. Alliance Bond did not have any equitable interest in any **particular or specific** funds held by Grupo. *Id.* The present action is meaningfully

different. Defendants promised to pay Mr. Newman a portion of their contingency recoveries as a core portion of his compensation structure as stated in the contract: "[i]n addition to the above [referring to the ten thousand per month plus interest]: [w]e will pay you an annual bonus of 10% of all 'contingency recoveries.'" Mr. Newman is not seeking an injunction on unsecured claims or general undifferentiated company funds but rather the specific portion of identifiable contingency recoveries owed to him under the contract.

### b. Injunctive relief is proper here under the *Grupo* public interest exception

Additionally, *Grupo* actually supports Mr. Newman's request, as the Court carved out an exception to grant preliminary injunctions if the public's interest were at stake. The *Grupo* Court noted that it held that the courts could "'go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.'" *Id.* at 326. (quoting *Virginian R. Co.* v. *Railway Employees,* 300 U. S. 515, 552 (1937)).  As attorneys, and in order to instill public faith in the profession, Defendants are held to a higher standard than the "normal" Defendant. These standards are set out in the  Rules of Professional Conduct. The public must have faith that if a dispute arises regarding ownership of funds, attorneys will not spend the contested funds before the dispute can be resolved.

More specifically here, N.Y.R.C.P. 1.15 requires Defendants to promptly notify Mr. Newman regarding any recoveries and then escrow the disputed portion of any fees. "A lawyer in possession of **any funds** or other property belonging to another person, where such possession is incident to his or her practice of law, **is a fiduciary**, and must **not misappropriate** such funds or property or **commingle** such funds or property with his or

her own." N.Y.R.P.C. 1.15(a) (emphasis added).[1]

     Instead of even attempting to explain how the court lacks the power to compel their compliance with the rules, Defendants boldly stated, in a footnote, that the Rules simply do not apply to them. Defendants' naked assertion, made without citation to authority, is particularly galling here where directly contrary authority abounds. In 2016, the American Bar Association issued Formal Opinion 475 which directly stated that Rule 1.15 applies to this very situation:

> When one lawyer receives an earned fee that is subject to such an arrangement and both lawyers have an interest in that earned fee, Model Rules 1.15(a) and 1.15(d) require that the receiving lawyer hold the funds in an account separate from the lawyer's own property, appropriately safeguard the funds, promptly notify the other lawyer who holds an interest in the fee of receipt of the funds, promptly deliver to the other lawyer the agreed upon portion of the fee, and, if requested by the other lawyer, provide a full accounting.

ABA Formal Opinion 475 available at
https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/aba_formal_opinion_475.authcheckdam.pdf.

     In 2017, the New York State Bar Association followed suit with Opinion 1127:

> If the lawyer or the client has entered into a contract obligating the lawyer to pay a third person from the proceeds of the settlement, or if such right is granted by law, then some of the proceeds of the settlement check "belong" to such person, and the payments to such person must be made from the Special [or IOLTA] Account.

https://nysba.org/ethics-opinion-1127/

---

[1] N.Y.R.C.P. 1.15(b) similarly requires these funds to be held in a "Special Account" more commonly known in Pennsylvania as an IOLTA account. N.Y.R.C.P. 1.15(c) requires prompt notification to third parties regarding the lawyer's receipt of funds and (j) specifies that "[a] lawyer who does not maintain and keep the accounts and records as specified and required by this Rule, or who does not produce any such records pursuant to this Rule, **shall** be deemed in violation of these Rules and **shall** be subject to disciplinary proceedings." (emphasis added).

6

And, even before the bar associations weighed in, the relevant New York Appellate Court unanimously disciplined an attorney for similar conduct in 2007. *See gen. In re Loannou*, 47 A.D.3d 65 (N.Y. App. Div. 1st Dep't 2007) (imposing public discipline under predecessor to N.Y.R.C.P. 1.15 for lawyer's failure to promptly notify other counsel of arrival of legal fee and for withdrawing fees before resolving division of fees issue).

