IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARTH NEWMAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) C.A. 2:20-CV-01973-RJC |
| POLLOCK COHEN, LLP, STEVE COHEN, CHRISTOPHER K. LEUNG, and ADAM POLLOCK, | ) ) ) ) ) |
| Defendants. | ) ) |

**OPINION**

Robert J. Colville, United States District Judge

Presently pending before the court is Defendants Steve Cohen, Christopher K. Leung, Adam Pollock, and Pollock Cohen, LLC (collectively, "Defendants") Motion to Dismiss (ECF No. 21). The matter has been fully briefed and is ripe for disposition. For the reasons stated herein, the motion will be denied.

**I. Background**

Plaintiff Darth Newman is a former attorney at the law firm Pollock Cohen, LLP ("The Firm"), who sues for alleged unpaid compensation from contingency recoveries received by The Firm after he was terminated on March 25, 2020.

The allegations in the First Amended Complaint are as follows.  Plaintiff is a resident of Allegheny County, Pennsylvania, and The Firm is a limited liability partnership with its principal place of business in New York, New York. Steve Cohen, Christopher K. Leung, and Adam Pollock ("Individual Defendants"), equal equitable partners in The Firm, reside in the New York City area. Am. Comp. ¶¶ 1-7. Plaintiff began employment at The Firm in April 2018.  Am. Compl. ¶ 18.

1

Defendants were not able to pay Newman a base salary equivalent to the market rate for his services because The Firm did not have steady cash flow. As a result, on or around April 24, 2018, Defendants Pollock and Cohen offered to pay Newman ten thousand dollars ($10,000) per month, and a "bonus" of 10% of all contingency recoveries, up to a maximum of $200k per year bonus (hereinafter the "Initial Offer"). The Initial Offer based pay was less than Newman made per month working as a contract attorney with The Firm. Am. Compl. ¶ 25.  In follow-up emails, Defendants clarified that there would be no cap, and Newman would get 10% of recoveries up to the first $2 million, 5% thereafter, and that contingency recoveries "includes both fee awards and our part of contingency wins/settlements/awards and bonus is calculated before deductions for overheads/comp and non-case specific expenses." Am. Compl. ¶ 26.   (Exhibit B)

By accepting a reduced base salary and payroll deferral, Defendants acknowledged Newman was taking significant risk which would be offset with a portion of The Firm's contingency recoveries. As Defendant Pollock stated:  "I recognize that you would be incurring some risk here." (Exhibit B). Am. Compl. ¶ 27.   Furthermore, as Pollock repeated in several emails, Defendants were pursuing litigation funding and would seek to renegotiate Newman's compensation structure if they secured funding. It was anticipated that securing litigation funding would permit The Firm to more regularly pay each lawyer the same $10,000 per month but likely eat up the proceeds from contingency wins such that neither Newman nor the partners would receive payments in excess of their common base compensation. As Defendant Pollock put it: "In other words, less risk less reward." (Exhibit B) Am. Compl. ¶ 28.

On or about April 29 2019, Defendants further outlined the employment agreement in an email to Newman with the compensation terms as follows:

> "1. We would set compensation at $10,000/month as W2 income. To the extent that we don't have the cash flow to make the full $10k, we will pay simple

2

interest at 33.33% / year on outstanding comp owed. While Steve and I wouldn't make a personal guarantee on the back comp/interest owed, Pollock Cohen LLP would continue to be obligated for what's owed as long as our firm or its successors exist. In other words, your backpay and interest immediately "vest" and are owed even if you leave. I recognize that you would be incurring some risk here..."

"3. In addition to the above: We will pay you an annual bonus of 10% of all "contingency recoveries" (as defined below) up to the first $2 million per year… Contingency recoveries includes both fee awards and our part of contingency wins/settlements/awards. Bonus is calculated before deductions for overheads/comp and non-case specific expenses."

(Exhibit B) (hereinafter "Employment Contract"). Am. Compl. ¶ 29.  Newman accepted The Firm's employment offer, and The Firm became Newman's employer. Am. Compl. ¶ 30.