It cannot be more clear that Defendants are obligated to escrow the disputed portion of contingency fee awards. Defendants are licensed practicing attorneys in New York and are governed by New York ethical rules. They entered into a contract to pay Mr. Newman wages from the proceeds of their contingency recoveries which "includes both fee awards and our part of contingency wins/settlements/awards." (Exhibit B to Complaint). Mr. Newman is entitled to payment under the WPCL and as such those portions of the settlements belong to Mr. Newman; at a minimum Defendants cannot reasonably argue there is no dispute about these fees. Defendants' open violation of the Rules of Professional Conduct are a direct affront to the trust the public puts in lawyers to follow the rules and the trust our profession depends on to regulate itself.

**c.   The Court has the power to protect its future damages award**

Contrary to Defendants assertions, the Third Circuit has recognized "that a district court had the equitable power in certain situations to protect a future damages remedy." *Elliott v. Kiesewetter,* 98 F.3d 47, 57 (3d Cir. 1996) *citing Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197 (3d Cir. 1990), *holding modified by Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994). While this is an extraordinary power not for everyday damages actions, "such an injunction is appropriate when the movant establishes that 'the freeze is necessary to prevent the consumption, dissipation or fraudulent conveyance of the assets that the party pursuing the asset freeze

7

seeks to recover in the underlying litigation.'" *Morgan Stanley Smith Barney LLC v. Walker*, No. 17-CV-5635, 2018 WL 1737512, at *4 (E.D. Pa. Mar. 22, 2018); *see also Mendelsohn, Drucker, & Associates, P.C. v. Titan Atlas Mfg.*, No. 12-cv-453, 2013 WL 247245, at *3 (E.D. Pa. Jan. 23, 2013) (quoting *Hoxworth v. Blinder, Robinson & Co.,* 903 F.2d 186, 197 (3d Cir. 1990)).

Like the cases cited above,the Firm has had trouble generating consistent revenue since inception. The Firm routinely failed to pay Newman wages on regular pay days as required under the WPCL. At the time of his departure from The Firm, Mr. Newman was owed approximately $25,000 in back wages and interest from 2019 and 2020, wages that were not paid in full until after The Firm obtained the Multi-Million Dollar Case settlement months later. When Mr. Newman left The Firm, Mr. Cohen informed him that he did not know how The Firm would pay its rent for April 2020. In another email on April 16, 2020, Defendant Steven Cohen stated he felt: "like I'm on a hamster wheel trying to keep lights on." (Exhibit F of Complaint) While the Multi-Million Dollar Case settlement has certainly helped Defendants' cash flow it constitutes merely ten months or less of operating expenses. The Firm's continuing insolvency would leave Mr. Newman without a way to collect the portions of the contingency recoveries owed to him.

Finally, Defendants key cases *Novatek Corp. v. Mallet*, 324 F. Supp. 3d 560, 562 (E.D. Pa. 2018) and *NVR, Inc. v. Majestic Hills, LLC*, No. 2:18-cv-01335, 2019 U.S. Dist. LEXIS 164051, at *5 (W.D. Pa. Sept. 25, 2019) are both clearly distinguishable. In both cases, the enjoining party lacked an equity interest in the property they sought to enjoin. Neither case involved a matter of public interest. However, Mr. Newman, like the Plaintiffs in *Morgan Stanley Smith Barney* and *Elliot*, has an equitable interest in the assets he seeks

to enjoin, namely the wages owed to him under the employment contract. These wages are easily ascertainable as they relate to specific sums of money obtained by Defendants on a very specific set of cases (the contingency fee cases held by The Firm prior to his departure). This is not, as in the cases cited by Defendants, a general asset freeze but rather a narrowly targeted relief designed to protect Mr. Newman's interests in the judgement from dissipation in furtherance of the public's interest.

**2. Mr. Newman meets all of the criteria for a Preliminary Injunction.**

In the Third Circuit, "[t]hose seeking [a preliminary injunction] must establish that (A) they are likely to succeed on the merits of their claims, (B) they are likely to suffer irreparable harm without relief, (C) the balance of harms favors them, and (D) relief is in the public interest." *Issa v. Sch. Dist. of Lancaster,* 847 F.3d 121, 131 (3d Cir. 2017). Mr. Newman meets all four criteria.[2]