In the Employment Contract the Parties agreed in writing to the terms of Newman's payment compensation or in the alternative The Firm agreed to incur an obligation to Newman which can be inferred from the relationship between the parties. Am. Compl. ¶ 31.  The "annual bonus" as outlined in section 3 of the Employment Contract (Exhibit B) was a part of Newman's core employee compensation and was not a discretionary bonus.  Instead, the "bonus" is additional compensation in the form of revenue share on accounts that existed during Newman's employment. The Firm offered Newman the revenue share on contingency accounts to entice Newman to join The Firm. Newman accepted the core compensation "bonus" because while he shared the downside risk in a new and unproven firm that had no regular source of income, he would also share in The Firm's upside. As such, the "bonus" immediately vested when Newman agreed to work for The Firm. (hereinafter "Revenue Share"). The Revenue Share was not discretionary and in practice was paid on all contingency fee recoveries.

    a. The Revenue Share was not tied to client originations.

    b. The Revenue Share was not tied to work performance.

    c. The Revenue Share was not tied to work effort or any number of hours worked or billed.

> d. The Revenue Share was not tied to work effort or any number of hours worked or billed on any particular case or overall.

Am. Compl. ¶ 32.

Defendant Pollock explained to Newman that he and The Firm specifically rejected any compensation scheme that paid lawyers based on the work performed on any particular case. Defendant Pollock had a poor experience working at an unrelated law firm that incentivized attorneys to only work on the cases they brought into the business. Defendants Pollock and Cohen wanted to create a firm based on teamwork and equal shares that permitted lawyers to work the cases they enjoyed and not work the ones they did not while maintaining a compensation structure based on shared value. Am. Compl. ¶ 33.  Defendants Pollock and Cohen already had some active cases when they approached Newman to work for them and they stated that they would include all contingency recoveries from those cases as part of the Revenue Share even if Newman never performed any work on those cases. Am. Compl. ¶ 34.   Two of those cases together represented the $1 billion qui tam case still referenced in Defendant Cohen's law firm bio but for which another law firm was expected to be primarily responsible. (Exhibit C) As a holdover from his government service, Defendant Pollock was ethically barred from having any contact with those cases. Am. Compl. ¶ 35.  Defendants did not limit the Revenue Share to matters that were settled while Newman was employed at The Firm, as whistleblower cases can take years to resolve and require substantial early effort. Am. Compl. ¶ 36. Defendants explained that they could not offer Mr. Newman a "market value" salary because The Firm generated insufficient revenue to fund lawyer compensation and expenses. Instead, The Firm offered Mr. Newman the Revenue Share and the same salary draw as the two partners, Mr. Cohen and Mr. Pollock. Am. Compl. ¶ 37.  Newman accepted Defendants' employment offer because

Defendants led him to reasonably believe that the Revenue Share applied to all contingency fee matters held by The Firm during Newman's employment, regardless of when those cases resolved, if ever. Am. Compl. ¶ 38.

After Newman accepted employment with The Firm, he was not paid the Monthly Salary for approximately five months in 2018, but was later compensated with interest when The Firm generated revenue. Am. Compl. ¶ 39.  Newman's base compensation was similarly deferred during various other periods of time during his employment. At the time of his termination, The Firm owed Newman approximately $25,000 plus interest in unpaid base compensation. Am. Compl. ¶ 40.  While Newman worked for The Firm, Defendants always paid Newman the Revenue Share when the revenue was obtained by The Firm. Newman has a list of all Revenue Share and when it was paid (Exhibit D). Am. Compl. ¶ 41.