**A.  Mr. Newman is likely to succeed on the merits.[3]**

The Wage Payment and Collection Law, as stated by the Pennsylvania Supreme Court, "provides employees a statutory remedy to recover wages and other benefits that are contractually due to them." *Oberneder v. Link Computer Corp.,* 696 A.2d 148, 150 (Pa.1997). To "present a wage-payment claim the employee must aver a contractual entitlement 'to compensation from wages' and a failure to pay that compensation." *Braun v. Walmart Stores, Inc.,* 24 A.3d 875, 954 (Pa. Super. Ct. 2011) (quoting *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 716 (Pa. Super. Ct. 2005)). The WPCL defines

---

[2] Whether state law or federal law applies to the determination of a motion for preliminary injunction filed before removal appears to be unsettled in the Third Circuit. For brevity sake, state law authorities and arguments set out in the moving papers are incorporated and not repeated here. Mr. Newman prevails under either analysis.

[3] Mr. Newman intends to amend his complaint (or enter a stipulation) to clarify that counts IV, V, and VI are pleaded in the alternative. To the extent those claims overlap with his WPCL claim, they are not individually discussed here.

"wages" to include "fringe benefits or wage supplements." 43 Pa. Stat. Ann § 260.2a (West). The Third Circuit stated in *Riseman v. Advanta Corp.*, 39 F. App'x 761, 765 (3d Cir. 2002), "[t]he mere fact that certain compensation is not payable until a future date is not necessarily fatal to a WPCL claim so long as the employee is deemed to have 'earned' it during his employment."

In the instant case, The Firm and Mr. Newman negotiated and agreed to an Employment Compensation Contract whereby Mr. Newman assumed significant financial risk by agreeing to a below market salary, and to have that salary deferred indefinitely as necessitated by The Firm's financial distress. In return, The Firm promised Mr. Newman a potential financial reward in the form of a percentage of all contingency recoveries.  The Firm also benefited in that The Firm received Mr. Newman's specialized knowledge and experience in complex commercial litigation cases at a significantly discounted salary rate. Throughout Mr. Newman's employment, The Firm repeatedly relied upon and used Mr. Newman's willingness to temporarily forgo *all* compensation payments. The Firm provided Mr. Newman payment on all contingency recoveries on a rolling basis regardless of Mr. Newman's personal work on the case and without regard for client origination. The Firm has sought to mischaracterize Mr. Newman's wage claims as indefinite. But, this is not true. Mr. Newman seeks payment for only approximately twenty-five matters that 'vested' during his time with The Firm. As noted in the case law above, the WPCL applies to a variety of non-traditional payment structures and applies here.

In *Scully v. US WATS, Inc.,* 238 F.3d 497 (3d Cir. 2001), the Defendant agreed to compensate Plaintiff partially in stock options. However, before Scully could exercise those options, Defendants breached the employment contract, wrongfully terminated Scully, and

denied him the opportunity to exercise the options. The District Court originally found that while the termination and subsequent withholding of the stock options violated the employment agreement it did not violate the WPCL.  The Third Circuit reversed and held that Defendants were liable under the WPCL and could be subject to liquidated damages and attorneys fees.  The Third Circuit found:

> Stock options provide an incentive to an employee to work to increase the stock's value and thereby benefit the company. ... The company benefits because the stock option lowers the amount of up-front compensation costs that must be paid directly to the employee, but the employee bears a considerable risk since his compensation will not increase unless the stock value increases.... Thus, stock options are often termed "contingent compensation."...Scully and US WATS entered into this precise arrangement. As the District Court noted, "[t]he entire thrust of the overall arrangement between plaintiff and the defendants was that plaintiff's efforts in improving the fortunes of the company would be rewarded on the basis of the company's improved condition as of a year after the exercise of the option." *Scully v. US WATS, Inc.,* No. CIV. A. 97-4051, 1999 WL 592695, at *1 (E.D.Pa. June 10, 1999)
>
> *Id.* at 517-18.

Based on the above reasoning, the court made it clear that Scully earned his stock options when he entered into the employment agreement. Because ""[he] was not required to render any further services before they vested and became exercisable." *Id.* 517-18.