In March 2020, The Firm terminated Mr. Newman's employment for financial reasons, as documented in contemporaneous communications. (Am. Compl. ¶¶ 42, 48).  It was an amicable separation. Am. Compl. ¶ 43.   During a March 25, 2020 conversation with Mr. Cohen about his termination, Mr. Newman specifically inquired about his contingency fee payments because The Firm's first large contingency fee on the Multi-Million Dollar Case was expected at any time. (Am. Compl. ¶¶ 43, 52, 53). Mr. Newman spent significant time negotiating a settlement on the Multi-Million Dollar Case. (Am. Compl.  ¶ 52). Mr. Cohen verbally confirmed that The Firm would honor its agreement to pay Mr. Newman on the contingency fee cases. (Am. Compl. ¶ 43). This conversation was memorialized in an email Mr. Newman sent to Mr. Cohen and that email was not disputed by The Firm until several months later, despite numerous conversations between the parties. (Am. Compl. ¶¶ 44 - 46). It was not until after several clients fired The Firm to join Mr. Newman's new firm that the relationship soured. (Am. Compl. ¶¶ 49 -

5

51). The Firm, Mr. Cohen, Mr. Pollock, and Mr. Leung breached The Employment Compensation Contract when they took steps to actively hide the Multi-Million Dollar Settlement from Mr. Newman in order to avoid their obligation, refused to pay Mr. Newman monies owed from the Multi-Million Dollar Case settlement, and refused to pay any monies related to other contingency recoveries, including future recoveries. (Am. Compl. ¶¶ 55 - 66).

At Count I Plaintiff names all defendants and asks the court to enter a declaratory judgment.[1] At Count II Plaintiff alleges violations of the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq*. ("PWCPL") as to all defendants. Count III alleges breach of contract as to Pollock Cohen, LLP.  Count IV alleges unjust enrichment, plead in the alternative, as to all defendants.  At Count V Plaintiff alleges breach of fiduciary duty, plead in the alternative, as to all defendants.  Count VI alleges promissory estoppel, plead in the alternative, as to all defendants.

Defendants move to dismiss the entire Amended Complaint for failure to state a claim

## II.  Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail

---

[1] Plaintiff seeks a declaration:
  i. Declaring the Plaintiff's Employment Contract with Defendants valid and enforceable.
  ii. Requiring Defendants to provide a list of all matters for which they were engaged as of March 25, 2020 within 5 days of the entry of the  order.
  iii. Requiring Defendants to provide notification to Plaintiff of the resolution of any such matters or portions of matters and the amount of The Firm's share of any contingency recoveries defined as including both fee awards and The Firm's portion of any contingency wins, settlements or other awards and calculated before deductions for overheads, compensation, non-case specific expenses, or reimbursed expenses within 5 days of any such resolution or partial resolution.
  iv. Requiring Defendants to pay to Plaintiff 10% of all contingency recoveries received by Defendants for any such matters for the first $2 million of recoveries each year and then 5% thereafter within 5 days of the funds "clearing" The Firm's IOLTA account.
  v. Such other relief as the Court deems just and appropriate

on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

7

### III. Discussion

**A. Counts II and III: PWPCL (v. all Defendants) and Breach of Contract (v. The Firm)**

Defendants move to dismiss Count II, which alleges violations of the Pennsylvania Wage Payment and Collection law, on the grounds that Plaintiff cannot establish that a plausible contractual basis exists to award him the damages he seeks, i.e. he was not promised and did not "earn" a "revenue share" under the terms of the agreement. According to Defendants, Plaintiff did not earn the bonuses before his employment ended, because those cases did not settle before he left The Firm. Similarly, The Firm moves to dismiss the breach of contract claim at Count III because, as with the WPCL claim, the contractual language fails to demonstrate Defendants agreed to pay him post-termination annual bonuses. According to Defendant, the plain language of the contract refers to an "annual bonus" not a revenue share.

According to Plaintiff, nowhere in the contract does it state Mr. Newman must still be employed to receive the contingency fee recoveries. Plaintiffs further note that to prevail, Defendants ask the court to add words and meaning to the contract Defendants drafted. Plaintiff further argues in the alternative that even if the contract is considered ambiguous, the motion to dismiss must be denied because an ambiguous written instrument must be decided by the finder of fact, whereas the meaning of the unambiguous written instrument is a question of law.