The Firm is set up as a limited liability partnership and is unable to issue stock options. The next best thing they could offer Mr. Newman for his services was a percentage of the contingency fee recoveries. It is clear from the contract this was not a traditional bonus but rather a way for The Firm to gain Mr. Newman's employment for reduced up-front compensation. Mr. Newman worked directly on the Multi-Million Dollar case and through his efforts brought it to the brink of settlement. He did so even though The Firm

11

failed to pay him on time in 2019 and 2020, because he expected his efforts to improve the financial standing of The Firm would be rewarded.  Instead, Defendants hit hard times, and already in debt to Mr. Newman, terminated Mr. Newman's employment. They initially confirmed that they would uphold their payment obligations, but when the time came they hid settlements from Mr. Newman and came up with self-contradicting alternative theories for not paying him. (Exhibit E to Complaint) Simply put, Defendants failed to uphold their end of the bargain.

Additionally, in *Riseman* and *Bowers*, relied upon by Defendants, the courts found that each Plaintiffs' bonus vested when they entered into the employment agreement. In *Riseman*, the jury found that Reisman was entitled to three separate performance based bonuses, including one that was not paid out until after his termination. The district court stated "...the mere fact that Riseman was no longer employed by Advanta after October 1998 is not controlling." *Riseman v. Advanta Corp.*, No. 98-CV-6671, 2001 WL 1175126, at *13 (E.D. Pa. Sept. 12, 2001), *aff'd in part, vacated in part,* 39 F. App'x 761 (3d Cir. 2002) (WPCL jury award upheld but reduced) (citing *Scully v. U.S. Wats, Inc.*, 238 F.3d 497, 517–18 (3d Cir. 2001). Additionally, in *Bowers*, the court found that Ms. Bower's compensation bonus on a percentage of all commissions made by the company vested when she signed the employment agreement even though the commissions took place after her termination. The *Bowers* court stated "...Ms. Bowers' commission payment does not require her to be an active employee. Instead, it seems to be based on her fulfilling her duties under the employment contract." *Bowers v. Foto-Wear, Inc.,* No. 3:CV-03-1137, 2007 WL 906417, at *9 (M.D. Pa. Mar. 22, 2007). The court went on to find that Ms. Bowers met her obligations by working long hours and attempting to make the company

more profitable. *Id.* Finally the court noted as "...recognized by Judge Brody in *Riseman,* whether a discharged employee has "earned" a bonus or commission where the employment relationship is terminated before payment becomes due is a question for the jury..." *Id.*

Defendants only argument against the granting of an injunction is that Mr. Newman's claim to compensation failed to vest prior to his departure from The Firm. However, that is simply not accurate. The only way to arrive at that conclusion would be to add words to the contract which were not agreed to by the parties. *Bowers* at  *8. There is certainly no legal obstacle to Mr. Newman's compensation claim vesting immediately. Like the plaintiffs in *Scully, Riseman,* and *Bowers*, Mr. Newman's interest in the contingency fee recoveries vested immediately when he joined The Firm. He was not required to do anything other than work to further The Firm's financial success for the payout to become available. As the WPCL analysis is an interpretation of the contract, Mr. Newman is likely to succeed on his contract claims for the above reasons. Mr. Newman is likely to succeed on the merits of his WPCL claim. If the Court declines to find for Mr. Newman under WPCL,  Mr. Newman  asserted equitable quasi contract claims that rely on a similar reasoning of unjust enrichment.

**B. Mr. Newman is likely to suffer irreparable harm absent a freeze of the specific assets subject to a potential judgment.**

The Third Circuit stated in *Elliott* v. *Kiesewetter* "...[that] irreparable harm would occur absent an asset freeze is even more apparent where the very assets subject to a potential judgment will likely be dissipated without entry of the order." *Elliott* at 58. The Court ruled that "...an asset freeze to preserve a money judgment may show irreparable injury by showing that the freeze is necessary to prevent the consumption, dissipation or

fraudulent conveyance of the assets that the party pursuing the asset freeze seeks to recover in the underlying litigation." *Id.* As stated above, Mr. Newman has asked the court to enjoin the defendants to escrow only the portion of the contingency fee settlements owed to him under the employment contract. Mr. Newman is not asking for all of his potential damages. If Defendants are found liable under the WPCL for bad faith, as alleged in the Complaint, the amount of damages will significantly exceed the amount requested for escrow.