To state a breach of contract claim under Pennsylvania law, plaintiff must allege: "(1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract and (3) resultant damages." *Jacoby v. AXA Equitable Life Ins. Co*., Civil Action No. 13–6511, 2014 WL 7058224, at *3 (E.D. Pa. Dec. 15, 2014) (quoting *Omicron Systems, Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. 2004)); *see also Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman* , P.C., 137 A.3d 1247, 1258 (Pa. 2016).

"[T]he WPCL provides employees a statutory remedy to recover wages and other benefits that are contractually due to them." *Braun v. Wal–Mart Stores, Inc*., 24 A.3d 875, 953 (Pa. Super. 2011).  The United States Court of Appeals for the Third Circuit, applying Pennsylvania law, has consistently emphasized that the "WPCL does not create a right to compensation. Rather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are earned." *Weldon v. Kraft, Inc*., 896 F.2d 793, 801 (3d Cir. 1990) (citations omitted); *see also Livi v. Hyatt Hotels Corp.,* 751 F. App'x 208, 212 n.9 (3d Cir. 2018) ("Pennsylvania's WPCL provides a civil remedy for an employee to recover wages to which she is entitled. It does not independently establish an entitlement to any particular wages."); *De Asencio v. Tyson Foods, Inc*., 342 F.3d 301, 309 (3d Cir. 2003) (following *Weldon* in observing that, while the PWPCL provides a remedy, entitlement to compensation must, at a minimum, flow from an implied oral contract, in the absence of a formal agreement). District courts in the Third Circuit have similarly applied contractual bounds to the availability and extent of recovery under the PWPCL. *See, e.g. Livi v. Hyatt Hotels Corp*., 2017 WL 5128173, at *15 (E.D. Pa. Nov. 6, 2017) (granting summary judgment to the defendant on the PWPCL claim because the plaintiff, which had argued it was a third-party beneficiary, could not demonstrate that it had a contractual entitlement to payment for its services), *aff'd* 751 F. App'x 208 (3d Cir. 2018); *McGuckin v. Brandywine Realty Tr.,* 185 F. Supp. 3d 600, 606 (E.D. Pa. 2016) (holding that a claim under the PWPCL requires an employee to aver "contractual entitlement to compensation from wages and a failure to pay that compensation"); *Lehman v. Legg Mason*, 532 F.Supp.2d 726, 733 (M.D. Pa. 2007) ("Accordingly, a prerequisite for relief under the WPCL is a contract between employee and employer that sets forth their agreement on wages to be paid.").

Thus, to state a plausible PWPCL claim, a plaintiff employee must allege facts demonstrating that he or she was deprived of compensation the employee has earned according to the terms of his or her contract with the defendant employer. *Bansept v. G & M Automotive*, 434 F. Supp. 3d 253, 260 (E.D. Pa. 2020); *see also Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 716 (Pa. Super. Ct. 2005) ("To present a [PWPCL] wage-payment claim, [the plaintiff] ha[s] to aver that he was contractually entitled to compensation from wages and that he was not paid.").

"Wages" for purposes of the WPCL include "all earnings of an employee, regardless of whether determined on time, task, piece, commission or other method of calculation" and "fringe benefits or wage supplements," such as bonuses or "any other amount to be paid pursuant to an agreement to the employee...." 43 Pa. Const. Stat. Ann. § 260.2a. "To present a wage payment claim, the employee must aver a contractual entitlement to compensation from wages and a failure to pay that compensation." *Braun,* 24 A.3d at 954.

We find that the facts as alleged are sufficient to support a breach of contract and PWCPL claim. The contract provides the right to contingency recoveries[2] but does not state that Plaintiff's employment termination negates that right, or that the recoveries are not "earned" until paid. It does not state that Plaintiff must be employed at the time of the contingency recovery in order to receive his agreed upon percentage. The Amended Complaint alleges he is entitled to the contingencies recoveries which he understood to have immediately vested when he agreed to work for The Firm, and further, details how the parties intended for him to continue to receive his portion of the contingency fee recoveries even after his employment ended. Am. Compl. ¶ 32

---

[2] "Contingency recoveries" are defined in the contract as:

> Contingency recoveries includes both fee awards and our part of contingency wins/settlements/awards. Bonus is calculated before deductions for overheads/comp and non-case specific expenses.