Mr. Newman requests this extraordinary relief due to Defendants' reckless consumption of the Multi-Million Dollar Case Settlement award. As further outlined in the Motion for Preliminary Injunction and the Complaint, Defendants were not able to pay Mr. Newman or their basic bills in March 2020. However, mere months later they are now opening an office in one of the most expensive cities in the world and posting jobs, at least in part with the monies owed to Mr. Newman. As such, this court should enjoin the Defendants from continuing to dissipate Mr. Newman's percentage of contingency fee awards.

**C. The Balance of Harms weighs in favor of Mr. Newman.**

Defendants have not asserted any harm except that they will not be able to use the disputed portion of the Multi-Million Dollar Case settlement for their ever expanding operating expenses. In their brief, they sought to characterize what is essentially $50,000 to $60,000 as necessary for the operating budget of their six lawyer bicoastal law firm. However, Mr. Newman will very likely succeed on the merits of his claims only to have the funds dissipated through Defendants continued extravagant spending. Additionally, if the Court does not enjoin Defendants they will continue to be in open violation of their ethical

14

obligations and cast doubt on the fidelity of all lawyers. Therefore the balance of harms heavily weighs in Mr. Newman's favor.

**D. The Relief is in the public interest.**

Lawyers are very highly regulated. As every law student learns, the nature of that regulation is especially strict when it comes to the holding, spending, or moving of money that does not belong to them and extends to cover monies over which there is a dispute. As discussed above, the New York ethics rules are clear and comport with the American Bar Association's Formal Ethics Opinion on Rule 1.15 which requires that a lawyer who receives a fee "must, under Rule 1.15(a), deposit the funds in which cocounsel holds an interest in an account (typically a trust account) separate from the lawyer's own property." Rule 1.15(d) also imposes a requirement that lawyers "promptly notify" others when money in which they claim an interest has been received.  As the New York Bar Association has clarified, "'[p]romptly' means within hours or days, not weeks." *See* Opinion 1127.

Defendants have not only refused to escrow the disputed fees but also took steps to hide settlements from Mr. Newman. Then, even after he independently discovered the Multi-Million Dollar Case settlement, Defendants ignored Mr. Newman's repeated requests to hold the disputed funds in escrow and instead continued to spend monies owed to him. Defendants similarly ignored counsel's repeated requests for confirmation that the disputed monies were being escrowed in accordance with the Rules.

It is in the public interest for the Rules of Professional conduct to be followed by all attorneys at all times. The rules do not make exceptions for attorneys who do not feel they owe the money. Instead we all operate under the clear mandate to set aside funds until the

dispute is resolved. By granting the Preliminary Injunction, this court is upholding the fundamental bases of confidence in the profession.

## V. Defendants Improper Request for Attorneys' Fees

In their Brief in Opposition to Plaintiff's Motion for Preliminary Injunction, Defendants improperly requested an award of attorneys fees. Defendants did not cite a single case, Federal Rule of Civil Procedure, or statute in support of their request. Nor did Defendants follow proper civil procedure by filing a separate motion for attorneys' fees. Finally, Mr. Newman's motion for preliminary injunction as demonstrated above is properly supported by the facts and under the law. As such, Mr. Newman asks that Defendants' request for fees be denied.

## VI. Conclusion

WHEREFORE, Plaintiff Newman, asks that this court grant his preliminary injunction and deny Defendants' Brief in Opposition.

Respectfully submitted,

McELROY LAW FIRM, LLC

By /s/ Rachel L. McElroy

Rachel L. McElroy, Esq.
PA ID No. 321624
461 Cochran Rd. #107
Pittsburgh, PA 15228
Phone: 412-620-8735
Email: rachel@mcelroylawfirm.com

Attorney for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing Plaintiff's Brief in Support of Motion for Preliminary Injunction was served via the CM/ECF system, on 1st of February 2021:

Marla N. Presley, Esq.
Joanna M. Rodriguez, Esq.
Jackson Lewis, P.C.
Liberty Center
1001 Liberty Avenue, Suite 1000
Pittsburgh, PA 15222
Phone: 412-338-5186
Email: Joanna.Rodriguez@jacksonlewis.com

/s/ *Rachel McElroy*
Rachel McElroy, Esq.