(Am. Compl. Exhibit B).

(The Firm offered Newman the revenue share on contingency accounts to entice Newman to join The Firm. Newman accepted the core compensation "bonus" because while he shared the downside risk in a new and unproven firm that had no regular source of income, he would also share in The Firm's upside. As such, the "bonus" immediately vested when Newman agreed to work for The Firm."); Ex. E ("Comp - as we discussed yesterday our deal stands such that I am owed expenses, comp, and interest through March 25, 2020 and 10/5% of contingency/attorney fee awards on existing cases to be paid as The Firm collects money. . . Please let me know if my recapping does not match your memory of our chats."); Am. Compl. ¶ 69 ("Nor is the Revenue Share dependent on Newman's continued employment with The Firm.")

Accordingly, after a careful reading of the agreement and the factual allegations in the Amended Complaint, we conclude Plaintiff may proceed to discovery on these claims. *O'Donnell v. Passport Health Commc'ns, Inc.*, C.A. No. 11-3231, 2013 WL 1482621, at *10 (E.D. Pa. Apr. 10, 2013) (denying summary judgment where defendant had argued plaintiff not owed commissions because she was not employed at time commissions were paid); *see also Riseman v. Advanta Corp.,* 39 F. App'x 761, 765 (3d Cir. 2002) ("The mere fact that certain compensation is not payable until a future date is not necessarily fatal to a WPCL claim so long as the employee is deemed to have 'earned' it during his employment.").

For the foregoing reasons, the Court concludes that the Amended Complaint withstands the Rule 12(b)(6) motion to dismiss. Under the standard of *Iqbal* and *Twombly*, the allegations are sufficient to permit Plaintiff to proceed to discovery on his claim to recover wages under the PWPCL and for breach of contract.

### B. Counts I, IV, V, and VI: Declaratory Judgment, Unjust Enrichment, Breach of Fiduciary Duty and Promissory Estoppel (All Defendants)

Defendants move to dismiss Count I, which is a declaratory judgment claim, as well as those sounding in equity at Counts IV, V, and VI plead in the alternative, under Federal Rule of Civil Procedure 12(b)(6), arguing it is duplicative of the breach of contract claim, and that the Amended Complaint fails to show he has any plausible right to relief under the contract. Plaintiff explains that in the Defendants' original motion to dismiss (mooted by the filing of the Amended Complaint) Defendant did not acknowledge the existence of a contract between the parties. That position has now changed and hence, Plaintiff asks the Court to allow him to voluntarily withdraw Count I and allow him to seek leave to amend his complaint to include such claim should Defendants later dispute the validity of the contract.

In that same vein, as to the equitable claims alleged at Counts IV, V and VI, sounding in unjust enrichment, breach of fiduciary duty, and promissory estoppel, Plaintiff states that "[s]hould the Court find the parties have a valid and enforceable contract, Plaintiff asks the Court to allow him to voluntarily withdraw his equitable claims (Counts VI, V, and VI) and allow him to seek leave to amend his complaint to include such claims should Defendants later dispute the validity of the contract." (ECF No. 24 at 23), citing *Nelson v. State Farm Fire & Casualty Company*, 464 F.Supp.3d 741, 747 (2020). We will grant such a request, and note that each of these claims sounding in equity were plead in the alternative, which is entirely permissible under Rule 8 Federal Rules of Civil Procedure.

Accordingly, the Plaintiff having voluntarily withdrawn Counts I, IV, V, and VI, the motion to dismiss is denied as moot as to those counts, and the Court will permit Plaintiff to file a Second Amended Complaint should such amendment become necessary as this litigation unfolds.

**IV. Conclusion**

For the reasons stated herein, the Motion to Dismiss will be denied as to Counts II and III, and denied as moot with respect to Counts I, IV, V, and VI, which have been withdrawn and shall be stricken.

An appropriate order will be entered.

Dated:  November 4, 2021

s/*Robert J. Colville*
Robert J. Colville
United States District Judge

CC/ECF:      Counsel of record